FILED

JAN 0 9 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

The United States District Court

For The Western District Of Texas

Austin Division

Lonnie Kade Welsh,    **1:23 CV00036 RP**

Plaintiff

Vs.

Marsha McLane, et. al.,

Defendant

42 U.S.C. 1983

## **Complaint**

Come Now the Plaintiff, Lonnie Kade Welsh, files this action against named

Defendant Marsha McLane in her individual and official capacity,  Chris

Greenwalt in her individual and official capacity, Michael Searchy in his

individual capacity, Jessica Marsh in her individual capacity; Management and

Training Corporation in its individual capacity; John Cochran in his individual and

official capacity; Sergio Molina in his official capacity; Wayne Schmoker in his

official and individual capacity; Greg Shirley in his individual and official

capacity; John Powel in his individual capacity; Adam Pierce in his individual

1

capacity; Joel Garcia in his individual capacity; Joel Silvis in his individual capacity; Jesus Lara in his individual capacity; James Flick in his individual capacity; Michael Arenivaz in his individual capacity; Julian Chavez in his individual capacity; Stephen Scott in his individual capacity; Unknown Name DeVaugh in his individual capacity; Joe Robinson in his individual capacity; Victoria Rodriguez in her individual capacity; Lisa Peralta in her individual capacity, Sahar Sooter in her individual capacity; Kevin Winslow in his individual capacity; James Winckler in his individual capacity;  S. Murphree in his individual capacity, Zachary Salavar in his individual capacity, Anthony Frasier in his individual capacity, Dayton Saenz in his individual capacity; Unknown First Name Nipper in his individual capacity, Tylor  Swanger in his individual capacity, Unknown First Name Cruz (night shift) in his individual capacity; James Cruz in his individual capacity; Joseph  Trevino in his individual capacity; Michael Perez in his individual capacity; Unknown First Name Titus in his individual capacity; Xavier Guzman in his individual capacity;  S. Carrizales in his individual capacity; Juan Rodriguez in his individual capacity; Unknown First Name Williams in his individual capacity; Victor Guerrero in his individual capacity;  L. Rayos in his individual capacity,  Ashley Batista in his individual capacity, Darla Jennings, Savala in his individual capacity; Jimmy  Renfro in his individual capacity;  A. Sierra in his individual capacity; Chapo Rodriguez in his individual capacity;

Unknown First name Villarreal in his individual capacity; Unknown First name Loyden in his individual capacity; A. Sanchez in his individual capacity; Willie Barbosa in his individual capacity; Ester Ortiz in his individual capacity; Unknown First name Follower in her individual capacity; Unknown First name Settles in her individual capacity; Emma Himojosa in his individual capacity; James Pearson in his individual capacity; Kendrick Fennel in his individual capacity; Candy Weaver in her individual capacity, Unknown first name Correa in her individual capacity Unknown first name Thorne in his individual capacity, Unknown first name Nurse Martinez in her individual capacity; Unknown first name Valenzuela her individual capacity Unknown first name Nurse Barragan in her individual capacity, Unknown first name Richardson in his individual capacity; Unknown first name Nipper in his individual capacity; Unknown first name Nurse Graves in her individual capacity; Unknown First name Turner in his individual capacity; Unknown First name Turner in his individual capacity; Jose Cardenas and Stetson Fisher in his individual capacity.

## **Introduction**

1. This is an action brought pursuant to, inter alia 42 U.S.C. 1983, alleging violation inter alia of the Thirteenth and Fourteenth Amendment to the Constitution of the United States of America and various State of Texas Tort claims.

2. At all relevant times Lonnie Kade Welsh is civilly committed at the Texas Civil Commitment Center (henceforth TCCC) under the Sexually Violent Predator Act

Texas Health and Safety Code 841(henceforth THS) at 2600 South Sunset Avenue, Littlefield, Texas 79339.

3. At all relevant times the Texas Civil Commitment Office (henceforth TCCO) is responsible for the care of Lonnie Kade Welsh under the THS 841 at 4616 W. Howard Ln. Bldg. 2, Ste. 350 Austin, TX 78728.

## **Venue and Jurisdiction**

4. This Court has subject matter jurisdiction over the Plaintiff's Federal Constitutional claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367 and 28 U.S.C. § 2201.

5. Venue is proper in the Lubbock Division of the Federal District Court for the Northern District of Texas pursuant to 28 U.S.C. §§ 124 and 1391 as the events giving rise to the claims herein occurred in the City of Lubbock Texas in Lubbock County and is thus within the court's jurisdiction.

## **Parties**

6. At all relevant time Welsh is civilly committed at the Texas Civil Commitment Center in Littlefield, Texas 79339 under Texas Health and Safety Code 841.

7. Defendant McLane acted under the color of state law as the Director Of The Texas Civil Commitment Office and is being sued in her individual capacity for damages and in her official capacity for injunctive relief and can be served at 4616 West Howard Ln. Bld. 2, Suite 350, Austin Tx. 78728.

8. Defendant Chris Greenwalt acted under the color of state law as a case manager for the Texas Civil Commitment Office and is being sued in her individual capacity and official can be served at the Texas Civil Commitment Center 2600 South Sunset Ave., Littlefield, Tx 79339.

9. Defendant Michael Searcy acted under the color of state law was the compliance coordinator for the Texas Civil Commitment Office can be served through the

4

Office of The Attorney General Attorney Adam Fellows and last known service was made through Travis County, Texas Constable Precinct Five Carlos B. Lopez who did serve Searcy through a P.O. Box address.

10. Defendant Derek Porter acted under the color of state law was the compliance coordinator for the Texas Civil Commitment Office individual capacity for damages can be served at 4616 West Howard Ln. Bld. 2, Suite 350, Austin Tx. 78728.

11. Defendant Kendrick Fennel in his individual capacity Greenwalt acted under the color of state law as a case manager for the Texas Civil Commitment Office and is being sued in his individual capacity and official can be served at the Texas Civil Commitment Center 2600 South Sunset Ave., Littlefield, Tx 79339.

12. Texas Civil Commitment Office is being sue under the Texas Tort Claim Act Sec. 101.021(2) which waives sovereign immunity for the use of tangible property, naming Chris Greenwalt in her official capacity as principle agent for the use of the property, can be served at 2600 South Sunset Ave., Littlefield, Tx 79339.

13. Defendant Management and Training Corporation acts under the color of state law under the governmental function test operating under contract the Texas Civil Commitment Center naming Sergio Molina, Greg Shirley, John Cochran, and Wayne Schmoker as the principle agent for the corporation in the State of Texas. Sergio Molina represents the corporation as the senor vice president at 500 North Market Place Drive Centerville, UT 84014 Wayne Schmoker, John Cochran and Greg Shirley are or were the Facility Administrators at the Texas Civil Commitment Center at 2600 South Sunset Ave. Littlefield, Tx. 79339.

14. Defendant Adam Pierce in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

15. Defendant John Cochran in his individual and official capacity acting under color of state law as principle agent in the State of Texas for MCT who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

16. Sergio Molina in his official capacity acting under color of state law as principle agent in the State of Texas for MCT who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

17. Wayne Schmoker in his official and individual capacity acting under color of state law as principle agent in the State of Texas for MCT who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

18. Greg Shirley in his individual and official capacity acting under color of state law as principle agent in the State of Texas for MCT who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

19. John Powel in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

20. Joel Garcia in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

21. Joel Silvis in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

22. Jesus Lara in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

23. James Flick in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

24. Michael Arenivaz in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

25. Julian Chavez in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

26. Stephen Scott in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

27. Unknown Name DeVaugh in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

28. Joe Robinson in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

29. Victoria Rodriguez in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

30. Lisa Peralta acted under the color of state law as a case manager for the Texas Civil Commitment Office and is being sued in her individual capacity and can be served at the Texas Civil Commitment Center 2600 South Sunset Ave., Littlefield, Tx 79339.

31. Sahar Sooter in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

32. Kevin Winslow in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

33. James Winckler in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

34. S. Murphree in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

35. Zachary Salavar in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

36. Unknown First name Anthony Frasier in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

37. D. Saenz in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

38. Unknown First Name Nipper in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

39. Tylor  Swanger in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

40. Unknown First Name Cruz (night shift) in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

41. J.  Cruz (day shift) in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

42. James Cruz in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

43. Joseph  Trevino in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

44. Michael Perez in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

45. Unknown First Name Titus in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

46. Xavier Guzman in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

47. S. Carrizales in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

48. Juan Rodriguez in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

49. Unknown First Name Williams in his individual capacity who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

50. Victor Guerrero in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

51. L. Rayos in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

52. Ashley Batista in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

53. Darla Jennings, in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

54. Unknown first name  Savala in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

55. Jimmy  Renfro in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

56. Sierra in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

57. Chapo Rodriguez in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

58. Unknown first name Villarreal in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

59. Unknown first name Loyden in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

60. A. Sanchez in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

61. Willie Barbosa in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

62. Ester Ortiz in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

63. Unknown first name Follower in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

64. Unknown first name Settles in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

65. Emma Himojosa in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

66. James Pearson in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

67. Stetson Fisher in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

68. F. Lewis in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

69. Sean Casey in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

70. Candy Weaver in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

71. Unknown first name Correa in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

72. Unknown first name Thorne in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

73. Unknown first name Nurse Martinez in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

74. Unknown first name Nurse Barragan in her individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

75. Unknown first name Nurse Barragan in her individual capacity acting under color of state law as an employee and head of medical of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

76. Unknown first name Richardson in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

77. Unknown first name Nipper in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

78. Unknown first name Turner in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

79. Unknown first name Cardenas in his individual capacity acting under color of state law as an employee of the Management and Training Corporation who can be served at 2600 South Sunset Ave. Littlefield, Tx 79339.

## Statement of Equitable Tolling

80.. In 2021 Plaintiff Lonnie Kade Welsh filed with the 154th Judicial District of Lamb Count, Texas cause number DCV-20525-21 Welsh v. Searcy.

81. Welsh claimed in the DCV-20525-21 in the Welsh v. Searcy case claims against Marsha McLane and Chris Greenwalt.

82. Those claims present violation of Lonnie Kade Welsh's civil rights pursuant the violation of the United States Constitutional Fourteenth Amendment and Thirteenth Amendment and various state law claims against the Texas Civil Commitment Office, with request for injunctive relief. See

83. On December of 2021 Welsh was found to be a vexatious litigant under Texas Civil Practice and Remedies Code Chapter 11, by the 154th Judicial District.

84. On May 25, 2022 the Texas Seventh Court of Appeals in Amarillo affirmed the dismissal on the basis that Welsh failed to brief every possible scenario for dismissal by the District Court in Cause No. 07-22-00023-CV

85. The claims where diligently pursued and not dismissed on the merits therefore the claims against McLane and Greenwalt in and expressed herein this complaint should be equitably tolled.

86. The State Appeals Court, Seventh Court of Appeals in Amarillo Texas did decide in the case of Miguel v. McLane Cause No. 07-21-00058-CV July 26, 2022, that based upon confinement conditions at the Texas Civil Commitment Center only the court that committed the individual has jurisdiction over the case either state law or 42 U.S.C. § 1983 claims.

87. Welsh's commitment court was in the 435th District Court, which would determine the proper venue in a state court and Federal Statues determine venue and jurisdiction in a Federal Court.

88. The 154th District Court has not found that they did not have jurisdiction to hear civil rights cases as according to the Seventh Court of Appeals decision only the committing court has jurisdiction to hear conditions of confinement claims. The 154th District Court has refused to answer the motions on the subject.

88. The 154th District Court has refused to dismiss the claims without prejudice for failure to pay the 2,500 securities and has repeated ignored Welsh's motions to do so.

90. Welsh filed claims against defendants Michael Searcy, Adam Pierce, Wayne Schmoker, James Winckler, Julian Chavez, Steven Scott, John Cochran, Sean Casey, Joel Garcia, Sergio Molina, Stetson Fisher, James Cruz, Victoria Rodriguez, James Flick, Adrian Flores, FNU F. Lewis, Doug Radford, Joe Robinson, Michael Arenivaz, FNU De Vaughn, Joe Robinson; Michael Arenivaz; Joel Silvis;

91. The district clerk office has refused to allow Welsh to file any new motions in the case. The District Clerk Debbie Long only forwards all motions to the District Judge denying Welsh access to the courts and any meaning full review from a District Court abusing its discretion by a higher court. See Exhibit C Letter From the 154th District Clerk.

92. Therefore, any dismissal with prejudice was not on the merits and Welsh was not allowed to challenge the dismissal due to Debbie Long denial of access to the courts.

93. Those claims and the claims in this suit are identical except for factual content arising from constitutional violations happing after the filing of that complaint.

94. Welsh through diligently pursuing his claims in state court could not afford the security for suit for defendants McLane and Greenwalt, and the state court has refused to proceed with claims against Michael Searchy, Adam Pierce, Greg Shirley, Michael Searcy, Adam Pierce, Wayne Schmoker, James Winckler, Julian Chavez, Steven Scott, John Cochran, Sean Casey, Joel Garcia, Sergio Molina, Stetson Fisher, James Cruz, Victoria Rodriguez, James Flick, Adrian Flores, FNU F. Lewis, Doug Radford, Joe Robinson, Michael Arenivaz, FNU De Vaughn, Joe Robinson; Michael Arenivaz; Joel Silvis; Wayne Schmoker.

## Facts

95. On the 6th day of August 2019 and continuing to this day August 20, 2022 plaintiff personal property was seized by the Texas Civil Commitment Office (TCCO) Michael Searcy and a contracted employee of TCCO's employed by Management and Training Corporation (MTC) Adam Pierce did enforce the Texas Civil Commitment Office Director Marsh McLane, Tier Housing Policy., that requires the confiscation of personal property for behavioral issues against individuals who possesses none tier related property.

96. Plaintiff who was released from the Texas Department of Criminal Justice due to being acquitted of criminal wrong doing did have his property taken under Marsha McLane's tier housing policy by the agents Adam Pierce and Michael Searcy by a through her promulgated policy .

97. The policy does not require for McLane's agents to provide any procedural process such as a pre or post deprivation hearing.

98. Welsh informed Pierce that that he was permitted to own the property before he left to TDCJ and never was he afforded a hearing either pre or post deprivation on the property.

99. On the 6th day of August Welsh meet with Michael Searcy who is the Compliance Coordinator for the Texas Civil Commitment Office and his job description is to insure that Management and Training Corporation is compliant with TCCO's written policies.

100. Welsh informed Searcy at the meeting that this was his lawful property, that he only had minor cases before he left and never received any procedural due process upon his claim.

101. Searcy informed Welsh that he does not have to provide any procedural process on the property according to the MTC policies that where approved by Marsha McLane.

102. Later that day Welsh meet with Greg Shirley, the Texas Civil Commitment Center(TCCC) Facility Administrator who is employed by MTC. Welsh specifically requested a hearing on his property on to be refused by Shirley.

103. The taking of the property is made in the governmental interest and the alleged interest of the public purpose in treatment of the Sexually Violent Predator and the property is a regulatory taking under the policy for an indefinite period of time.

104. Management and Training Corporation whose Senor Vice President is Sergio Molin and Greg Shirley who signed the contract for services between MTC and Marsha McLane did conspire to violate Welsh's constitutional rights to procedural due process working in a concerted effort meeting of the minds to promulgate a policy to deny the process that is due for Welsh's property and working to enforce the confiscation of property through physical force to further the conspiracy through their agents Michael Searcy, Adam Pierce, and Greg Shirley.

105. Welsh placed a special reliance on this property. The intrinsic value of the property is significantly more valuable to Welsh than its monetary worth being valuable to Welsh's comfort and wellbeing, allowing him to escape depression as a mental release and distraction for being confined for the sole purpose of societal needs and wants. Subsequently, Welsh has fallen into a sever depression and has contemplated suicide because of his strict draconian conditions of confinement.

106. McLane as the power of rulemaking under Texas Health and Safety Code 841.141 and has refused to promulgate the rule that deals with property or disciplinarily at the Texas Civil Commitment Center at 2600 South Sunset Ave. in Littlefield, Tx 79339.

107. McLane is required under Texas Law to submit any purposed rules to the Texas Registry and then, after public debate, incorporate them as part of the Texas Government Code.

108.  Under the Government Code Sec. 2001.021.  Petition for Adoption of Rules(a) An interested person by petition to a state agency may request the adoption of a rule.

(b) A state agency by rule shall prescribe the form for a petition under this section and the procedure for its submission, consideration, and disposition. If a state agency requires signatures for a petition under this section, at least 51 percent of the total number of signatures required must be of residents of this state.

(c) Not later than the 60th day after the date of submission of a petition under this section, a state agency shall:

(1) deny the petition in writing, stating its reasons for the denial; or

(2) initiate a rulemaking proceeding under this subchapter.

(d) For the purposes of this section, an interested person must be:

(1) a resident of this state;

(2) a business entity located in this state;

(3) a governmental subdivision located in this state; or

(4) a public or private organization located in this state that is not a state agency.


109. The purposed rule after notice is to be submitted to Texas Government Code. 2002.011.  Texas Register. The secretary of state shall compile, index, cross-index to statute, and publish a publication to be known as the Texas Register. The register shall contain:

(1) notices of proposed rules issued and filed in the office of the secretary of state as provided by Subchapter B of Chapter 2001;

(2) the text of rules adopted and filed in the office of the secretary of state;

(3) notices of open meetings issued and filed in the office of the secretary of state as provided by law;

(4) executive orders issued by the governor;

(5) summaries of requests for opinions of the attorney general and of the Texas Ethics Commission;

(6) summaries of opinions of the attorney general and of the Texas Ethics Commission;

(7) guidelines prepared by the attorney general under Section 2007.041;

(8) notices relating to the preparation of takings impact assessments as provided by Section 2007.043; and

(9) other information of general interest to the public of this state, including:

   (A) federal legislation or regulations affecting the state or a state agency; and

   (B) state agency organizational and personnel changes.


110. Then after this procedural process to purpose the rule for the registry the Secretary of The State of Texas can adopt the rule under Texas Government Code Sec. 2002.051. Publication of Texas Administrative Code.(a) The secretary of state shall compile, index, and publish a Texas Administrative Code.

(b) The administrative code shall be periodically supplemented as necessary, but not less often than once each year.

(c) The administrative code shall contain each rule adopted by a state agency under Chapter 2001, but may not contain emergency rules adopted under Section 2001.034.

111. It is outside Texas interest for treatment and supervision as McLane goes outside the democratic mandate to impose the taking  process under her approved and condone tier housing policy, that never promulgated the policy by law.

112. The property includes a PlayStation 3 with two remotes, games titled Red Dead Redemption, Adrenaline, Final Fantasy XIII Gundam Wing 3, Fallout New Vegas,   Romance of the Three Kingdoms (Chinese Addition), and a television set with remote.

113. The property is worth approximately $1,300 at the time of the confiscation.

This property is not considered contraband at the Texas Civil Commitment Center and is only taken due to past behavioral problems by Welsh a minor case.

114. The taking of the property is excessive and an exaggerated response to any security, supervision, or treatment concerns and the confiscation of the property for 3 years is meant to inflict punishment by retribution in violation of Welsh's substantive rights.

115. Welsh was never provided a hearing or any procedural process before or after Searchy, Shirley and Pierce confiscated Welsh's the property.

116. The State of Texas considers property to be a fundamental right protected making the right fundamental under the substantive and procedural components of the due process clause.

117. Other well ran institutions Texas Department of Criminal Justice Institutional Division (TDCJ) conditions of confinement a system designed to punish convicted prisoners only allows property to be taken up to 45 days per violation with a total of 90 altogether for institutional rule violations and the Texas Commission on Jail Standards does not allow the confiscation of property if it is allowed at all for longer than 30 days. This shows that McLane's policy is an exaggerated response to any security concerns and was intended to punish Welsh. See Exhibit A Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg.18 and Texas Administration Code 283.1.

118. The taken of the property is not rationally related to the professional treatment of sex offenders which is the treatment for a behavioral abnormality. CF Texas Health and safety Code 841.082(a)(3) to Texas Administrative Code 810.61-810.67.

119. McLane training of Searcy and MTC was constitutionally deficient as she either knew or should have known that the Constitution requires due process when confiscating personal property and her train of Searcy should have included but did not include procedural due process protections when implementing her tier housing policy.

120. MTC training of Shirley and Adam Pierce was constitutionally deficient as they either knew or should have known that the Constitution requires due process when confiscating personal property and her train of Shirley should have included but did not include procedural due process protections when implementing her tier housing policy.

121. On November 28, 2019 Welsh was in a verbal argument with the Chief of Security Adam Pierce and the Facility Administrator John Cochran over security taking his medical sunglass that is need due to Welsh's light sensitivity.

122. Welsh was loud with his complaint about security taking his personal property, but at no time did Welsh curse or threaten violence against anyone.

123. As Welsh walked away John Cochran moved in front of him and shut the door refusing to allow him to walk away.

124. He then initiated the use of force instructing Pierce and Joel Silvia to engage Welsh.

125. A Officer Peon did take Welsh's tray out of his hands and dump his food all over him.

126. Peon did intentionally humiliate Welsh in front of Welsh's fellow residents.

127. Pierce and Silvia did pick Welsh up by the arms, slamming him against the wall.

128. Pierce did slam Welsh's head against the wall several times leaving bruising around his head.

129. Pierce tighten one side of the cuffs and Silvis the other. They did tighten the cuffs until it dug into Welsh's skin breaking open the skin making Welsh bleed from his wrist by gauging into his skin.

130. The use of assaultive force did aggravate Welsh's previous injury of neuropathy in the wrist that would not have been aggravated except for the use of unlawful force.

131. Welsh did not resist beyond the passive resistance nor did Cochran, Pierce, Silvis, or Peon engage in any negotiation.

132. Welsh has suffered substantial mental and emotional injuries from the use of force causing him depression, anxiety that produces fear that Management and Training Corporation will use assaultive force, with several sleepless nights due to the fear.

133. Welsh suffered additional injuries from Cochran's order to use force carried out by Pierce and Silvis that did shame and humiliate him to establish domination over Welsh's mind and body. Causing Welsh sever mental trauma through stress, anxiety, depression, sleepless nights with nightmares when sleep would occur of being attacked with his head slammed against the wall as Pierce Silvis and Cochran laughed at him when Peon dumped food upon his head.

134. From the dates of 4-3-2020 to 5-26-2020 John Cochran who was the facility administrator at the TCCC did order Victoria Rodriguez, James Cruz, and Stetson Fisher who are or were captains of security a shift supervisor position at the TCCC to have security Joel Garcia, Adam Pierce, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, Michael Arenivaz, Julian Chavez, Joe Robinson, FNU De Vaugh to restrain Welsh every time he left the cell with handcuffs and ankle cuffs with a chain that connected the two running from the handcuffs around the belly and connecting the ankle cuffs.

135. This was implemented along with shutting off Welsh's water from 4-3-2020 to 5-26-2020 causing welsh feces to build up in his toilet cause rancid smell of sewage and waste water. Also deprived Welsh of the ability to freely drink water and to wash himself.

136. At no time was Welsh an imminent threat to the safety of any individual to cause bodily harm as he was locked in the cell.

137. The State of Texas has created a liberty interest by statute to be free from restraints both mechanical and chemical that his only allowed if it is necessary to stop or prevent imminent physical injury to the committed person or another. See Texas Health and Safety Code 841.0838.

138. Furthermore the State creates a liberty interest in the grant of power to operate the TCCC and those expressed powers to deal with recalcitrant inmates under rights declaring Welsh as a resident has a right to be free from the use of force except in instances of self-protection, protection of Welsh or others or property protection. See Exhibit B TCCO and MTC Contract pg. 46.

139. The chains bent Welsh into an odd angle due to the tightness of the restraints which caused Welsh sever back pain while the handcuffs cut into his skin causing him to bleed several times, aggravated his neuropathy that would not have been aggravated without the restraints, causing the loss of felling in the hands but with shooting pain up the arms causing him to lose function in his hands for hours after the use of restraints. The ankle cuffs dug into Welsh's ankle.

140. Never did a mental health professional approve the use of restraints against Welsh.

141. Michael Searchy condoned the use of restraints despite his duty to follow the laws of Texas acting ultra vires.

142. The everyday use of the restraints ordered by Cochran and implemented by Victoria Rodriguez, Julian Chavez, James Cruz, Stetson Fisher, Adam Pierce, Joel

Garcia, Doug Radford, Julian Silvis, Jesus Lara, James Flick, Adrian Flores, Candy Weaver, F. Lewis, Michael Arenivaz, Julian Chavez, Joe Robinson, and Unknown DeVaugh was an assault under Texas Penal code 22.01.

143. The use of restraints left deep psychological scars upon Welsh that making him depressed with thoughts of suicide sleepless nights due to the fear and anxiety cause sever headaches and stomach cramps.

144. The restraints did aggravated Welsh's neuropathy that would not have been aggravated without the daily use of restraints for long periods of time. This caused

145. Welsh to lose the functioning in his hands for several hours every day. Which also caused him the lose of the enjoyment of life.

146. Welsh was chained every time he left the cell for recreation and when he used the phone, with the restraints never being removed.

147. On 5/2/2020 Welsh had an appointment from his solitary confinement cell to medical where staff was required to place him in full restraints.

148. Welsh refused to go because it hurt to walk hundreds of feet in full restraints that included ankle restraints.

149. At that time Adrian Flores told Welsh that he was lucky that he refused. He informed Welsh that Cochran had arranged with Captain Victoria Rodriguez to claim Welsh would start to cause a disturbance so they could classify him an imminent threat and use force along with chemical agents.

150. Flores specifically told Welsh within hearing of another inmate that Cochran gave a greenlight against Welsh for filing grievances against him for ordering the constant restraints of Welsh for 7 – 8 weeks, and for Welsh alleged assault against MTC employees by throwing food and water upon them along with the alleged assault upon Garcia.

151. Flores told Welsh that Cochran wanted Rodriguez to find a reason to use chemical restraints against Welsh to teach him a lesson.

152. As a result of these threats Welsh refused to leave the SMU living area refusing to go to any medical and other appointments for his self protection.

153. Welsh informed Chris Greenwalt and Michael Searcy of the threats made against him. Greenwalt deliberately ignored Welsh though he told her several times of what Cochran had ordered and the plan to use chemical agents against him.

154. Welsh informed Searcy who told Welsh that the allegation where unfounded because Cochran had said so.

155. Welsh reported the intentions to assault him to Chris Greenwalt who ignored him though he informed her several times over a period of months.

156. Welsh was told several times that Cochran had enlisted the aid of Rodriguez to use chemical agents against him by various officers (withheld for their protection) and on 9/13/2020 Cochran carried out his plan.

157. On 9/13/2020 Welsh who was in his isolation cell did cover his window temporarily for privacy.

158. The security Chief James Winkler came and asked Welsh to take it down. Welsh informed Winkler that he would in a little bit, that he was not going to hurt himself only need some time by himself, to think without Staff interrupting him.

159. Welsh was in morning after he had an uncle Lester Overstreet, and two cousins Trey Gronia and Heidi Welsh die within weeks of each other.

160. Welsh told Winckler that even though this happen he was not going to hurt himself only request the needed time to morn his family.

161. Additionally MTC had moved several individuals with the COVID-19 vires into the SMU housing wing.

162. The SMU wing is a small area consisting of only a 10 cells with only a few feet separating the cells.

163. Giving this Welsh was being constantly exposed to the individuals with COVID-19 by the feeding habits of MTC that would place Welsh at a high risk because they would open the cells to feed the residents with COVID-19 coming into close contact and at the same time take their drinking cups and placing it upon the communal drinking container then feed the unaffected individuals in SMU such as Welsh.

164. Welsh who was morning the loss of his family, afraid that he was going to die, and afraid for his other family about the exposure to COVID-19 if he was going to loss them or they him did communicate those fears to Winckler requesting a little time for himself.

165. Winckler agreed but asked to have eyes on Welsh just to make sure he was presently okay.

166. Welsh agreed and showed himself to Winckler.

167. Later Welsh showed himself to Chavez when Chavez feed him lunch.

168. After lunch Welsh did sit on the toilet to use the bathroom. While on the toilet he covered the window again for privacy while he used the bathroom.

169. While Welsh set on the toilet Victoria Rodriguez came and ordered Welsh to take down the covering from the window or force would be used against him.

170. Welsh agreed to take it down but requested her to wait because he incapable right then because he was sitting on the toilet

171. Welsh was in the process of defecating and even flushed the toilet to indicate to Rodriguez that he was using the bathroom.

172. Rodriguez left and when Welsh was done using the bathroom he did remove the covering from the window.

173. At that time Steven Scott came with hand restraints and OC spray the chemical agent gas container ordering Welsh to submit to the cuffs through an opening in the door even though the window was uncovered.

174. Welsh saw five other officers with him Julian Chavez, Adrian Flores, F. Lewis, and two unknown officers.

175. Welsh was secured in a lock cell and was visible to all officers.

176. After the first warning Welsh asked Scott what did he do wrong which Scott replied "two." Welsh again asked what he did wrong and expressed his concerns that the officers were going to harm him. Scott said 'three' and went to open the slot opening at the door.

178. He then sprayed Welsh in the cell with 7oz. of the spray that is used for riot situations and not against a single individual.

179. The spray caused Welsh intense pain in his skin, with blindness, and Welsh could not breath.

180. The spray produced in Welsh's mind deep psychological trauma where he thought he was going to die.

181. The OC spray is designed to produce psychological trauma in the person it is used against. See Texas Penal Code 46.01(1)(C); id at 46.01(14).

182. The Spray destroyed several pairs of Welsh's clothing for a total value of 1,000 dollars.

183. Scott then order Chavez, Flores, Lewis, and the two unknown staff members to subdue Welsh by physical force.

184 Welsh did raise his hands in a surrendering posture and verbally told Chavez " I give up" as the use of force team came in.

185. Chavez came rushing into the cell as lead man with a riot shield in place hitting Welsh several times in the skull causing him sever pain and making him blackout temporarily.

186.Chavez hit Welsh so hard that he slipped and fell.

187. Welsh who was thrown sideways turned back towards Chavez who was on the ground upon one knee.

188. Chavez did then reach around Welsh from behind and punched Welsh twice in the genital area and once in the stomach.

189. Flores and Lewis then slammed Welsh on the ground injuring Welsh's knee causing him extreme pain.

190. Welsh's knee swelled up to be three times it size with sever bruising.

191.Welsh was placed in hand restraints and leg restraints and taken into another cell.

192. The staff members removed the leg restraints but left Welsh cuffed behind his back.

193. Scott ordered Welsh to back up to the food port so he could remove the cuffs.

194. Welsh informed Scott that he had injured his knee and that he could not get into the position that he is requesting without sever pain.

195. Welsh then  laid prone on the floor on his belly with his hands cuffed behind his back asking if Scott can come into the cell and remove the cuffs.

196. Scott refused and then employed the Chemical agent OC spray that is used to quall  riots upon Welsh while he laid on his stomach in the prone position.

197. Scott then counted to three and sprayed again while Welsh laid unmoving on the ground.

198. Welsh was locked secure in the cell when Scott sprayed Welsh while on his stomach.

199. Scott then threaten Welsh with a third spraying if he did not come and bend to the Food slot to have is cuffs removed despite Welsh's hurt knee.

200. This spraying was ordered by Wayne Schmoker who stated the reason was because he was tired of Welsh having the restraints.

201. Schmoker then ordered Welsh's water to be turned off and refused to allow Welsh to be moved to another cell.

202. Scott had sprayed Welsh with so much of the spray that it pooled up, turning back into liquid due to the excessive amount and was running back out of the cell.

203. The spraying of Welsh with the OC spray caused Welsh to be blinded momentarily, caused burning all over his body, made it impossible to breath, and made Welsh think he was dying.

204. The spraying caused deep psychological harm to Welsh severe depression and anxiety with sleepless nights due to the constant fear that MTC staff is trying to kill him and that he has no escape from them and that one day they will achieve their goal of killing him.

205. Welsh has lived in a constant state of depression, anxiety, fear, with night terrors that MTC staff are coming to kill him.

206. To the present day Welsh has trouble drawing breath because the OC spray has damaged his lungs.

207. The Littlefield Police Department Officer Williams came and took a statement from Welsh who saw the pools of spray and recorded it on his body worn camera.

208. Officer Williams did interview Welsh and ask Welsh to provide a written statement about an alleged assault against Julian Chavez.

209. After the interview Welsh who now had restraints placed upon him in the front refused to go back into the cell contaminated by the OC spray.

210. Fisher asked Schmoker if Welsh could get the water on and cleaning supplies.

211. Schmoker refused stating Welsh will return to the contaminated cell.

212. Welsh ran from staff for his own safety and protection.

24

213. Welsh went to the outside area that is blocked by a large cage that had a padded lock and chain upon the gate.

214. Welsh wrapped his cuffed hands into the chain demanding from security staff to place him in an alternative cell or turn his water on with cleaning supplies.

215. Schmoker again refused told Welsh the water is now on and he can clean with that only.

216. Welsh informed Schmoker that would only make things worse by running the water all over the OC spray creating a dilutive form but making more of the spray and spread it around in grater quantity.

217. Smoker then told Welsh that he was going to get it.

218. Joel Silvis came with a riot shield, bashed Welsh the shield in the back and head area living lacerations and deep bruising in the back area and a sever head wound causing a mild concussion.

219. Scott came over to Welsh's side where Victoria Rodriguez did remove Welsh's sun shades while Joel Silvis pressed hard against Welsh's head. Scott then dispense OC chemical agents into Welsh's face from point plank range less than one foot.

220. Several times Rodriguez and Arenivaz did lift Welsh's body by his back legs, tugging and pulling his body in an attempt to cause him pain so Welsh would free himself and return to the contaminated cell.

221. Rodriguez, Arenivaz, and Silvis did free Welsh were Rodriguez and Arenivaz dragged Welsh across the floor by his arms and Arenivaz also pulled Welsh by his hair to drag him across the floor.

222. This was done under the direction of Schmoker and Winckler.

223. The spray cased Welsh to be temporarily blinded and burned his skin. Welsh suffered sever chemical burns where he was forced to seek medical treatment after at the Lamb County Hospital. Welsh's eye twitched with sever pain for weeks after.

224. The spraying and use of force caused deep psychological harm to Welsh severe depression and anxiety with sleepless nights due to the constant fear that MTC staff is trying to kill him and that he has no escape from them and that one day they will achieve their goal of killing him.

225. To this day it is extremely difficult for Welsh to breath that is directly caused by the excessive use of the chemical spray. Welsh had no problems with is lungs or breathing before the spray.

226. Welsh reported the intentions to assault him to Chris Greenwalt who ignored him though he informed her several times over a period of months.

227. Greenwalt never took the threat seriously and never took steps to prevent any assaults by security staff and on September 15, 2020 Welsh was seriously assaulted by security staff by the direction of Victoria Rodriguez which sprayed Welsh while he was locked in his cell by a Stephen Scott, then again while Welsh was in another locked cell with his handcuffs behind his back lying down on his stomach, and while he refused to return to a cell that was still contaminated with OC spray and had his hands cuffed in his front.

228. Welsh also informed Michael Search of Cochran's intentions to use the excessive force and Searcy did purposely ignored Welsh's complaints.

229. The use of the OC spray chemical restraints were meant to punish Welsh for past conduct of throwing the food and water on MTC employees and for placing human waste in a bag under his door when Defendant Cochran turned off the water under Cochran orders because he harbors a personal animus against Welsh.

230. On 5/2/2020 Welsh had an appointment to go to medical which required him to be placed in full restraints.

231. An officer at the TCCC named Adrian Flores informed Welsh that if he goes to the medical appointment a Captain Victoria Rodriguez will pretend Welsh created a disturbance and order him to be sprayed with OC spray while Welsh was in full restraints under the orders of the Facility Administrator John Cochran because of Welsh's constant complaints for being in restraints for seven weeks and for the alleged assaults against his staff when they placed the restraints on him.

232. Faced with these threats Welsh refused to leave the SMU area to go to any medical appointment and kept himself assigned to SMU because he was in fear of his life.

233. Welsh reported the intentions to assault him to Chris Greenwalt who ignored him though he informed her several times over a period of months.

234. Greenwalt never took the threat seriously and never took steps to prevent any assaults by security staff and on September 15, 2020 Welsh was seriously assaulted by security staff by the direction of Victoria Rodriguez which sprayed Welsh

while he was locked in his cell by a Stephen Scott, then again while Welsh was in another locked cell with his handcuffs behind his back lying down on his stomach, and while he refused to return to a cell that was still contaminated with OC spray and had his hands cuffed in his front.

235. McLane indorsed, condoned, and approved of the excessive use of force by allowing Scott to be promoted to the rank of security captain and Wayne Schmoker as Facility Administrator at the Texas Civil Commitment Center.

236. On May 31, 2022 Welsh was trying to communicate with his sex offender therapist which was interrupted by MTC staff to allowing him to confer with his therapist about his treatment.

237. Welsh was in a verbal altercation with the staff that lead to the staff ordering him to his cell.

238. Welsh did then threaten to throw first a water cooler and then a mop bucket full of water on the staff.

239. Welsh had turned on the water at a sink that had a hose attached to the faucet.

240. MTC James Pearson did hide the OC spray behind his back then took it from behind his back and sprayed Welsh without warning directly in the face.

241. Nor did he engage in any negotiations as there was no need to spray the chemical agent against Welsh because he was over 15 feet away from Pearson and could not engage Pearson or any MTC staff member.

242. Welsh did after he was sprayed throw the water in the direction of Pearson and then threw the empty mop bucket.

243. Staff Chapo Rodriguez, Unknown First name Saenz, and Car did surround Welsh taken him to the ground even though he had given up and was going to the ground, slammed his head in the floor pushing his face into the water and placing their knee upon his back were Welsh could not breath.

244. Welsh also could not breath from the affects of the spray, had sever chemical burns on his face and neck area, and was blinded by the spray.

245. Staff did take Welsh to medical and returned him to his cell but did not let him decontaminate by flushing the water from his skin and eyes.

246. The Staff returned Welsh to his SMU solitary confinement cell and turned off his water under Winkler's orders.

247. Welsh was not able to decontaminate until the next morning.

248. Welsh's eyes were impaired by not being able to flush out the OC spray.

249. Welsh did have loss of sight and then diminished site for several days were his eyes would involuntarily twitch.

250. Welsh did initially refuse medical treatment right after being sprayed, however, this was contingent upon Welsh being able to decontaminate when he was returned to his cell.

251. MTC Chief of Security Winkler informed Welsh that he would be able to decontaminate when he returned to the cell.

252. Only when Welsh returned to the cell Winckler order Welsh's water to remain off.

253. Winkler informed Welsh that he was teaching him a lesson for spraying water upon the ground.

254. Welsh suffered sever chemical burns on his body and was told to just deal with it.

255. The use of the OC spray chemical restraint on 9/15/20 and 5/31/22 were meant to punish Welsh as there are several incidents that the MTC staff did not use the chemical agents when Sexual Violent Predator Predators John Alexander destroyed a TCCO office cubical; assault resident Rayson ; S. Troy Plaisance assaulted another resident Bambeck, Resident Thedford did assault resident Riggs, Daral Hood did assault another resident Gram, John Davis did assault another resident Vella, Robert Fluke did assault a mentally ill resident named Ryan Bryant; Victor Jackson took a metal lock inside a mess bag to assault another resident Michael Claxton, Philip Falcon did break a resident Jackson jaw, Devern Williams did assault resident Lovings, Justin Stratton did assault resident Hood and broke his leg, Rolling and Anthony Wiley did assault each other, Justin Wetzel destroyed over $10,000 worth of computers, Gregory Green did assault MTC employee Adrian Flores with a metal lock that had a belt attached to better swing the lock, Carol Lewis did threaten to inflict bodily injury against an MTC employ Ashley Batista; Chris Simmons did corner two therapist for MTC Ward and Grubbs on two different occasions in an office refused to allow them to leave and forced them to watch as he exposed himself and masturbated to ejaculation; Rodney Rhymes did threaten to kill staff and kill himself with a razor in his hand; William Robinson did destroy MTC property a fan, took a piece of metal of the fan exhibited as a weapon and threaten to kill MTC employee Martinez and Justin

Sanchez assaulted MTC staff Sgt. Michael Arenivaz . The under-inclusiveness of the use of spray against only Welsh in instances that the Texas Health and Safety Code 841.0838 does allow such instances of restraints but not against individuals who the law would apply shows that it was an over exaggerated response and excessive in order to Welsh's actions and meant to punish him.

256. The policy for the use of chemical restraints under Texas Health and Safety Code 841.0838 and the Texas Civil Commitment Office contract under the use of force provision does show that the use of chemical restraints is excessive and exaggerated response against Welsh as the Code and the Contract shows how the Texas Legislatures and the State of Texas Executive Branch wish the Texas Civil Commitment Center to operate the Facility.

257. This represents a repeated failure to train Marsha McLane on the obvious need to instruct security only to spray when Welsh is an imminent treat of causing bodily harm and not to spray him while he is in a lock cell or with his hands cuffed behind his back lying on his stomach and to move Welsh into another cell after the spraying and not while his hands are cuffed in the front or while he is not an imminent treat being several feet away from the nearest.

258. McLane's training should of included recognizing when to use OC spray as a last resort and necessary to stop or prevent imminent physical harm to another person and to use ascending force to first use skill in maneuvers to gain compliance from passive aggressive SVP committed individuals.

259. From May 31, 2022 to October 1, 2022 Schmoker, Winkler, and Powel did order Welsh to be placed in the same type of restraint system to be cuffed every time he left the cell to use the phone or to recreation.

260. MTC staff Captain James Pearson, Adam Pierce, Zachary Salavar, James Cruz, Willie Barbosa and Stetson Fisher who are shift supervisors, with their mid-level supervisors Sargent Unknown first name Correa, Chapo Rodriguez, Candy Weaver, and Michael Arenivaz.

261. These MTC supervisors did by the orders of Winckler and Schmoker instruct officers S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor Swanger; Unknown First Name Cruz (night shift) ; Joseph Trevino, Michael Perez; Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name

Williams; Chapo Rodriguez before he was a supervisor; to place Welsh in cuffs on a daily basis if Welsh left the cell for any reason which welsh did leave everyday.

The dates of the violations are discoverable but everyday the above named individuals did place Welsh in restraints.

262. The use of restraint was implemented continuously while Welsh was using the phone, at recreation, and for visitation.  Except when their were instances of  under inclusiveness as MTC staff did ignore the policy at times such as MTC staff Cardenas, Conde, Murphree would occasionally leave the cuffs off and would always open the door to place Welsh in cuffs; Chapo Rodriguez would attach the cuffs by slipping the over Welsh's thumbs and thought Conde and Murphree, Renfro would occasionally leave the cuffs off when these individuals worked.

263. Welsh suffered numerous wounds upon his writs, open cuts, and bruising that left permanent scars upon his body during the five month span of wearing the cuffs. This caused Welsh pain and agony.

264. Welsh informed James Pearson that the cuffs were defective that were being continuously used against Welsh.

265. These cuffs would stick when trying to take them off and the staff would then twist the cuffs and Welsh's hands at odd angles biting into Welsh's skin causing him to bleed everyday or have open wounds and scrapes.

266. James Pearson after checking the cuffs and noticing that it took several attempts to open the cuffs only stated to Welsh that he did not care because cuffs are not meant to be comfortable.

267. On 7-18-22 Welsh informed Winckler of the same defect in the cuffs and how it was causing Welsh pain and stated that he would look into it but never did.

268. The restraints did aggravated Welsh's neuropathy that would not have been aggravated without the daily use of restraints for long periods of time. This caused Welsh to lose the functioning in his hands for several hours every day. Which also caused him the lose of the enjoyment of life.

269. The use of restraints left deep psychological scars upon Welsh that making him depressed with thoughts of suicide sleepless nights due to the fear and anxiety cause sever headaches and stomach cramps.

270. Welsh was chained every time he left the cell for recreation and when he used the phone, with the restraints never being removed.

271. On 8-10-22 Welsh did inform Winckler, again that the cuffs were defective and that they were causing Welsh sever pain when the staff tried to remove them. Again Winckler told Welsh he would look into it but never did.

272. On or about 9-1-22 Welsh again informed Winckler that he was in sever pain due to the cuffs malfunctioning. At that time Winckler informed Welsh that he just does not care if Welsh is in pain.

273. The use of restraints 4-3-2020 to 5-26-2020 in this manner for 53 days and from May 31, 2022 to October 1, 2022 was meant to punish Welsh serves as an exaggerated response to Welsh's action. The exaggerated response can be seen because Texas law sets down the use of restraints. See Texas Health and safety code 841.0838.

274. Furthermore the State creates a liberty interest in the grant of power to operate the TCCC and those expressed powers to deal with recalcitrant inmates under rights declaring Welsh as a resident has a right to be free from the use of force except in instances of self-protection, protection of Welsh or others or property protection. See Exhibit B TCCO and MTC Contract pg. 46.

275. There were several instances of under inclusiveness for the use of mechanical restraints which shows the intention was to punish Welsh.

276. The use of mechanical restraints from 4-3-2020 to 5-26-2020 and 5-31-2022 to 10-1-2022 were meant to punish Welsh as there are several incidents that the MTC Administrators John Cochran, Wayne Schmoker, John Powel, or James Winckler under the MTC/TCCO policy imposed by McLane, did not use the mechanical restraints restriction when Sexual Violent Predator Predators John Alexander destroyed a TCCO office cubical, assault resident Rayson, and assaulted staff members X. Guzman, Ashley Batista ,A. Fraser, V. Garrero, and S. Carrizales , Troy Plaisance assaulted another resident Bambeck, Resident Thedford did assault resident Riggs, Daral Hood did assault another resident Gram, John Davis did assault another resident Vella, Victor Jackson took a metal lock inside a mess bag to assault another resident Claxton, Robert Fluke did assault TCCC resident Ryan Bryant and Kevin Allen; Kevin Allen did cause a disturbance forcing MTC staff to use force to move him to SMU; Falcon did break a resident Jackson jaw, Devern Williams did assault resident Lovings, Justin Stratton did assault resident Hood and broke his leg, Rolling and Anthony Wiley did assault each other, Justin Wetzel destroyed over $10,000 worth of computers, Gregory Green did assault MTC employee Adrian Flores with a metal lock that had a belt attached to better swing the lock, Carol Lewis did threaten to inflict bodily injury against an MTC employ Ashley Batista; Mark Hall did establish a relationship

with an unknown female MTC staff member; Andrea Johnson did stalk an MTC staff member Carpenter; Kevin Allen did have a major use of force against him for refusing housing where he was OC spray used against him and several officers were injured during the encounter; Chris Simmons did corner two therapist for MTC Ward and Grubbs on two different occasions in an office refused to allow them to leave and forced them to watch as he exposed himself and masturbated to ejaculation; Rodney Rhymes; did threaten to kill staff and kill himself with a razor in his hand; William Robinson did destroy MTC property a fan, took a piece of metal of the fan exhibited as a weapon and threaten to kill MTC employee Martinez and Justin Sanchez assaulted MTC staff Sgt. Michael Arenivaz.

277. The under-inclusiveness of the use of mechanical restraints against Welsh in instances that the Texas Health and Safety Code 841.0838 does not allow but not against individuals who the law would apply and shows that it was an over exaggerated response and excessive to Welsh's actions and meant to punish.

278. The use of mechanical restraints from 4-3-2020 to 5-26-2020 and 5-31-2022 to 10-1-2022 was excessive and over exaggerated response to any security concerns as the length of time that the restraints were employed against Welsh shows that he was punished.

279. The State creates a liberty interest that the use of force listing mechanical or chemical restraints shall never be used as punishment. See Exhibit B TCCO and MTC Contract pg. 46.

280. The use of restraints were used as further punishment by Cochran, Schmoker, Powell, and Winckler from 4-3-2020 to 5-26-2020 and 5-31-2022 to 10-1-2022 for rule violations.

281. Neither, Wayne Schmoker, John Cochran, John Powell, or James Winckler ever provided any procedural process to Welsh from 4-3-2020 to 5-26-2020 and 5-31-2022 to 10-1-2022 to allow for the use of restraints to deny him his liberty and intending to punish Welsh further. Welsh never had a hearing or was able to speak upon his rights to be free from the use of mechanical restraints.

282. Several TCCO employees did witness Welsh in restraints and refused to protect Welsh when Welsh asked for their protection .

283. \The operation specialist Derek Porter did order Welsh into mechanical restraints on 9-23-22. After observing that Welsh was on the phone without them he did inform Pierce that Welsh was out of his isolation cell without the restraints.

284. This was approved by TCCO Lacey and Karan Gougler stating it is permissible place Welsh under restraint restrictions despite the fact that Welsh was never afforded procedural due process.

285. Restraint restriction is a form of punishment.

286. Chris Greenwalt did observe Welsh in full restraints leg shackles and hand restraints on two separate dates June 29, 2022 and August 10, 2022. Welsh did ask her to protect Welsh from the unlawful use of the restraints. Greenwalt refused to help Welsh.

287. Greenwalt, did use the restraints as punishment and failed to provided a hearing for the restraints as she sat at the Behavioral Management Hearing that imposed punishment upon Welsh for rule violations the reason why he wore the restraints from 5-31-22 to 10-1-22.

288. Welsh's case manager is Lisa Peralta.

289. Peralta comes and visits with Welsh once a month.

290. Welsh asked her several times to protect him on the monthly visits. Where she has acknowledge the use of restraints she has refused to protect Welsh from the unlawful use of the restraints. Peralta wrote this in a quarterly report.

291. Welsh was punished by the restraint restriction implemented by MTC policy condone by Marsha McLane's through her agent Jessica Marsh.

292. The law states under Texas Health and Safety Code Sec. 841.0838. Use of Restraints. (a) An employee of the office, or a person who contracts with the office or an employee of that person, may use mechanical or chemical restraints on a committed person residing in a civil commitment center or while transporting a committed person who resides at the center only if:

   (1) the employee or person completes a training program approved by the office on the use of restraints that:

      (A) includes instruction on the office's approved restraint techniques and devices and the office's verbal de-escalation policies, procedures, and practices; and

      (B) requires the employee or person to demonstrate competency in the use of the restraint techniques and devices; and

   (2) the restraint is:

(A) used as a last resort;

(B) necessary to stop or prevent:

(i) imminent physical injury to the committed person or another;

(ii) threatening behavior by the committed person while the person is using or exhibiting a weapon;

(iii) a disturbance by a group of committed persons; or

(iv) an abscension from the center; and

(C) the least restrictive restraint necessary, used for the minimum duration necessary, to prevent the injury, property damage, or abscension.

(b) The office shall develop procedures governing the use of mechanical or chemical restraints on committed persons.

Texas Civil Commitment Office defines imminent by policy as about to take place.

293.  McLane had a duty to train the security staff at the Texas Civil Commitment Center  for the use of the mechanical and chemical restraints that did not adequately provide an understanding for the use under the "imminent physical injury" and "necessary to stop or prevent" and "used as a last resort" is mandatory language under the law or the requirement to use ascending force to first attempt physical holds and maneuvers instead of using mechanical restraints and an intimidate restraint by weapon of the OC spray.

294. The Contractual provisions between the State of Texas and MTC also has mandatory langue that the use of force listing mechanical or chemical restraints as permissible us of force that shall only be used against resident has a right to be free from the use of force except in instances of self-protection, protection of Welsh or others or property protection and shall never be used as punishment.  See Exhibit B TCCO and MTC Contract pg. 46.

295. No procedural due process was provided by McLane's written and approved policy and her approving and condoning MTC policy through her assistant Jessica Marsh.

296. The need for the training was obvious for the use of chemical restraints as this is intermediate force, the OC spray is considered a deadly weapon and should only be used in the instances of ascending force when other force was not capable of achieving the security objective.

297. Welsh has a protected interest in the Texas Health and Safety Code 841 under the United States Constitutional Procedural Due Process. Welsh was never provide a hearing for his procedural interest in the State Created Liberty Interest.

298. Residents other than Welsh are not typically placed in mechanical restraints regardless of their actions. The restraints were used for a total of 175 days from 4-3-2020 to 5-26-2020 and 5-31-2022 to 10-1-2022. In most instance several times in one day. Restraints did not have the mechanical restraints or used them for less than 30 days when Sexual Violent Predator Predators John Alexander destroyed a TCCO office cubical, assault resident Rayson, and assaulted staff members X. Guzman, A. Fraser, Ashley Batista, V. Garrero, and S. Carrizales , Troy Plaisance assaulted another resident Bambeck, Resident Thedford did assault resident Riggs, Daral Hood did assault another resident Gram, John Davis did assault another resident Vella, Victor Jackson took a metal lock inside a mess bag to assault another resident Claxton, Falcon did break a resident Jackson jaw, Devern Williams did assault resident Lovings, Justin Stratton did assault resident Hood and broke his leg, Rolling and Anthony Wiley did assault each other, Justin Wetzel destroyed over $10,000 worth of computers, Gregory Green did assault MTC employee Adrian Flores with a metal lock that had a belt attached to better swing the lock, Carol Lewis did threaten to inflict bodily injury against an MTC employ Ashley Batista; Mark Hall did establish a relationship with an unknown female MTC staff member; Andrea Johnson did stalk an MTC staff member Carpenter; Chris Simmons did corner two therapist for MTC Ward and Grubbs on two different occasions in an office refused to allow them to leave and forced them to watch as he exposed himself and masturbated to ejaculation; Rodney Rhymes; did threaten to kill staff and kill himself with a razor in his hand; William Robinson did destroy MTC property a fan, took a piece of metal of the fan exhibited as a weapon and threaten to kill MTC employee Martinez and Justin Sanchez assaulted MTC staff Sgt. Michael Arenivaz.

299. Furthermore, McLane was deficient in her duties to train her policy did not include but should have included procedural due process for the use of the restraints and a process to be heard to set down how long the restraints would last since the training did not properly address "imminent physical injury" and "necessary to stop or prevent" and "used as a last resort."

300. The use of the restraints by McLane's Security staff was unlawful under Texas Law.

301. MTC and McLane allow for restraint restrictions without providing any procedural due process protection and implemented without professional judgment.

302.  Furthermore the State creates a liberty interest in the grant of power to operate the TCCC and those expressed powers to deal with recalcitrant inmates under rights declaring Welsh as a resident has a right to be free from the use of force except in instances of self-protection, protection of Welsh or others or property protection and never to be used as punishment. See Exhibit B TCCO and MTC Contract pg. 46.

303. TCCO Jessica Marsh did with a conspirator intent had a meeting of the minds with MTC Wayne Schmoker to deny Welsh and other SVP's the protect of the state created liberty interest under the Texas Health and Safety Code 841.0838 and the MTC/TCCO contract by allowing MTC to formulate a policy that allows restraint restriction without procedural due process in order to punish and to allow the OC spray for failure to obey orders without the use of ascending force to gain compliance. This is outlined in MTC use of force policy and SMU policy that is contrary to 841.0838 and the MTC/TCCO contract, constitutional principles of procedural due process and excessive force to use ascending force and not intermediate force such as OC spray.

304. The use of the restraints harmed Welsh physically by causing him pain in his wrist and ankle areas that cut into his skin and has left permeant scars on his wrist and ankles also cause extreme pain in his back area as the restraints keep him bent over and hunched for extended periods of time.

305. Welsh's mental condition worsened during this time as it was apparent that he had no protection in the law that caused a depressed state of mind of helplessness and hopelessness to the point that Welsh was driven temporarily insane causing thoughts of suicide.

306. On or about November 28 2019, Welsh received a disciplinary for speaking loudly that created a supposed disturbance that resulted in the use of force. Cochran did lie and manipulate the disciplinary procedures  claiming Welsh cursed and was belligerent to cover up Cochran, Pierce, and Silvis actions as there was no need to use force and for Welsh's complaints about security stealing his sunglasses.

307. The Behavioral Management Hearing found Welsh guilty making him spend 30 days in solitary confinement in isolation known as Secure Management Unit (SMU) and 6 month package restriction. This caused sever depression worsening Welsh's mental health as no clinical professional assessed the need for the SMU solitary confinement.

308. On or about December 20 2019 for refusing housing when he asked for protective custody. On or about March 27, 2020 Welsh received a disciplinary for refusing housing when he asked for protective custody. Welsh did make complaints about residents sexually harassing him and officers threating him. John Cochran did write the grievances to harass Welsh and to discourage him from filing for protective custody in the future.

309. Welsh received 30 days solitary and 6 months package restriction that caused him to be severely depressed inflicting emotional damage upon him worsening his mental health while no clinical professional assessed the need for the SMU solitary confinement.

310. On or about April 24, 2020 Welsh received a disciplinary for an assault on an officer that allegedly occurred on April 9, 2020. The restraints were applied through the order of John Cochran and trough Marsha McLane and MTC use of restraint policy.  However, the disciplinary proceedings was initiated  to disguise and cover-up Welsh being assaulted with the hand restraints that security officer Garcia did purposely apply the restraints to cause pain that broken Welsh's skin causing him to bleed, with bruising around the wrist area for a week, as the officer continued to clamp down on Welsh's wrist with the restraints despite Welsh's wrist being in the way. Welsh has suffered sever mental depression with anxiety, causing him lose of sleep from the assaultive conduct. Welsh was sentenced to 30 days solitary confinement to cover up for Garcia's actions.

311. Afterwards he made false statements to cover-up the assault falsely charging Welsh with a disciplinary.

312. This also caused Welsh to lose functioning in his hands for several days with the aggravating of his neuropathy in his wrist that would not have been aggravated except by and only by the use of the restraints.

313. Welsh has suffered substantial mental and emotional injuries from the use of force by Garcia causing him depression, anxiety that produces fear that Management and Training Corporation will use assaultive force, with several sleepless nights due to the fear.

314. Wayne Schmoker who was the Assistant Facility Administrator and John Cochran the Facility Administrator at the TCCC did approve Garcia use of assaultive force against Welsh and approved the covering up of the assaultive force through the false disciplinary charge.

315. This was also approved by Michael Searchy who also aided in the effort to cover up the assault by Garcia by the instituting of false disciplinary charges against Welsh.

316. Welsh received 30 days in solitary confinement and 6 month package restriction  due to the false accusations.

317. John Cochran ordered Welsh's water to be off in his residential living space only allowing him the enjoyment of water once an hour for five minuets from 4-3-2020 until on or about 4-20-2020.

318. Welsh's loss of water would cause his sewage to build-up in his room making noxious and sickening odor in the 9 x 12 living space that Welsh could not escape from the horrid smell, because Cochran ordered him to be confined continuously in the isolation cell.

319. On 4/5/2020 and 4/6/2020 MTC staff Adrian  Flores and Julian  Chavez did file false charges of exposure to feces. Welsh did bag up his feces and place the waste outside of his door. However welsh never exposed this to the officers. Welsh did bag the feces up like trash in order to keep his room from smelling like waste due to Cochran ordering his water off for several days at a time. These false charges where to continue Welsh's time in solitary confinement (SMU).

320. Welsh received 30 days in solitary confinement due to the false accusations.

321. Welsh received 180 days package restriction which was excessive punishment. Other well ran institutions such as TDCJ only punish up 45 days per violation with a maxim of 90 days for multiple violation. Similarly, every jail in Texas would punish under the Texas Jail Commission Standards as outlined in Texas Administration Code 281.3.

322. Welsh filed for protective custody from MTC staff because of the threats made by Cochran to use his staff to inflict pain upon Welsh through the use of chemical spray. In April to September of 2020 Cochran ordered Welsh to be written up for filing for protective order once a month that carried sever sanctions of 30 days in SMU, 180 day package restriction, diminished recreation time one hour a day and restricted phone use.

323. This was in retaliation for Welsh filing a protective order against him and his staff and refusing to go into population were it would be easier to attack Welsh with the chemical agents.

324. Welsh was in SMU on April the 9th of 2022 without receiving a behavioral Management Hearing or no BMR restricted Welsh's visits yet was denied a visitation by Wayne Schmoker.

325. On May 17, 2022 TCCO Case Manager Kendrick Fennel did file a false disciplinary report claiming Welsh threatened him in order to place Welsh in solitary (SMU). However, the treat he claimed was Welsh loudly said "WHAT."

326. Under policy in order to threaten someone a resident must threaten to inflict bodily harm. However, Fennel did ask Wayne Schmoker and James Winckler to have James Pearson place Welsh in solitary (SMU) confinement.

327. Welsh was prepunished for the 20 days being placed in SMU with only limited property, restricted recreation which consists of a cage on a concrete slab, limited phone time, and visitation by Marsha McLane and MTC policy imposed by Jessica Marsh and Wayne Schmoker.

328. Welsh was never served a case by staff for the alleged threat on TCCO Fennel and did not know he had a pending disciplinary until June 7, 2022 the day he was taken to the Behavioral Management Review(BMR), which was conducted by James Winckler and Chris Greenwalt who approved not being seerved with the case. John Powel and Wayne Schmoker stated this is MTC policy condoned by McLane not to serve cases.

329. On May 17, 2022 Sgt. Candy Weaver did file a false disciplinary against Welsh for making a threat with Welsh's statement that "It will take all of you."

330. This is not a threat according to policy and welsh was taking into SMU by James Pearson.

331. Welsh received 30 days in solitary confinement after he had already spent 20 days in solitary that did not count towards his 30 day sentence this was stacked with two other disciplinary for 110 days in solitary confinement.

332. The BMR was a shame conducted by Sarah Sooter; Chris Greenwalt; and Stetson Fisher as no proof was entered that welsh actually communicated a threat.

333. Welsh received 30 days in solitary confinement without after he had already spent 20 days in solitary that did not count towards his 30 day sentence this was stacked with two other disciplinary for 110 days in solitary confinement.

334. Welsh was denied all but basic hygiene and clothing during the time in SMU for 110 days.

335. The 180 day package restriction that the panel gave to Welsh as punishment is an exaggerated response by Winckler, Greenwalt, and Sooter the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

336. Winckler, Greenwalt, and Sooter the BMR panel did also punish Welsh by giving him 180 day commissary restriction even though they did not provide any procedural process for the restriction failing to state the restriction in writing.

337. The 180 day commissary restriction that the panel gave to Welsh as punishment is an exaggerated response by Winckler, Greenwalt, and Sooter the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

338. This is impermissible punishment upon Welsh being an over exaggerated response to any security concerns as other well ran institutions that are not a treatment program but is a correctional base facility such as the county jail or Texas Department of Criminal Justice (TDCJ) would not punish in a harsh manner.

339. County Jails in the State of Texas are governed by the Texas Commission on Jail Standards which sets down the punishment range for jail disciplinary to be a max of only 30days despite multiple rule infractions. Texas Administration Code 283.1.

340. The institution designed to punish criminal offenders TDCJ sets punishment of disciplinary to be stacked to no more than 90 days at a time. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 18.

341. The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 20.

342. Though Sooter is a license psychologist she stated in writing that she did not exercise profession judgment when she decided to sentence Welsh to 110 days of solitary confinement.

343. Sooter stated that her opinion was based upon policy and security concerns which she is not qualified to make and did not impute clinical professional judgment..

344. Solitary confinement is not treatment.  345. On May 31, 2022 Welsh was sprayed with chemical restraints OC spray and was written a case for causing a disturbance.

346. The MTC James Winckler did witness the events and even ordered Captain Pearson to spray Welsh with OC spray. Yet, Winckler also sat as chair of the BMR panel. Therefore, he was not neutral in making the decision and bias to the outcome.

347. Additionally, several residents wanted to give sworn statements of the events.

348. Resident Sam San Miguel; Ernesto Cerda; John Alexander; and Anthony Wiley asked to write sworn statements on behave of Welsh, yet staff F. Lewis refused to provide assistance to get the statements.

349. The hearing was a sham due to the lack of procedural due process that requires witness statements and an unbiased decision maker.

350. Welsh was given 30 days in solitary confinement without any property.

351. James Winckler finding afterwards that the disciplinary in his opinion did not go far enough, increased Welsh's punishment by stacking his punishment with his prior disciplinary without procedural due process.\

352. Welsh's disciplinary that was conducted on June 29, 2022 did not reflect the increased stacked time with the disciplinary hearing on June 7, 2022 therefore increasing Welsh's total time to 140 days.

353. The 180 day package restriction that the panel gave to Welsh as punishment is an exaggerated response by Winckler, Greenwalt, and Sooter the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

354. Winckler, Greenwalt, and Sooter the BMR panel did also punish Welsh by giving him 180 day commissary restriction even though they did not provide any procedural process for the restriction failing to state the restriction in writing.

355. The 180 day commissary restriction that the panel gave to Welsh as punishment is an exaggerated response by Winckler, Greenwalt, and Sooter the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

356. This is impermissible punishment upon Welsh being an over exaggerated response to any security concerns as other well ran institutions that are not a treatment program but is a correctional base facility such as the county jail or Texas Department of Criminal Justice (TDCJ) would not punish in a harsh manner.

357. County Jails in the State of Texas are governed by the Texas Commission on Jail Standards which sets down the punishment range for jail disciplinary to be a max of only 30days despite multiple  rule infractions. Texas Administration Code 283.1.

358. The institution designed to punish criminal offenders TDCJ sets punishment of disciplinary to be stacked to no more than 90 days at a time. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 18.

359. The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 20.

360. Though Sooter is a license psychologist she stated in writing that she did not exercise profession judgment when she decided to sentence Welsh to 110 days of solitary confinement.

361. Sooter stated that her opinion was based upon policy and security concerns which she is not qualified to make and did not impute clinical professional judgment..

362. Solitary confinement is not treatment.

363. On July 17, 2022 and July 18 2022 Welsh received three disciplinary report (1) For creating a disturbance; (2) For destruction of property; (3) For threating to inflict harm; and (4) For assault on staff by throwing milk

364. On July 17, 2022 Officer Shane Murphree did refuse to allow Welsh to eat his lunch tray; and would not allow him to use the restroom while locked in a steel cage.

365. He was claiming that Welsh refused his tray and refused to place Welsh in cuffs to escort him to the restroom. Indicating that Welsh could wait or pee himself.

366. He left the area were Welsh was claiming to another resident John Alexander as he left that he was not going to feed Welsh, that Welsh refused placing Welsh's tray down.

367. When Murphree left the area Welsh who had to pee urinated upon the ground instead of urinating on himself as Murphree indicated.

368. Welsh then removed the bolts from the covered opening of the cage and slipped out of the opening.

369. Welsh then went and grabbed his food.

370. As Welsh was walking back he did grab the OC spray from the unattended officer station out of necessity as Welsh reasonably believed that officers would cause him imminent harm by spraying him with out cause and feared for his personal safety if he did not take the spray.

371. Welsh who had suffered sever psychological harm from past instances of spraying did have this reasonable belief as his mind as been affected by the policies of MTC and Wayne Schmoker failing to obey the law as it pertains to chemical restraints.

372. The disciplinary panel again conducted by James Winckler ignored the evidence that Welsh did not destroy MTC property as it is still used to cover the caged opening.

373. The disciplinary panel did ignore the evidence that Welsh did not threaten harm on any individual. Sgt Weaver did testify that officer Saenz lied about the alleged threats that Welsh did not say he would spray the officers only stipulated that if someone was going to get sprayed it was not going to be Welsh because he had the OC spray.

374. Furthermore, Winckler refused to allow Welsh staff assistance as John Alexander was to right a verified declaration of facts that he witnessed the officer harass Welsh by not allowing him to go to the restroom and did refuse to feed Welsh and to what Welsh actually stated to MTC staff Sgt. Weaver and MTC staff Saenz and how MTC staff James Pearson who Welsh did throw the milk on informed Welsh that he did not care that the hand restraints that MTC staff was placing Welsh in are defective and was sticking when trying to release the mechanism causing staff to twist and bend Welsh's hands and cuffs alike to free him causing Welsh added pain.

375. John Alexander statements would contradict staff statements and also mitigate Welsh's punishment.

376. The hearing was conducted as a sham and mere pretense as Winckler informed Welsh at the start of the hearing that he was already found guilty and that the panel had sentenced him to 120 days of solitary confinement with 180 days of package restriction.

377. This was to run from the date of the hearing of August 10, 2022.

378. Winckler finding again that the punishment in his opinion was not enough decided not to give Welsh his back time from 7-17-22 which should have started the new disciplinary time.

379. MTC policy states that a resident can only be given total of 120 days from the most recent violation. This show that Winckler, Greenwalt, and Winslow the BMR panel refusing to start from 7-17-22 the start of the violation is an exaggerated response in order to punish Welsh.

380. The 180 day package restriction that the panel gave to Welsh as punishment is an exaggerated response by Winckler, Greenwalt, and Winslow the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

381. Winckler, Greenwalt, and Winslow the BMR panel did also punish Welsh by giving him 180 day commissary restriction even though they did not provide any procedural process for the restriction failing to state the restriction in writing.

382. The 180 day commissary restriction that the panel gave to Welsh as punishment is an exaggerated response by Winckler, Greenwalt, and Winslow the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

383. This is impermissible punishment upon Welsh being an over exaggerated response to any security concerns as other well ran institutions that are not a treatment program but is a correctional base facility such as the county jail or Texas Department of Criminal Justice (TDCJ) would not punish in a harsh manner.

County Jails in the State of Texas are governed by the Texas Commission on Jail Standards which sets down the punishment range for jail disciplinary to be a max of only 30days despite multiple rule infractions. Texas Administration Code 283.1.

384. The institution designed to punish criminal offenders TDCJ sets punishment of disciplinary to be stacked to no more than 90 days at a time. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 18.

385. The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 20.

386. Though Kevin Winslow is a license psychologist he stated in writing that he did not exercise profession judgment when she decided to sentence Welsh to 120

days of solitary confinement that added on to the 85 days that Welsh had already done in solitary confinement .

387. Winslow stated that his opinion was based upon policy and not clinical professional judgment.

388. Solitary confinement is not treatment.

389. In the Tex. Admin. C 415 Sub. Ch. F, the "overview" states Restraint, Seclusion Are Not Treatment, citing the Joint Commission on Accreditation of healthcare Organizations; Abuse Mental Health Services Administration; and National Association of State Mental Health Programs. It is specifically promulgated that the seclusion of the mentally ill is to last no longer than the behavioral emergency, reviewed every four hours, and never used to impose discipline or punish. MTC staff Winkler has purposely used the time when Welsh goes to the BMR as a form of continuous punishment. He knows he will not allow back time for rule violations waits until almost 30 days then sanctions Welsh with the max to increase punishment.

390. The American Psychiatric Association also states that the use of seclusion and restraint should be for no longer than the behavioral emergency.

391. On August 9, 2022 MTC staff Nipper did Harass Welsh all night by continuously banging upon his door, slamming the SMU front door all night, spoke loudly in the SMU area by Welsh's door all night and did have his radio turned up at maximum volume to purposely and with the intentions to harass Welsh by keeping him up all night.

392. Welsh asked for a supervisor Adam Pierce to come and deal with the situation.

393. Pierce refused to come and Nipper continued to harass Welsh.

394. Nipper wrote Welsh up for throwing milk on him and did write the false disciplinary report that Welsh threatened to inflict physical harm upon Welsh.

395. On August 24, 2022 James Pearson, Chris Greenwalt, and Sarah Sooter did conduct the BMR.

396. Welsh was never served either of the cases that Nipper wrote.

397. Welsh did ask the panel Pearson, Greenwalt, and Sooter  for staff assistance to obtain a verified written witness statement as resident John Alexander who was Welsh's neighbor in SMU did witness the entire events that Nipper did

intentionally harass Welsh all night and Nipper did write a false statement that Welsh never verbally threatened Nipper.

398. This would have help disprove Nipper's false allegations and allow Welsh to mitigate his disciplinary. Nipper did make libel and defamatory statements when he wrote the false disciplinary.

399. Nipper intentionally wrote Welsh a false disciplinary to increase Welsh's solitary confinement time in SMU.

400. Welsh was never served  this case by any MTC staff members and was surprised when he was taking before the BMR panel.

401. The BMR panel Pearson, Greenwalt, and Sooter did give Welsh a total of 30 days in solitary plus 180 day package restriction.

402. Schmoker, Powel, and Winckler did decide together after the disciplinary that 30 days was not enough and did increase Welsh's punishment to 60 days from the day that Welsh's prior disciplinary stacking the restrictions upon each other despite the fact that the panel did not conclude this to be Welsh's punishment.

403. This resulted in Welsh's release date to be January 10, 2023 for a total of 259 days.

404. The 180 day package restriction that the panel gave to Welsh as punishment is an exaggerated response by Winckler, Greenwalt, and Sooter the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

405. Winckler, Greenwalt, and Sooter the BMR panel did also punish Welsh by giving him 180 day commissary restriction even though they did not provide any procedural process for the restriction failing to state the restriction in writing.

406. The 180 day commissary restriction that the panel gave to Welsh as punishment is an exaggerated response by Pearson, Greenwalt, and Sooter the BMR panel were MTC policy only allows for 30 day per violation up to a 120 days maximum.

407. This is impermissible punishment upon Welsh being an over exaggerated response to any security concerns as other well ran institutions that are not a

treatment program but is a correctional base facility such as the county jail or Texas Department of Criminal Justice (TDCJ) would not punish in a harsh manner.

408. County Jails in the State of Texas are governed by the Texas Commission on Jail Standards which sets down the punishment range for jail disciplinary to be a max of only 30 days despite multiple rule infractions. Texas Administration Code 283.1.

409. The institution designed to punish criminal offenders TDCJ sets punishment of disciplinary to be stacked to no more than 90 days at a time. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 18.

410. The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 20.

411. Though Sooter is a license psychologist she stated in writing that she did not exercise profession judgment when she decided to sentence Welsh to 259 days of solitary confinement.

412. Sooter stated that her opinion was based upon policy and security concerns which she is not qualified to make and did not impute clinical professional judgment..

413. Solitary confinement is not treatment.

414. In the Tex. Admin. C 415 Sub. Ch. F, the "overview" states Restraint, Seclusion Are Not Treatment, citing the Joint Commission on Accreditation of healthcare Organizations; Abuse Mental Health Services Administration; and National Association of State Mental Health Programs. It is specifically promulgated that the seclusion of the mentally ill is to last no longer than the behavioral emergency, reviewed every four hours, and never used to impose discipline or punish. MTC staff Winkler has purposely used the time when Welsh goes to the BMR as a form of continuous punishment. He knows he will not allow back time for rule violations waits until almost 30 days then sanctions Welsh with the max to increase punishment.

415. The American Psychiatric Association also states that the use of seclusion and restraint should be for no longer than the behavioral emergency.

416. On 9-11-22 Welsh received three cases one from officer L. Rayos and two from officer S. Carrizales.

417. Rayos wrote Welsh a disciplinary for failing to obey an order refusing to consent to a pat down search.

418. S. Carrizales wrote Welsh a disciplinary for being out of place and cursing at her.

419. MTC staff L. Rayos wrote a false disciplinary as Welsh first requested to be stripped search instead of pat searched. Being refused his request he then requested to speak to a supervisor which is part of the informal resolution process.

420. After the supervisor came Welsh was denied his request and did submit to the pat search.

421. Rayos attempted to manipulate the wording of the disciplinary claiming Welsh was belligerent.

422. However, Rayos admitted that Welsh was only being loud and wrote that Welsh was loud in the SMU log book.

423. During the incident Zackery Saldivar who was the MTC shift supervisor did pull out his OC spray and threatened to spray Welsh in the face just because Welsh was loudly stating his opinion.

424. This placed welsh in sever fear that Saldivar intended to harm him and Welsh had nightmares of Saldivar taking Welsh and holding him down while he sprayed Welsh's eyes.

425. This placed a chilling effect upon Welsh from making verbal complaints and verbal grievances to a supervisor.

426. MTC staff S. Carrizales did write Welsh a false disciplinary by stating Welsh was out of place.

427. MTC describes out of place as  In any unauthorized area, such as a housing area or building to which one Is not assigned; or Failure to be at a designated area at a specified time.

428. Moreover, Welsh only stepped out of the SMU (Echo 1) area into the Echo main area  to ask another officer for to call a supervisor which given what had transpired in the past when MTC staff refused to call a supervisor to resolve any issues.

429. Welsh never did leave his housing area of Echo.

430. Welsh has consistently went outside the SMU area into the Echo corridor when Welsh help feeds the SMU residents by receiving the food trays and the drinking containers and then placing them back out, coordinates the laundry for the SMU residents with resident workers in the Echo corridor, and obtain cleaning supplies for SMU.

431. This has been constantly allowed while Welsh has been within the SMU housing area outside the SMU area on a daily bases to the same extent that Welsh went outside the SMU area no further than what was necessary to inform the other officer his desire to contact a supervisor and no further than he has been outside of the SMU area previously.

432. S. Carrizales did manipulate the disciplinary report claiming that she observed Welsh on the camera presenting a fighting stance to Rayos.

433. However, Rayos never wrote in his report that Welsh presented a fighting stance towards Rayos or threaten Rayos in any way.

434. Similarly, Welsh was never allowed to present the SMU log book or call Rayos as a witness.

435. Furthermore, another MTC staff wrote Welsh a case for creating a disturbance for being at of place,  watched the same camera as S. Carrizales only she never stated that Welsh was presenting a fighting stance towards Rayos.

436. Welsh who had his shirt off because he attempted to have Rayos strip search him did present his shirt to Rayos to be searched. Rayos stated this in the SMU logbook, however he purposely did not include this in his written report in order to bring the false disciplinary charges against welsh.

437. This was a concerted effort to bring false disciplinary charges against Welsh by Rayos and Carrizales.

438. S. Carrizales did write Welsh a false disciplinary report for cursing at her stating Welsh called her a Bitch and other names.

439. However, Welsh threatened to have her job and sue her for writing false reports.

440. S. Carrizales did write the report in retaliation for  Welsh's statements that he would sue her for fabricating a false disciplinary report.

441. Welsh went to the BMR 10/12/22 which was conducted by Zackary Saldivar, Chris Greenwalt, and Rebeca Lang.

442. Zackary Saldivar was the MTC staff supervisor that investigated the case was present during the time of the incident and was the person that Welsh attempted to informally resolve the issues, therefore Saldivar was not a neutral decision maker to sit on the panel.

443. Welsh informed the entire panel and Saldivar that he is not a neutral decision maker. However all panel members ignored Welsh's complaint.

444. Saldivar confirmed to both Greenwalt and Lang that Welsh did obey the order after he had asked for a supervisor. Only Saldivar asked them to find Welsh guilty for asking for the supervisor in the first place. This placed a Chilling effect upon Welsh asking for a supervisor.

445. There was no evidence that Welsh disobeyed the order.

446. Welsh also informed all members of the panel that he is consistently allowed outside of SMU to feed the SMU residents by receiving the food trays and the drinking containers and then placing them back out, coordinates the laundry for the SMU residents with resident workers in the Echo corridor, and obtain cleaning supplies for SMU and that he went no further than all members of MTC staff have allowed him to exit SMU in the past.

447. Welsh pointed out that the discipline of him for conduct that MTC staff has allowed being under inclusive and exaggerated response of any security concern.

448. Likewise, there was no evidence that Welsh was out of place as stated Welsh never left the Echo living area.

449. Similarly, Welsh informed the panel that he had threatened S. Carrizales with only legal action and that this disciplinary is truly about retaliation.

450. Saldivar informed Welsh that he needs to be careful on how he threats with legal action.

451. Welsh also informed Lang that as the sole member of the panel who is an expert in mental health her judgment must be predicated upon professional clinical judgment and the imposition of solitary confinement is not treatment.

452. In the Tex. Admin. C 415 Sub. Ch. F, the "overview" states Restraint, Seclusion Are Not Treatment, citing the Joint Commission on Accreditation of

healthcare Organizations; Abuse Mental Health Services Administration; and National Association of State Mental Health Programs. It is specifically promulgated that the seclusion of the mentally ill is to last no longer than the behavioral emergency, reviewed every four hours, and never used to impose discipline or punish. MTC staff Winkler has purposely used the time when Welsh goes to the BMR as a form of continuous punishment. He knows he will not allow back time for rule violations waits until almost 30 days then sanctions Welsh with the max to increase punishment.

453. The American Psychiatric Association also states that the use of seclusion and restraint should be for no longer than the behavioral emergency.


454. The members of the panel found Welsh guilty for 10 days per violation stacked for a total of 30 days added to 180 days package restriction.

455. Saldivar, Greenwalt, Lang, Rayos, and Carrizales did conspire and aid and abet each other to bring false disciplinary against Welsh and retaliated and conspired to retaliate with each other to retaliate against Welsh for exercising his 456. First amendment right to make a complaint to a supervisor and to file legal action for false disciplinary proceedings.

457. Carrizales and Saldivar did and as an agent of MTC and MTC by publishing trough the disciplinary report for future use by clinical therapist, the libel and slanderous statements of Carrizales and Saldivar made these false statements with malice with a reckless disregard for the truth to cause the defamation of Lonnie Kade Welsh and bring false disciplinary charges against him.


458. On or about October 25, 2022 an officer Aguirre did slam the SMU door at about 0145 in the morning several times.

459. Welsh did call her to his door by hitting the call button.

460. Welsh explained to Aguirre that it was unnecessary to repeatedly slam the door.

461. Welsh explained to Aguirre that he is allowed uninterrupted sleep and that her consistently slamming the door without cause has interrupted that sleep.

462. Aguirre informed Welsh that she will continue to slam the door all night regardless of Welsh's need to sleep.

463. Welsh then told Aguirre that "Your Luck I don't file suit on you."

464. Aguirre then wrote welsh a disciplinary claiming Welsh said "Your Lucky I don't throw shit on you."

465. Aguirre did file the disciplinary in retaliation for welsh threatening her verbally with legal action.

466. MCT staff supervisor James Cruz did come and talk to welsh about the disciplinary.

467. Welsh informed him that he did not threaten to throw shit on Aguirre. That he would never do that because it is a Felony.

468. Cruz informed Welsh that regardless Welsh needs to learn how to speak to people and it is not acceptable to threaten his staff with legal action.

469. On November 2, 2022 Welsh went to BMR conducted by Adam Pierce, Chris Greenwalt, Jacquelyn Wilson.

470. Welsh informed the panel that this is about him threating the staff with legal action for continuous disturbing and harassing behavior impairing the right to sleep.

471. The panel found Welsh guilty of threats issuing a warning that included package restriction attempting to chill Welsh from seeking redress from the court where an ordinary person would not peruse a civil suit in the face of disciplinary actions.

472Aguirre did and as an agent of MTC and MTC by publishing trough the disciplinary report for future use by clinical therapist, the libel and slanderous statements of Aguirre made these false statements with malice with a reckless disregard for the truth to cause the defamation of Lonnie Kade Welsh and bring false disciplinary charges against him.

473. On November 22, 2022 MTC staff  Victor Guerrero purposely slammed the door all morning and was yelling across the SMU area to MTC Maria  Weaver. MTC staff Weaver did keep her radio loud, while her and MTC staff Sanchez purposely talked loudly. Then MTC Staff Darla Jennings was yelling to Weaver from across SMU. The purpose was to harass and disturb Welsh's sleep early in the morning.

474. Welsh attempted to speak first to Jennings who told Welsh go back to sleep. Welsh told her that she has done this multiple times and asked her to respect his

need for sleep. She declined. Welsh then told her he would throw juice on her showing her the juice. She then started to yell at him to bring it several times. Jennings did this knowing it would provoke Welsh who has a bipolar mental disorder and her instigative actions were directed toward implementing punishment against Welsh.

475. Welsh then confronted Guerrero about slamming the door and yelling. Guerrero did tell Welsh he does not have to explain himself. At that point Welsh through cold coffee upon Guerrero. Guerrero did this knowing it would provoke Welsh who has a bipolar mental disorder and her instigative actions were directed toward implementing punishment against Welsh. Weaver claimed drops landed upon her paints.

476. Jennings, Guerrero, and Weaver called the police stating that Welsh had not only threw a foreign substance upon them, but claimed it contained harassing material such as urine and feces under Texas Penal Code 22.11(a)(2)(A)(i). They also claimed for a Felony assault under Texas Penal Code 22.01(b-1) stating they were acting under the scope of the MTC TCCO contract when the assault occurred.

477. Lamb County Sheriff Department Investigator Chris Weston came and investigated the assault. He stated he see no probable cause that Welsh committed an offense under either Texas Penal Code 22.01(b-1) or 22.11(a)(2)(A)(i).

478. Welsh was charged with three disciplinary assault without causing bodily injury and creating a disturbance. At the hearing on December 14, 2022, Welsh discussed that nothing actual got on Jennings or Weaver. That Weaver and Jennings lied to help increase Welsh's disciplinary. Further, Welsh stated that the MTC rule was vague as it does not describe what constitutes an assault. Nothing landed on Weaver physical person or Jennings physical person.

479. Welsh also informed them that writing three disciplinarians upon Welsh was an over exaggerated response to the security concerns and is meant to be part of continued and unbroken harassment by the administration. Welsh asked for witness statements of John Alexander, Tim Hill, and Tim Bradshaw to show the constant staff harassment and was denied by the BMR panel. The three individuals in charge of the BMR panel were Chris Greenwalt, Adam Pierce, and Jacquelyn Wilson

480. Welsh point to the case of John Alexander who did on October 6, 2022 during a use of force by MTC strike MTC Guerrero knocking him into several other people causing them to fall and then grabbed MTC Fraser shaking him hard that caused injuries sever enough to put Fraser in the hospital.

481. Welsh informed the disciplinary board that Guerrero, Jennings, and Weavers actions are apart of a systematic and purposeful campaign to harass Welsh with a complete disregard and respect for Welsh as a human being who is in need of sleep. That it is unbroken from night to day and to night again of an excessive noise level in SMU to deny sleep.

482. Welsh was found guilty and given 69 days in SMU solitary confinement and 180 day package restriction. Jacquelyn Wilson was the clinical expert and her opinion to give Welsh 69 days of solitary confinement is contrary to professional norms.

483. Part of the package and commissary restrictions imposed by Marsha McLane by her disciplinary policy implemented under the color of her office, MTC Cochran, Schmoker, and Winckler enforce this policy and MTC has written policies of their own through Schmoker and Cochran to deny the ability to read. McLane approved and condoned MTC policy stating that restriction of books is acceptable. Welsh did attempt to order Books by David Weber , Raymond Fist, and several legal books dealing with rules of evidence and trial objects which were denied.

484. Welsh was denied the ability to order books regardless of content and denied the right to order reading books without procedural process. The head clinical director Sean Casey denied personal reading books and therapist Rachel Lang did deny legal reading books under citing to the policy and generally denying Welsh without professional clinical judgment and contrary to professional accepted standards.

485. Likewise John Powel and Wayne Schmoker did deny personal reading books that was condoned by Texas Civil Commitment Office Derek Porter stating reading material such as personal books are not approved personal property items therefore Welsh is not allowed to order books.

486. This is an over exaggerated response to any security concerns and is imposed for the purpose to increase punishment.

487. These disciplinary conditions confiscate all property in Welsh's possession, except legal and therapy material, confines in a dungeon type setting by blocking out all sensory input and preventing Welsh from communicating with others for thirty days at time.

488. Welsh has spent a maximum of 8 months straight in this kind of confinement from January of 2020 and 10 months

489. Confinement is in a cell for 23 hours at a time with one hour provide for outside recreation in a small cage with no recreational equipment.

490. Schmoker did ratify a MTC policy indorse by McLane's agent Jessica Marsh to use the law library as a form of punishment and invidious Discrimatorily practice against individuals in SMU and to deny the right to information and knowledge as all other SVP's are allowed 8 hours of law library access and can request extra time per week and SMU are allowed only 4 hours.

491. In TDCJ a well ran the institution designed to punish offenders of the criminal law in the State of Texas allows all offender populations from custody level G1 – G4 12 hours of law library access and allows those in administrative segregation, death row and solitary confinement to cheek out three legal books and maintain them through out the day to the next day for a one to one return.

492. The disciplinary conditions impose 6 months worth of restrictions to prevent acquiring policy of personal property.

493. The confinement conditions by policy are not made by a professional medical professional therefore it is not made in the interest of treatment. Over 1,000 Behavioral Management hearings have been conducted at the TCCC for SVP clients and none have implemented clinical professional judgment standards under Marsha McLane's and MTC policy standards.

494. These conditions are imposed against Welsh even if he is not found guilty. Welsh was pre-punished for every above case before he had a procedural due process hearing.

495. The confinement conditions are an exaggerated response to supervision needs to impose punishment that are extreme in nature in comparison to any supervision requirements such as security of the Texas Civil Commitment Center.

496. Other well ran institution such as Texas Department of Criminal Justice (TDCJ) whose institutions that is designed to punish those allow access to a recreation yard or gym for two hours daily for their most sever security risk offenders. See Exhibit D a Texas Department of Criminal Justice Handbook for G5 and J5 offenders. Pg. 36-37.

497. Marsha McLane policy is similar to placement in solitary confinement for thirty days at a time and as stated most instances Welsh has not been credited his back time in SMU resulting in pre- and over punishment.

498. The punishment of criminal offenders in TDCJ allows only a maximum of 15 days in solitary. See Exhibit A Texas Department of Criminal Justice Disciplinary Procedures pg. 20.

499. The continued lock down in solitary confinement affected Welsh's mind and sent him into a depressive state that worsen his mental conditions to the degree that he contemplated suicide.

500. McLane has not applied for a rule for the confinement conditions for the placement in solitary confinement of those civil committed under Texas Health and Safety 841.0838 under Texas Government Code Sec. 2002.051 as is required to carry the democratic mandate for the wide latitude to implement such conditions.

501. The solitary confinement is not conducted by medical professionals and is retributive punishment being an exaggerated response and draconian as compared to the well ran institution of TDCJ .

502. Marsha McLane as the executive director of the Texas Civil Commitment Office is an enforcement agency and the statute does not contemplate the use of solitary confinement as a punishment tool. McLane violates separation of powers when she creates laws.

503. The Texas legislature instructed that disciplinary would be a reduction in tier level. See Texas Health and Safety Code 841.0834 (c). The office shall return a committed person who has been transferred to less restrictive housing and supervision to a more restrictive setting if the office considers the transfer necessary to further treatment and to protect the community. The decision to transfer the person must be based on the person's behavior or progress in treatment.

504. Similarly, Welsh's behavioral problems are considered a part of his behavioral abnormality requiring treatment and is prevented from moving forward in the tier process by the Clinical Therapist due to treatment issues.

505. Marsh McLane, MTC, Cochran, Schmoker, and Winckler knew or should have known that Welsh acting contrary to institutional rules is part of his mental illness as expert testify in Welsh's civil commitment and in numerous civil commitment for Sexual Violent Predators to show that there impulsive behavior and repeat rule violation is proof that they possess the behavioral abnormality under Texas Health and Safety Code 841.002.

506. In the Tex. Admin. C 415 Sub. Ch. F, the "overview" states Restraint, Seclusion Are Not Treatment, citing the Joint Commission on Accreditation of

healthcare Organizations; Abuse Mental Health Services Administration; and National Association of State Mental Health Programs. It is specifically promulgated that the seclusion of the mentally ill is to last no longer than the behavioral emergency, reviewed every four hours, and never used to impose discipline or punish. MTC staff Winkler has purposely used the time when Welsh goes to the BMR as a form of continuous punishment. He knows he will not allow back time for rule violations waits until almost 30 days then sanctions Welsh with the max to increase punishment.

507. The American Psychiatric Association also states that the use of seclusion and restraint should be for no longer than the behavioral emergency.

508. Therefore, the use of the restraints from 4-3-2020 to 5-26-2020 and 5-31-2022 to 10-1-2022 and the solitary confinement in SMU from imposed by the disciplinary stated above are outside professional accepted judgment.

509. Since neither the Texas Legislation or Marsha McLane contemplated disciplinary procedures Welsh has a right under the Texas Constitution to Art. I Sec. 13 and Art. I Sec. 15 for the deprivation of his civil rights.

510. Under Art. I Sec. 13 all courts shall be open, and every person for an injury done him, in his lands, goods, person, or reputation, shall have remedy by due course of law.

511. Under Art. I Sec 15 the right of trial by jury shall remain inviolate. The right exists when the action involves rights and remedies of the sort typically enforced in an action at law.

512. Marsh McLane taking of all personal property, restricting property, and placement in solitary confinement has been known historically as punishment.

513. The conditions imposed forced Welsh into a extreme depressive state that resulted in the loss of the enjoyment of life, loss of consortium, and caused Welsh temporary insanity with suicidal thoughts and hear of voices and delusions while confined in the extreme draconian conditions.

514. Neither the 841, the order to commit or the contract allow for Welsh disciplinary charges brought by MTC, Cochran, Schmoker, and Winckler. These individuals abuse their statutory and contractual grant of power by imposing disciplinary procedures and abuse the court order to commit Welsh to obtain power and dominion over Welsh's body.

515. The disciplinary therefore is punishment for Welsh acting under the mental disease that diminishes his emotional or volitional capacity to make reasoned decisions or respond to reality rationally.

516. Under the Texas Health and Safety Code 841.082(4)(A)(i)-(iv) Welsh is required to wear an ankle monitor. . The ankle monitor also acts as a badge of slavery or servitude.

517. It is the law of the State of Texas and a policy of Marsha McLane to require an ankle monitor while confined in a maximum security institution such as the Texas Civil Commitment Center while in the lowest two tiers.

518. The law forces Welsh to preform labors and restricts liberty by maintain the monitor by charging the monitor twice a day for two hours a day that details Welsh plugging the monitor into an electrical out for two hours while the monitor is attached to Welsh ankle connecting him to the electrical outlet.

519. The law forces and compels Welsh to preform these labors by punishes Welsh by a Felony of the Third degree but is capable of being enhanced to a punishment of life if he does not submit to charge the monitor. See Texas Health and Safety Code 841.085. The has instituted a badge of servitude.

520. The use of the monitor while Welsh is in a maximum security institution is arbitrary and purposeless and is under-inclusive as no other violent offender or even Sexually Violent Predator currently serving a criminal sentence is require to wear the ankle monitor.

521. The use of the monitor is also an exaggerated response to any security or supervision needs as the objective of security or supervision can be accomplished by the security personnel, the double razor wire fence, and the criminal enforcement laws to prevent escape or assault on officers. See Texas Health and Safety Code 841.085 and Texas Penal Code 22.01(b-1).

522. The monitor marks Welsh as an inferior class of person in society and shams him when he is taken to public appointments such as medical at University Medical Center Hospital in Lubbock.

523. The monitor is invidiously imposed upon Welsh and Welsh as a member of the Sexually Violent Predator class for the purpose of imposing disabilities and restraints as a form of punishment for prior sexual crimes as the monitor is needless and purposeless and an exaggerated response to security and supervision concerns and not imposed equally with other former criminals, current criminals in maximum security institutions, current Sexually Violent Predators in prison

institutions, those accused of criminal conduct and accused of multiple acts of criminal conduct in pretrial county jails, and those adjudicated dangerously insane at state sponsored mental civil commitment institutions.

524. Once a month Chris Greenwalt who was Welsh's case manager from 8-6-19 to 9-20-21 and Lisa Peralta who is Welsh's case manager from March 5, 2022 to present day, conducts a meeting with the Texas Civil Commitment Office treatment provider to make a determination upon Welsh's custody level represented by his tier level.

525. This movement between tiers is to be seamless and concerns Welsh's liberty for advancement and places less restrictions against his liberty and conditions of confinement to his eventual release under Texas Law. See Texas Health and Safety Code Sec. 841.0834.

526. Welsh is not afforded any procedural process by either notice or a chance to be heard upon his tier placement.

527. Welsh has never received notice or attended a hearing based upon his tier placement and less restrictive housing in the  months since his release.

528. Is a direct policy or unwritten custom of Marsha McLane as the director of the Texas Civil Commitment Office not to allow procedural process for a notice and a chance to be heard upon the tier housing as no member of the Sexually Violent Predator Class is notified and given a chance to speak upon their tier placement and less restrictive housing.

529. The tier placement that is conducted is a sham of a proceeding that does not provides for the liberty interest from total confinement to eventual release as Welsh has completed all of his tier one therapeutic material in 2020 and has been refused advancement by Chris Greenwalt and Lisa Peralta.

530. Welsh was released from Lamb County Jail on March 5, 2022 from of false criminal charges placed against him by Wayne Schmoker.

531. Welsh seen  First name unknown Wilson who is clinical therapist , who informed Welsh that Schmoker had told her to place him in tier one because he is coming out of the county jail.

532. I informed Wilson that I had completed all of tier one assignments, asking if she would like to review the tracking sheets.

533. She did inform me that Schmoker had refused her to review the prior treatment.

534. Welsh informed TCCO Gougler who did inform him that he would be given a second interview.

535. The second interview was assigned to clinical therapist Kevin Winslow Lisa Peralta had a meeting of the minds with Kelley Winslow before Welsh's meeting to deny Welsh his tier in order to punish him for the criminal charges that were filed by the Lamb County Jail the same charges that Welsh was discharged under the interest of justice.

536. Winslow informed Welsh that he will pay for his crimes and will not be allowed to get away with the crime. After the comment Welsh informed him that he was discharged in the interest of justice Winslow informed Welsh that just because Welsh was not caught does not mean he will get away with it.

537. Welsh did inform him that after the District Attorney reviewed the evidence, Welsh was discharged under the reason stated in the interest of justice which Winslow ignored the findings.

538. Winslow then stated that he will not go against his coworkers decision not to place Welsh in a higher tier.

539. Welsh told him that was the purpose of the meeting was to reevaluate him.

540. Winslow told Welsh that according to Welsh's case ,manager he was not to review the tier placement.

541. Welsh asked Peralta to help him and protect him from Winslow desire to punish him which she refused to protect him from Winslow and stood –by as Winslow used his position to punish Welsh.

542. Peralta meet with Winslow and decided that Welsh should be punished for the criminal charges that were dismissed.

543. Welsh did inform Wayne Schmoker of the incident.

544. Welsh told Schmoker that they were supposed to evaluate his prior treatment according to policy.

545. Welsh also told Peralta that Wilson and Winslow refused to evaluate his prior treatment.

546. Schmoker advised Welsh that the information was noted.

547. Peralta advised Welsh that she does not care if Welsh is ever advanced in tier.

548. The denial of recognition of Welsh's prior therapy causes Welsh to live under more strict conditions of confinement that also restricts his rights to personal property. This also prevents him from the seamless transition to release from civil commitment. Individuals who are released from the county jail and TDCJ have their prior treatment reviewed. However, Welsh was denied this because of Schmoker, Wilson, Winslow, and Peralta personal animus against Welsh to harass and retaliate against him for not accepting a plea bargain and to punish him for defending himself against the false criminal charges when Lamb County refused to prosecute him in the interest of justice.

549. This affected Welsh's mind and spirt to the degree that he is now in a continuous state of depression and has furthered a degree of insanity that causes him to perceive suicide as the only means of relief.

550. The denial of treatment is in retaliation for Welsh exercising his right to defend himself against false criminal

551. No other individual SVP has their therapy stripped from them based upon any perceived behavioral issues. Other individuals such as Chris Simmons who held two therapist hostage as he exposed and masturbated to them had only to due a special assignment to be promoted to tier 3.

552. Both Chris Simmons and Welsh were recommended to be advanced to tier 2 of September of 2019 by clinical therapist Kate Easter.

553. However, Easter informed Welsh that Chris Greenwalt blocked his tier promotion due to logistics problems.

554. Chris Greenwalt informed Welsh that because he was acquitted of his criminal charges in August 2019 they will not recognize his prior treatment from 2015 to 2017 when he was at the TCCC.

555. Welsh told Greenwalt that Simmons was released from TDCJ in August of 2019 like Welsh and that he also had not at that time completed the tier one assignments but that Kate Easter had felt in her professional judgment to move both of them up.

556. Greenwalt informed Welsh that they would recognize Simmons prior treatment but not Welsh's two months later Simmons committed his indecent exposure violation by masturbating to the Clinical Therapist Ward.

557. Simmons was never demoted for his actions received a special assignment and moved forward in his treatment.

558. The same happened for Troy Plaisance who assaulted another resident named Bambeck went to the county jail and returned had all his treatment recognized and was advanced to tier three when he returned from the county jail , Victor Jackson took a metal lock inside a mess bag to assault another resident  Michael Claxton Jackson who has a life time of mandatory parole had to do a special assignment and was promoted to tier three , Michael Claxton who assaulted an elderly individual only had to do a special assignment to maintain his tier level of two; Resident Thedford who assaulted resident Riggs only had to do a special assignment and was promoted to tier two; Justin Stratton who did assault resident Hood and broke his leg only had to do a special assignment to maintain his tier two, Rolling and Anthony Wiley who  did assault each other only had to do a special assignment to maintain their tier two; Robert Fluke did assault TCCC resident Ryan Bryant and Kevin Allen; Kevin Allen did cause a disturbance forcing MTC staff to use force to move him to SMU; Carol Lewis who  did threaten to inflict bodily injury against an MTC employ A. Batista only had to do a special assignment to do a tier two; Rodney Rhymes did threaten to kill staff and kill himself with a razor in his hand only had to do a special assignment to maintain his tier two; William Robinson did destroy MTC property a fan, took a piece of metal of the fan exhibited as a weapon and threaten to kill MTC employee Martinez  only had to do a special assignment to maintain his tier two.

559. Professional clinical  judgment reflects for an individual to do behavioral specific assignments and move forward in their treatment.

560. Lisa Peralta did offer Welsh the special assignment to complete of tier one assignments over again which is not a special assignment in the sense that other residents are afforded behavior specific assignments to progress in treatment not to be stripped of their entire therapy and start over on the tier assignments.

561. Welsh has been targeted for invidious discrimination as a class of one  by Peralta and Chris Greenwalt who is now the TCCO head case manager to refuse Welsh tier advancement as other similarly situated Sexual violent Predators are only given special assignments to advance in tier after behavioral issues.

562. Greenwalt did violate Welsh's liberty interest in the clinical professional judgment of Kate Easter.

563. Peralta and Greenwalt did violate Welsh's liberty and property interest in seamless transition to release without procedural process to take his therapy away as outlined in Texas Health and Safety Code 841.0831.

564. Peralta and Greenwalt violated Welsh liberty interest in profession clinical judgment to behavioral specific special assignment.

565. Peralta, Greenwalt, Schmoker, Wilson, and Winslow purpose was to punish Welsh for past criminal charges that he was fully acquitted.

566. Peralta, Greenwalt, Schmoker, Wilson, and Winslow did retaliate against Welsh for exercising his United States Constitutional Sixth Amendment to defend himself against false criminal charges.


567. Wayne Schmoker and John Powel has imposed a policy through their roles as MTC agent and endorsed and condoned by Marsha McLane to harass Welsh day and night to prevent sleep. They have instructed there staff to continuously slam the door day and night, keep the radio at a loud volume and refuse to prevent the staff from talking loudly all night and into the early morning right by Unknown First name Palmer, L. Rayos , Darla Jennings, Unknown First Name Savala, Unknown First name Loyden, Unknown First Name Villarreal, Trevor Swanger, Unknown First name Sgt. Corea, Unknown First Name James Cruz, Adam Pierce, Joseph Trevino, Settles, Nurse Unknown First name Martinez, Nurse Barragan Fraser, S. Carrizales, Unknown First Name Thorne, Juan Rodriguez; Unknown first name Agurrie Unknown first name Campbell, Unknown first name Unknown first name Valenzuela Unknown first name Collins, Maria Weaver, Juan Rodriguez, Ashley Batista, Unknown first name Savala, Jimmy Renfro; A. Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Unknown first name Richardson, Unknown first name Follower; Unknown first name Nipper, Unknown first name Sierra, Unknown first name Williams and Emma Himojosa; from the dates of May 17, 2022 to January 24, 2022.

568.. These individuals are instructed to slam the door multiple times at night most nights a minimum of 8 times and a maximum of 15 times a night and into the early morning forcing Welsh awake with the loud and unnecessary slamming of the door by Welsh's cell despite there is no need for the policy at night and early morning as there is no movant in the SMU area from 9:30 p.m./. to 8:00 a.m. and by policy have their radio turned up at a loud volume in the SMU area which is a small enclosed space where the sound in amplified due to the design of SMU.

These staff members would also talk all night and day in front of Welsh's house that prevented him from sleeping.

569. On 4-12-22 Nipper, Himojosa, and Sierra worked the SMU area and did make noise all night through load speak and keep their radio up. Welsh asked them to hold it down and if they did not he would write a grievance, were Nipper responded that he would beat Welsh's ass calling him a white piece of shit.

570. Where Himojosa ran up to Welsh's door and said "do you hear that you white piece of shit he beat your ass."

571. Welsh reported what happen through a grievance which Stetson Fisher purposely threw away.

572. The next day Nipper came to work in the SMU, MTC staff Saenz told Nipper that Welsh was next to use the phone. However, Nipper told Welsh that since Welsh wants to threaten to write grievances and a law suit on him Welsh was "a piece of shit" and refused to allow Welsh to use the phone.

573. On 9-9-22 about midnight Nipper was yelling in the SMU area then passed Welsh's door and said how do you like that "Welsh bitch."

574. On or about 11-09-22 Nipper did work SMU. Welsh asked for a supervisor. Nipper then asked why, Welsh told him it was personal.

575. Nipper finally said he would call because "you wont quit whining you white trash.

576. James Cruz came and told Welsh that Nipper will stay in SMU despite his history of harassment and racial remarks against Welsh.

578. Later that night Welsh asked Nipper for his snack.

579. Nipper replied that Welsh cannot get shit from him.

580. Welsh then asked to get a grievance which Nipper said "if you not stop your shit something bad might happen to you." Meaning something bad will happen to Welsh.

581. These remarks have left Welsh in a constant state of fear that Nipper will hurt him causing extreme headaches and sickness to the stomach.

582. Welsh has nightmares were Nipper comes into Welsh's cell and starts spraying him with OC spray then beats him to death with a bat. These nightmares happen almost daily.

583. Welsh did file a complaint with witness statements however, the investigation resulted with it being unfounded because Nipper said so.

584. Welsh is afraid to file grievances on Nipper or any MTC staff because of fear of retaliation placing a chilling effect upon him filing grievances.

585. July 2022 Welsh requested to go to the dentist because of sever tooth pain request to get a filling.

586. Welsh has dental insurance and informed MTC medical department that he had the insurance.

587. October of 2022 Welsh seen MTC Medical Nurse Graves who is the head of the medical department at the TCCC.

588. Welsh asked why he is not being permitted to go to the medical appointment.

589. Nurse Graves claimed the reason was due to security under James Winckler.

590. Welsh asked Winkler why he was being denied medical that even convicted murders are allowed to go to medical appointments.

591. He claimed he was not denying medical that if he had security concerns he would just place Welsh in restraints. Welsh is being denied or delayed medial care by either Graves or Winkler without any legitimate reason.

592. Welsh was  diagnosed by the dentist with an unsalvageable tooth that was abscessed and infected that cause Welsh extreme mouth pain by Unknown name dentist on December 14, 2022.

593. Reasons given by Graves was that Welsh was in SMU and this was a part of James Winkler's and Wayne Schmoker's  punishment of Welsh. Welsh was in extreme pain in in mouth and jaw for several months by the delayed  medical care from July to December 12, 2022.

594. MTC hired an Unknown First Name Turner to do security at the TCCC.

595. During Turner training the MTC trainer , instructed Turner that the proper way to do a pat search was to go around an SVP's waist, up his legs, and then take the underside of the hand and feel around the genital area.

596. On 9/6/22 Turner was in SMU as part of his on the job training.

597. Turner was instructed by MTC staff Renfro to conduct the pat search as Welsh entered his room.

598. Renfro instructed Turner to do this despite Welsh's protest that Renfro had searched Welsh when he left the room and had eyes on Welsh the entire time.

599. Turner did go around Welsh's waist with his fingers, up his legs with the palm of his hands and then took the underside of his hands a felt around Welsh's genital area.

600. Welsh immediately turned and stopped the search process as this violated Welsh's personal private area.

601. Welsh was and felt sexually assaulted as never has any individual even in the Texas Department of Criminal Justice felt his genital area.

602. Turner did not have reasonable suspicion that Welsh was in possession of contraband and the search is carried out by a blanked MTC policy to harass Welsh when he leaves or enters his cell regardless if Welsh or another SVP in the SMU area never left the site of MTC staff and under constant surveillance by staff and camera.

603. Marsha McLane's and MTC SMU policy is designed to harass the SVP by conducting blanketed pat searches when entering or exiting a cell despite the fact that the MTC staff has constant observation of Welsh and never have they found any contraband material on Welsh.

604. Marsha McLane and MTC SMU policy also requires staff to search the SMU cell on a daily bases that leaves Welsh's cell destroyed and disheveled.

605. The purpose of the policy is to harass Welsh as a form of punishment while in SMU where the cell search and body search was conducted by Turner S. Murphree , Anthony, Unknown First Name Nipper , Tylor Swanger; Unknown First Name Cruz (night shift) ; Joseph Trevino, Michael Perez; Unknown First Name Titus; Unknown first name Cruz(day shift); S. Carrizales; Juan Rodriguez; Unknown First Name Williams; Victor Guerrero; L. Rayos, Jimmy Renfro; A. Sierra; Unknown first name Villarreal; unknown first name Unknown first name Valenzuela Unknown First name Loyden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown First Name  Villarreal, S. Carrizales, Unknown First Name Thorne,  Unknown first name Campbell, Unknown first name Collins, Unknown first name Savala,  Xavier Guzman; Unknown first name Richardson, Jose Cardenas.

606. Welsh felt humiliated and shammed by the fondling of his private genital area without cause by Marsha McLane's and MTC policy and training methods, that should have included but did not include searches based upon reasonable suspicion, not to conduct harassing searches of a cell on a daily bases that leaves a cell disheveled, harassing pat searches despite never leaving an officers site, and searches for the purpose of punishment.

607. Welsh has experienced sever psychological trauma that has resulted in depression, anxiety, fear, and nightmares of recurrent sexual molestation by MTC staff consistent searches and Turner's sexual assault.

608. During Welsh's placement in solitary confinement at the TCCC from May 17, 2022 to March 2023 Welsh was not provided with sex offender treatment in accordance with professional judgment by Sex Offender treatment Providers guidelines set by the Texas Administration Code § 810 Council On Sex Offender Treatment Subchapter C. Standards Of Practice.

609. The Texas Administration Council On Sex Offender Treatment § 810.61 begins with an Introduction to the State Standards of Practice Text These state standards were developed by the council to delineate appropriate assessment and treatment procedures and policies in Texas. These standards address the professional licensing expectations for the assessment and treatment of adult sex offenders and juveniles who commit sexual offenses.

The standard under Texas Administrative Code § 810.64 speaks of Assessment and Treatment Standards for Adult Sex Offenders:

(c) Treatment Standards for Adult Sex Offenders. Licensees shall adhere to the following standards when providing treatment to an adult sex offender:

   (1) cognitive-behavioral or other empirically supported approaches shall be utilized in sex offender treatment groups;

   (2) treatment groups shall not be less than 60 minutes in length with no more than 12 clients per group;

   (3) individual therapy, self-help groups, drug intervention, or other therapies to address and treat individual risk factors and problems specific to the individual shall be used as adjuncts to sexual offense specific group treatment

610. Welsh was denied group treatment during this time which also affected his liberty and liberty interest under Texas Health and Safety Code Sec. 841.0831 that allows for seamless transition to release.

611. Welsh was denied the treatment necessary under professional standards as Rachael Lang purposely used older treatment records that reflected actuarial test scores which were different than the test scores presently used in Welsh's biennial examination to further his treatment goals.

612. Wayne Schmoker, Rachael Lang, MTC, Lisa Peralta, Jessica Marsh, and Marsha McLane did conspire to deny Welsh treatment under the professional judgment standard and did deny Welsh treatment equal to that of other residents placed in SMU and denied Welsh the interest created by the policy that allows for group treatment while in SMU and for the seamless transition for release under Texas Health and Safety Code Sec. 841.0831.

613. Wayne Schmoker, Rachael Lang, MTC, Lisa Peralta, Jessica Marsh, and Marsha McLane did have a meeting of the minds when Welsh first complained about the lack of treatment, did communicate with each other in person and via emails to respond to Welsh's communication forms and grievances to deny Welsh the right and had MTC security staff, Lisa Peralta and Rachael Lang further the conspiracy by refusing to allow Welsh to attend group meetings.

614. This had an adverse affect of Welsh's mental health driving him deeply into depression that he will never be released with anxiety and nightmares of his mother dying with him separated by a wall preventing him to say goodbye and to visit her grave.

615. In February of 2020 or March of 202 the ankle monitor applied to Welsh's ankle by Chris Greenwalt under the TCCO policy to impose ankle monitors on those civilly committed in a secure residential treatment facility did cause Welsh injury by rubbing up and down Welsh's leg while he moved.

616. The ankle monitor was placed upon Welsh's ankle in a negligent fashion in such a way as Welsh would make normal movements it would rub continuously up and down upon Welsh's leg.

617. On April 8, 2020 the ankle monitor was changed by Chris Greenwalt due to deep sores on Welsh's ankle area that tore open his skin and caused bleeding with extreme pain every time he moved his leg.

618. The State of Texas waives sovereign immunity when an employee acting under the scope of their employment does injury an individual through the use of tangible property under Texas Civil Practice and remedies Code 101.021.

619. MTC and Marsha McLane's polices and the individual actions of MTC and TCCO staff does have a mutually enforcing effect that constitutes punishment by the totality of the conditions that denied of personal property and reading material other than legal in the solitary confinement in SMU from May 17, 2022 to January 26, 2023, the diminished recreation time in SMU; the lack of activates in SMU despite institutions like TDCJ providing equipment for recreation in their punishment scheme; the package denial from March 5, 2022 to June 17, 2023, the commissary denial from March 5, 2022 to June 17, 2023 without procedural due process, the denial of due process and the punishment by restraints from May 31, 2022 to October 1, 2022; the use of OC spray on September 15, 2022; the use of OC spray on May 31, 2022; the policy that allows force outside of the Texas Health and Safety Code 841.0838 and the contractual provisions for the use of force between MTC and TCCO; the search policy by MTC; the constant harassment day and night by MTC staff making loud unnecessary noise; the restrict access to knowledge and information in the form of books and law library access; the daily room searches that leave Welsh's housing area destroyed; and the sexual assault during the pat search by Turner.

## Count I
## Violation of The United States Fourteenth Amendment Due Process Clause

620. Marsha McLane, and MTC, did promulgate a policy that is defective under the procedural due process clause by not requiring any process in the taking of personal property under the facts of the complaint 95- 120.

621. Michael Searchy, Greg Shirley, and Adam Pierce did violate Welsh's rights to procedural due process by confiscating Welsh's property without a hearing under the facts of the complaint 95 – 120.

## Count II

**Violation of The United States Fourteenth Amendment Due Process Clause**
622. Marsha McLane and MTC did violate Welsh's substantive right by their policy that prevents Welsh over a matter of years to own and possess his personal property under the facts 95 – 120.

## Count III
**Violation of The United States Fourteenth Amendment Due Process Clause**
623. Marsha McLane and MTC did violate Welsh's substantive due process right not to be punished by their policy which allows the taking of Welsh's personal property for several years under the under the facts 95 – 120.

624. Michael Searcy, Greg Shirley, and Adam Pierce did violate Welsh's Substantive due process rights not to be punished by taking his property for almost five years in violation of the United States Constitutional Fourteenth Amendment under the facts of the complaint 95 – 120.

## Count IV
**Violation of The United States Fourteenth Amendment Due Process Clause**
625. Marsha McLane and MTC did violate Welsh's substantive due process to assess by professional medical judgment the affects the taking of his property for several years would have upon his mind under the under the facts 95 – 120.

## Count V
**Violation of The United States Fifth Amendment Taking Clause**
626. Marsha McLane does by policy effect a regulatory taking of Welsh's property in violation of the Taking Clause of the Fifth Amendment under the facts of the complaint 95 – 120.

## Count VI
**Violation of the United States Fourteenth Amendment**
627. Michael Searchy, Greg Shirley, and Adam Pierce did violate Welsh's to substantive right to property by depriving Welsh of the use of his personal property in violation of the United States Fourteenth Amendment under the facts of the complaint 95 – 120.

## Count VII
**Violation of the State Tort Law of Conversion**

628. MTC, Greg Shirley, and Adam Pierce did exercise dominion and control over Welsh's personal property that Welsh had a special reliance upon under the complaint 95 – 120

## Count VIII
### Violation of the State Law Tort of Intentional Infliction of Emotional Distress
629. MTC, Greg Shirley, and Adam Pierce extreme conduct of taking Welsh's property for five years caused Welsh sever emotional distress causing head aches, stomach cramps, and anxiety under the facts of the complaint 95 – 120.

## Count IX
### Violation of the United States Fourteenth Amendment
630. Adam Pierce, Joel Silvis, and under the orders of John Cochran did violate Welsh's right to be free from the excessive use of force in violation of the United States Fourteenth Amendment under the fact of the complaint 121 – 133.

## Count X
### Violation of State Tort Law Fiduciary Duty
631. MTC trough respondent superior, Greg Shirley, and Adam Pierce had both a formal and informal relationship with Welsh. MTC, Greg Shirley, and Adam Pierce duty was not to use its power against Welsh to unlawfully take his property and not to worsen welsh's mental illness a duty to improve the mental illness imposed by contract under the facts of the complaint 95 -120.

## Count XI
### Violation of the United States Fourteenth Amendment Civil Conspiracy
632. Marsha McLane, MTC, Michael Searcy, Greg Shirley, and Adam Pierce did have a meeting of the minds to formulate a policy and to operate in a concerted effort to further the conspiracy the impose that policy by force to deprive Welsh of his personal property and to deprive Welsh of his right to procedural process an d to deny Welsh fair compensation for his personal property under the facts of the complaint 95 – 120.

## Count XII

**Violation Of Fourteenth amendment Civil Conspiracy**

633. Management and Training Corporation whose Senor Vice President is Sergio Molin and Greg Shirley who signed the contract for services between MTC and Marsha McLane did conspire to violate Welsh's constitutional rights to procedural due process working in a concerted effort meeting of the minds to promulgate a policy to deny the process that is due for Welsh's property and working to enforce the confiscation of property through physical force to further the conspiracy through their agents Michael Searcy, Adam Pierce, and Greg Shirley under the facts of the complaint 95 – 120.

## Count XIII
### Violation of the United States Fourteenth Amendment Excessive Force

634. Adam Pierce, Julian Silvis, and under the orders of John Cochran did violate Welsh's right to be free from the excessive use of force in violation of the United States Fourteenth Amendment under the fact of the complaint 121 – 133.

## Count XIV
### Violation of State Tort Law Assault Causing Bodily Injury

635. MTC through respondent superior, Adam Pierce and Julian Silvis did assault Welsh in accordance with the Texas Penal Code 22.01(a)(1) under the facts of the complaint 121 – 133.

## Count XV
### Violation of State Tort Law Assault By Threat

636. MTC through respondent superior and John Cochran did assault Welsh by the threat of force in accordance with Texas Penal Code 22.01(a)(2) under the facts of the complaint 121 -133.

## Count XVI
### Violation of State Tort Law Assault by Offensive Physical Contact

637. MTC through respondent superior and Unknown first name Peon did assault Welsh by offensive physical contact in accordance with Texas Penal Code 22.01(a)(3) under the facts of the complaint 121 – 133.

## Count XVII
### Violation of State Tort Law Negligence

638. MTC through  respondent superior, John Cochran, Adam Pierce, Julian Silvis, Unknown First Name Peon were negligent under the use of force provisions

outlined in the MTC/TCCO contract under the facts of the complaint 121 – 133, 138.

## Count XVIII
### Violation of State Tort Law Negligence Per Se

639. MTC through respondent superior, John Cochran, Adam Pierce, and Julian Silvis were negligent in applying the Texas Statute Texas Health and Safety Code 841.0838 under the facts of the complaint 122 – 133, 137.

## Count XIX
### Violation of State Tort Law Negligence

640. MTC was negligent in its training of John Cochran, Adam Pierce, Julian Silvis, Unknown name Peon in their duty to train under the use of force provision in the MTC/TCCO contract under the facts of the complaint 122 – 133, 138.

## Count XX
### Violation of State Tort Law Negligence

641. MTC was negligent in its supervision of John Cochran, Adam Pierce, Julian Silvis, Unknown name Peon in their duty to supervise under the use of force provision in the MTC/TCCO contract under the facts of the complaint 122 – 133, 138.

## Count XXI
### Violation of State Tort Law Negligence

642. MTC was negligent in its training of John Cochran, Adam Pierce, and Julian Silvis in their duty to train under the Texas Health and safety Code 841.0838 under the facts of the complaint 122 – 133, 137

## Count XXII
### Violation of State Tort Law Negligence

643. MTC was negligent in its supervision of John Cochran, Adam Pierce, and Julian Silvis in their duty to supervision under the Texas Health and safety Code 841.0838 under the facts of the complaint 122 – 133,137

## Count XXIII
### Violation of State Tort Law Negligent Hiring

644. MTC did have a duty to inquire into the qualifications of John Cochran to operate a treatment facility given his background in working for prisons that

should have been foreseeable that he would institute prison rules and procedures failing to operate the TCCC as a treatment facility to use force in accordance with the MTC/TCCO contract and the Texas Health and Safety Code 841.0838 under the facts of the complaint 122 – 133.

## Count XXIV
## Violation of the State Law Tort of Intentional Infliction of Emotional Distress

645. MTC through respondent superior, John Cochran, Adam Pierce, Joel Silvis, and Unknown  name Peon did intentional inflict emotional distress upon Welsh under the facts of the complaint  122 – 133.

## Count XXV
## Violation of State Tort Law Third Party Beneficiary of Contract

646. MTC through respondent superior, John Cochran, Adam Pierce, Julian Silvis, and Unknown name first name Peon did violate Welsh rights under the MTC/TCCO contract use of force provision  under the facts of the complaint 122 – 133, 138.

## Count XXVI
## Violation Of Fourteenth Amendment State Created Liberty Interest

647. John Cochran, Adam Pierce, Julian Silvis, and Unknown name first name Peon did violate Welsh's liberty interest to be free from the use of force and to be free from the use of restraints protected by the procedural due process clause of the Fourteenth Amendment under the facts of the complaint 122 – 133, 137 – 138.

## Count XXVII
## Violation Of Fourteenth Amendment State Created Liberty Interest

648. Marsha McLane and MTC through their agents did promulgate a policy to use mechanical restraints outside of Welsh's state created liberty interest under Texas Health and Safety Code 841.0838 and the use of force provision under the

MTC/TCCO contract protected by the procedural due process clause of the United States Fourteenth Amendment under the facts of the 122 -133, 137 -138.

## Count XXVIII
### Violation of State Tort Law Violation Of Fiduciary Duty

649. MTC through respondent superior, John Cochran, Adam Pierce, Julian Silvis, and Unknown name first name Peon did violate Welsh rights by failing in their fiduciary duty both formal and informal relationship by using force outside MTC/TCCO contract use of force provision and using mechanical restraints outside of the Texas Health and Safety Code 841.0838 which the defendants had a duty to following under the facts of the complaint 122 – 133, 137 - 138.

## Count XXIX
### Violation Of Fourteenth Amendment State Created Liberty Interest

650. John Cochran; Wayne Schmoker; John Powell; James Winckler; Joel Garcia, Adam Pierce, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, James Cruz, Victoria Rodriguez, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Corea; Stetson Fisher Michael; Arenivaz, Julian Chavez, Joe Robinson, FNU De Vaugh; S. Murphree , A. Frasier ,Unknown First Name Nipper , Tylor Swanger; Unknown First Name Cruz (night shift) ; Joseph Trevino, Michael Perez; Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor;; did place Welsh in cuffs on a daily basis if Welsh left the cell for any reason which and to continuously while Welsh was outside of the cell in violation of Welsh's state created liberty interest under Texas Health and Safety Code 841.0838 and the MTC/TCCO contract under the use of force provision protected by the procedural due process clause of the Fourteenth Amendment under the facts of the complaint 134 – 146, 259 – 305.

## Count XXX
### Violation Of Fourteenth Amendment State Created Liberty Interest

651. Marsha McLane, Jessica Marsh and MTC through its agents Sergio Molina; John Cochran; Wayne Schmoker; and John Powell; did violate Welsh's state created liberty interest under Texas Health and Safety Code 841.0838 and the MTC/TCCO contract under the use of force provision by creating and promulgating a policy contrary to the liberty interest protected by the procedural due process clause of the Fourteenth Amendment under the facts of the complaint 134 – 146, 259 – 305.

## Count XXXI

### Violation Of The Fourteenth Amendment Excessive Use Of Force

652. John Cochran; Wayne Schmoker; John Powell; James Winckler; Joel Garcia, Adam Pierce, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, James Cruz, Victoria Rodriguez, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Corea; Stetson Fisher Michael; Arenivaz, Julian Chavez, Joe Robinson, FNU De Vaugh; S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor Swanger; Unknown First Name Cruz (night shift) ; Joseph Trevino, Michael Perez; Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; did use excessive force by applying the hand restraints that caused Welsh significant injury by cutting into his flesh leaving permeate scars and aggravating Welsh's bilateral neuropathy that was only aggravated through the use of restraints under the facts of the complaint 134 – 146, 259 – 305.

## Count XXXII
### Violation Of The United States Fourteenth Amendment Punishment

653. John Cochran; Wayne Schmoker; John Powell; James Winckler; Joel Garcia, Adam Pierce, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, James Cruz, Victoria Rodriguez, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Corea; Stetson Fisher

Michael;  Arenivaz, Julian Chavez, Joe Robinson, FNU De Vaugh; S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor  Swanger;  Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown First Name Titus;  Xavier Guzman;  S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero;  L. Rayos, Unknown first name Savala; Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; did punish Welsh by the use of mechanical restraints as it was under inclusive in violation of Welsh's substantive due process rights under the facts of the complaint 134 – 146, 259 – 305.

## Count XXXIII
### Violation Of The United States Fourteenth Amendment Punishment

654. Marsha McLane, Jessica Marsh, MTC, John Cochran; Wayne Schmoker; John Powell; and James Winckler did impose a policy to punish Welsh by the use of the mechanical restraints without procedural due process rights before or during punishment under the facts of the complaint 134 – 146, 259 – 305.

## Count XXXIV
### Violation Of United States Fourteenth Amendment Failure To Train

655. Marsha McLane, Jessica Marsh, MTC, John Cochran; Wayne Schmoker; John Powell; and James Winckler did have a duty to train its employees in the use of mechanical restraints that should have included but did not include the use of said restraints as a last resort, necessary to stop or prevent imminent physical injury to a committed person or another in violation of Welsh's procedural due process rights before or during punishment under the facts of the complaint 134 – 146, 259 – 305.

## Count XXXV
### Violation of State Tort Law Negligence

656. MTC through respondent superior; John Cochran; Wayne Schmoker; John Powell; James Winckler; Joel Garcia, Adam Pierce, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, James Cruz, Victoria Rodriguez, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Corea; Stetson Fisher,  Michael Arenivaz, Julian Chavez, Joe Robinson,

FNU De Vaugh; S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor Swanger; Unknown First Name Cruz (night shift) ; Joseph Trevino, Michael Perez; Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; did have a duty not to use force under the contract between MTC/TCCO unless in self defense under the facts of the complaint $134 - 146, 259 - 305$.

## Count XXXVI
### Violation of State Tort Law Negligence Per Se

657. MTC through respondent superior; John Cochran; Wayne Schmoker; John Powell; James Winckler; Joel Garcia, Adam Pierce, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, James Cruz, Victoria Rodriguez, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Corea; Stetson Fisher; Michael Arenivaz, Julian Chavez, Joe Robinson, FNU De Vaugh; S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor Swanger; Unknown First Name Cruz (night shift) ; Joseph Trevino, Michael Perez; Unknown First Name Titus; Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero; L. Rayos, Unknown first name Savala; Jimmy Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; did have a duty not to use force created by state law Texas Health and Safety Code 841.0838 under the facts of the complaint $134 - 146, 259 - 305$.

## Count XXXVII
### Violation of State Tort Law Negligence Training

658. MTC did fail to train John Cochran; Wayne Schmoker; John Powell; James Winckler; Joel Garcia, Adam Pierce, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, James Cruz, Victoria Rodriguez, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name

Corea; Stetson Fisher, Michael Arenivaz, Julian Chavez, Joe Robinson, FNU De Vaugh; S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor Swanger;  Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown First Name Titus;  Xavier Guzman;  S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero;  L. Rayos, Unknown first name Savala; Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor;  in their duty under the use of force provision of the MTC/TCCO contract under the facts of the complaint 134 – 146, 259  - 305.

## Count XXXVIII
### Violation of State Tort Law Negligence Supervision

659. MTC did fail to supervise John Cochran; Wayne Schmoker; John Powell; James Winckler; Joel Garcia, Adam Pierce, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, James Cruz, Victoria Rodriguez, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Corea; Stetson Fisher,  Michael Arenivaz, Julian Chavez, Joe Robinson, FNU De Vaugh; S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor  Swanger;  Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown First Name Titus;  Xavier Guzman;  S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero;  L. Rayos, Unknown first name Savala; Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor;  in their duty under the use of force provision of the MTC/TCCO contract under the facts of the complaint 134 – 146, 259  - 305.

## Count XXXIX
### Violation of State Tort Law Negligence Training

660. MTC did fail to train John Cochran; Wayne Schmoker; John Powell; James Winckler; Joel Garcia, Adam Pierce, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, James Cruz, Victoria Rodriguez, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name

Corea; Stetson Fisher, Michael Arenivaz, Julian Chavez, Joe Robinson, FNU De Vaugh; S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor Swanger;  Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown First Name Titus;  Xavier Guzman;  S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero;  L. Rayos, Unknown first name Savala; Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor;  in their duty under the use of mechanical restraints provision of the Texas Health and safety Code 841.0838 under the facts of the complaint 134 – 146, 259  - 305.

## Count XL
## Violation of State Tort Law Negligence Supervision

661. MTC did fail to supervise John Cochran; Wayne Schmoker; John Powell; James Winckler; Joel Garcia, Adam Pierce, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, James Cruz, Victoria Rodriguez, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Corea; Stetson Fisher,  Michael Arenivaz, Julian Chavez, Joe Robinson, FNU De Vaugh; S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor  Swanger;  Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown First Name Titus;  Xavier Guzman;  S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero;  L. Rayos, Unknown first name Savala; Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor;  had a duty to supervise under the use of mechanical restraints provision of the Texas Health and safety Code 841.0838 under the facts of the complaint 134 – 146, 259  - 305.

## Count XLI
## Violation of  State Tort Law Assault Bodily Injury

662. MTC through respondent superior; Joel Garcia, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, Julian Chavez, Joe Robinson, FNU De Vaugh; S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor

Swanger;  Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown first Name Titus;  Xavier Guzman;  S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero;  L. Rayos, Unknown first name Savala; Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; did assault Welsh in accordance to Texas Penal Code 22.01(a)(1) under the facts of the complaint 134 – 146, 259  - 305.

## Count XLII
### Violation of State Tort Law Assault by Offensive Physical Contact

663. MTC through respondent superior; Joel Garcia, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, Julian Chavez, Joe Robinson, FNU De Vaugh; S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor Swanger;  Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown first Name Titus;  Xavier Guzman;  S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero;  L. Rayos, Unknown first name Savala; Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; did assault Welsh in accordance to Texas Penal Code 22.01(a)(3) under the facts of the complaint 134 – 146, 259  - 305.

## Count XLIII
### Violation of State Tort Law Assault by Threat

664. MTC through respondent superior; John Cochran; Wayne Schmoker; John Powell; James Winckler; Adam Pierce, James Cruz, Victoria Rodriguez, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Corea; Stetson Fisher,  Michael Arenivaz, did assault Welsh in accordance to Texas Penal Code 22.01(a)(2) under the facts of the complaint 134 – 146, 259  - 305.

## Count XLIV
### Violation Of State Tort Law Fiduciary Duty

665. MTC did fail to supervise John Cochran; Wayne Schmoker; John Powell; James Winckler; Joel Garcia, Adam Pierce, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, James Cruz, Victoria Rodriguez, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Corea; Stetson Fisher,  Michael Arenivaz, Julian Chavez, Joe Robinson, FNU De Vaugh; S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor  Swanger;  Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown First Name Titus;  Xavier Guzman;  S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero;  L. Rayos, Unknown first name Savala; Jimmy Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor;  in their duty through the formal and informal relationship between them and Welsh to use of mechanical restraints provision of the Texas Health and safety Code 841.0838 and the MTC/TCCO contract under the facts of the complaint 134 – 146, 259  - 305.


## Count XLV
### Violation of State Tort Law Negligence

666. MTC through respondent superior, James Winckler and James Person were negligent in maintaining the security equipment mechanical restraints that consistently caused Welsh pain under the facts of the complaint 259 – 305.


## Count XLVI
### Violation of the United States Fourteenth Amendment Failure to Protect

667. Chris Greenwalt, Lisa Peralta, Derek Porter did fail to protect Welsh from being punished by the restraint restriction or the liberty interest in the freedom from restraint under the Texas Health and Safety Code 841.0838 under the facts of the complaint  259 – 305.


## Count XLVII
### Violation of the United States Fourteenth Amendment Civil Conspiracy

668. Marsha McLane, Jessica Marsh, MTC, and Wayne Schmoker did conspirer by the meeting of the minds to form a policy contrary to the Texas Health and safety Code 841.0838 and the contract between MTC and TCCO use of force provision to deprive Welsh the procedural protection needed to place him in continuous restraint, the protection of the statute and contract, to punish Welsh by restraint restriction both substantively and denying procedures, and the right to have restraints be ordered by clinical professionals while using the MTC employees to further the conspiracy by using physical forcing Welsh into the mechanical restraints under the facts of the complaint 259 - 305.

## Count XLVIII
## Intentional Infliction of Emotional Distress

669. MTC did through respondent superior; John Cochran;  Wayne Schmoker; John Powell; James Winckler; Joel Garcia, Adam Pierce, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, James Cruz, Victoria Rodriguez, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Corea; Stetson Fisher,  Michael Arenivaz, Julian Chavez, Joe Robinson, FNU De Vaugh; S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor  Swanger;  Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown First Name Titus;  Xavier Guzman; S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero;  L. Rayos, Unknown first name Savala; Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor under the facts of the complaint 134 – 146, 259  - 305.

## Count XLIX
## Violation of the United States Fourteenth Amendment Failure to Train

670. McLane was deficient in her duties to train Chris Green Walt, Jessica Marsh, Lisa Peralta, Derek Porter,  MTC and their employees in the use of mechanical restraints under the Texas Health and Safety Code 841.0838 under the facts of the complaint 259 -  299.

## Count L
### Violation of the United States Fourteen Amendment To Professional Judgment For The Use Of Restraints

671. Marsha McLane and MTC did violate Welsh right to have a clinical professional order Welsh in restraint by policy and ; John Cochran;  Wayne Schmoker; John Powell; James Winckler; Joel Garcia, Adam Pierce, Joel Silvis, Jesus Lara, James Flick, Adrian Flores, F. Lewis, Doug Radford, James Cruz, Victoria Rodriguez, Candy Weaver; Chapo Rodriguez (as supervisor ordering the restraints); Unknown first name Corea; Stetson Fisher,  Michael Arenivaz, Julian Chavez, Joe Robinson, FNU De Vaugh; S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor  Swanger;  Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown First Name Titus;  Xavier Guzman;  S. Carrizales; Juan Rodriguez; Unknown First Name Williams; V. Guerrero;  L. Rayos, Unknown first name Savala; Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; L. Rayos; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (day shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez did by practice violate Welsh's substantive right for clinical professional judgment to order restraints under the facts of the complaint 134 – 146, 259  - 305.

## Count LI

### Violation Of the United States Fourteenth Amendment Excessive Force

672.  Julian Chavez, Steven Scott, Wayne Schmoker, James Winckler, Joel Silvis , Victoria Rodriguez, Stetson Fisher, Michael Arenivaz  did use excessive force against Welsh under the facts of the complaint 147 – 235.

## Count LII
### Violation of the United States Fourteen Amendment Bystander Liability

673. Wayne Schmoker, James Winckler, Victoria Rodriguez, and Stetson Fisher did standby and allow excessive force to be used against Welsh under the facts of the complaint 147 – 235.

## Count LIII
## Violation Of Fourteenth Amendment  Supervisor Liability

674. Marsha McLane and MTC did approve and condone the use of excessive force by implementing a policy that allows for the excessive use of force that does not require ascending force and did condone the excessive force by promoting Wayne Schmoker and Steven Scott for using the excessive force  against Welsh under the facts of the complaint 147 – 235.

## Count LIV

## Violation Of the United States Fourteenth Amendment Excessive Force

675.  John Cochran, Julian Chavez, Steven Scott, Wayne Schmoker, James Winckler, Joel Silvis , Victoria Rodriguez, Stetson Fisher, Michael Arenivaz  did use excessive force against Welsh under the facts of the complaint 147 – 235.

## Count LV
## Violation of the United States Fourteen Amendment To
## Professional Judgment For The Use Of Restraints

676. Marsha McLane and MTC through their use of force policy and by practice John Cochran, Julian Chavez, Steven Scott, Wayne Schmoker, James Winckler, Joel Silvis , Victoria Rodriguez, Stetson Fisher, Michael Arenivaz  did violate Welsh's rights to professional clinical judgment before the non-emergency use of the chemical restraints under the facts of the complaint 147 – 235.

## Count LVI
### Violation of the United States Fourteen Amendment Bystander Liability

677. John Cochran, Wayne Schmoker, James Winckler, Victoria Rodriguez, and Stetson Fisher did standby and allow excessive force to be used against Welsh under the facts of the complaint 147 – 235.

## Count LVII
### Violation Of Fourteenth Amendment  Supervisor Liability

678. Marsha McLane and MTC did approve and condone the use of excessive force by implementing a policy that allows for the excessive use of force that does not require ascending force and condoned the excessive force by promoting Wayne Schmoker and Steven Scott under the facts of the complaint 147 – 235

## Count LVIII
### Violation of The United States Fourteenth Amendment Failure To Protect

679. Chris Greenwalt and Michael Searcy did fail to protect Welsh when he told them of the plan to use excessive force against him under the facts of the complaint 147 – 235.

## Count LIX
### Violation of State Tort Law Assault causing bodily injury
680. MTC through respondent superior, John Cochran,  Julian Chavez, Steven Scott, Wayne Schmoker, James Winckler, Joel Silvis , Victoria Rodriguez, Stetson Fisher, Michael Arenivaz  did assault  Welsh in accordance with Texas Penal Code 22.01(a)(1) and 22.02(under the facts of the complaint 147 – 235.

## Count LX
### Violation of State Tort Law Assault by Threat
681. MTC through respondent superior,  John Cochran , Wayne Schmoker, James Winkler, Victoria Rodriguez, Stetson Fisher, and Michael Arenivaz did assault Welsh by threat in accordance with Texas Penal Code 22.01(a)(2) under the facts of the complaint 147 – 235.

## Count LXI
### Violation of State Tort Law Negligence

682. MTC through respondent superior, John Cochran, Julian Chavez, Steven Scott, Wayne Schmoker, James Winckler, Joel Silvis , Victoria Rodriguez, Stetson Fisher, Michael Arenivaz were negligent in their duty under the MTC/TCCO contract only to use force in the instances of self defense under the facts of the complaint 137,  147 – 235.

## Count LXII
### Violation State Tort Negligence Per Se

**683.**   MTC through respondent superior, John Cochran, Julian Chavez, Steven Scott, Wayne Schmoker, James Winckler, Joel Silvis , Victoria Rodriguez, Stetson Fisher, Michael Arenivaz were negligent per se  in their duty under the Texas Health and Safety Code 841.0838 under the facts of the complaint 147 – 235, 292.

## Count LXIII
### Violation of State Tort Law Negligence Failure to Train

684. MTC was negligent in its duty to train John Cochran , Julian Chavez, Steven Scott, Wayne Schmoker, James Winckler, Joel Silvis , Victoria Rodriguez, Stetson Fisher, Michael Arenivaz were negligent per se  in their duty under the Texas Health and Safety Code 841.0838 and the MTC/TCCO contract under the facts of the complaint 138,147 – 235, 292.

## Count LXIV
### Violation of State Tort Law Negligent Supervision

685. MTC was negligent in its duty to supervise John Cochran, , Julian Chavez, Steven Scott, Wayne Schmoker, James Winckler, Joel Silvis , Victoria Rodriguez, Stetson Fisher, Michael Arenivaz were negligent per se  in their duty under the Texas Health and Safety Code 841.0838 and the MTC/TCCO contract under the facts of the complaint 137, 147 – 235,  292.

## Count LXV
### Violation of State Tort Law Negligent

686. MTC through respondent superior, and Wayne Schmoker were negligent when Schmoker forced Welsh to stay in the contaminated cell refused to allow him to change clothing then ordered force to place him back into the contaminated cell under the facts of the complaint  189 -235.

## Count LXVI
## Violation of State Tort Law Negligent Training

687. MTC was negligent in its training of  Wayne Schmoker when Schmoker forced Welsh to stay in the contaminated cell refused to allow him to change clothing then ordered force to place him back into the contaminated cell under the facts of the complaint  189 -235.

## Count LXVII
## Violation of State Tort Law Negligent Supervision

688. MTC was negligent in its supervision of  Wayne Schmoker when Schmoker forced Welsh to stay in the contaminated cell refused to allow him to change clothing then ordered force to place him back into the contaminated cell under the facts of the complaint  189 -235.

## Count LXVIII
## Violation of State Tort Law Unlawful Interference With Utility

689.  MTC through respondent superior and Wayne Schmoker did unlawfully interfere with Welsh's water to prevent him from decontaminating his body from the OC spray under the facts of the complaint 189 – 235.

## Count LXIX
## Violation of State Tort Law Negligent Hiring

690. MTC was negligent in its hiring of John Cochran and Wayne Schmoker how have experience only in running a prison and not in the operation of a residential treatment facility under the facts of the complaint 147 – 235.

## Count LXX
### Violation Of United States Constitutional Fourteenth Amendment State Created Liberty Interest

691. Marsha McLane and MTC did by policy and John Cochran, , Julian Chavez, Steven Scott, Wayne Schmoker, James Winckler, Joel Silvis , Victoria Rodriguez, Stetson Fisher, Michael Arenivaz did violate Welsh's state created liberty interest protected by the procedural due process clause in Welsh's interest in Texas Health and Safety Code 841.0838 when chemical restraints can be used and the MTC/TCCO contract use of force provision only in self defense under the facts of the complaint  138, 147 – 235, 292,

## Count LXXI
### Violation of State Tort Law Invasion of Privacy

692. MTC did through respondent superior, Wayne Schmoker, Victoria Rodriguez, Steven Scott, Julian Chavez, F. Lewis, A. Adrian Flores did intrude upon Welsh's seclusion when he was in a locked cell trying to morn his families death under the facts of the complaint  147 – 235.

## Count LXXII
### Violation of Fourteenth Amendment Punishment

693.  John Cochran, , Julian Chavez, Steven Scott, Wayne Schmoker, James Winckler, Joel Silvis , Victoria Rodriguez, Stetson Fisher, Michael Arenivaz did use the chemical restraints as a form of punishment against Welsh in violation of the substantive due process clause of the Fourteenth Amendment under the facts of the complaint 147 – 235, 255 – 256

## Count LXXIII
### Violation of State Tort Third Party Beneficiary of Contract

694. MTC through respondent superior, John Cochran, , Julian Chavez, Steven Scott, Wayne Schmoker, James Winckler, Joel Silvis , Victoria Rodriguez, Stetson Fisher, Michael Arenivaz did violate Welsh's interest in the MTC/TCCO contract provision of the use of force under residents rights that Welsh placed reliance upon under the facts of the complaint 137, 147  -  235.

## Count LXXIV
### Violation of State Tort Fiduciary Duty

695. MTC through respondent superior,, John Cochran, , Julian Chavez, Steven Scott, Wayne Schmoker, James Winckler, Joel Silvis , Victoria Rodriguez, Stetson Fisher, Michael Arenivaz had a duty not to use excessive force against Welsh both under the Texas Health and Safety Code and 841.0838 and the MTC/TCCO contract use of force provision both the formal and informal relationship with the defendants under the facts of the complaint 137, 147 – 235, 255 – 256

## Count LXXV
### Violation of State Tort Law Intentional Infliction of Emotional Distress

696. MTC through respondent superior John Cochran, , Julian Chavez, Steven Scott, Wayne Schmoker, James Winckler, Joel Silvis , Victoria Rodriguez, Stetson Fisher, Michael Arenivaz did through their extreme conduct cause sever and intensive emotion distress upon Welsh under the facts of the complaint  147 – 235.

## Count LXXVI
### Violation of State Tort Law Private Nuisance

697. MTC through respondent superior and John Cochran did cause a private nuisance when they turned off Welsh's water under facts of the complaint 135, 317 -318.

## Count LXXVII
### Violation of State Tort Law Negligence

698. MTC through respondent superior and John Cochran  were negligent  when they turned off Welsh's water under facts of the complaint 135, 317 -318

## Count LXXVIII
### Violation of State Tort Negligence Training

699. MTC was negligent in its duty in training John Cochran in keeping Welsh's water on and the need to turn the  water off  under the facts of the complaint 135, 317 -318.

## Count LXXIX
### Violation of State Tort Negligence Supervision

700. MTC was negligent in its duty in supervising John Cochran in keeping him from turning Welsh water off without cause under the facts of the complaint 135, 317 -318.

## Count LXXX
### Violation Of State Tort Negligent Hiring

701. MTC was negligent in its hiring of John Cochran who was experienced only in running prison faculties and did not understand the difference between prison and the residential treatment facility running the TCCC as a prison under the facts of the complaint 135, 317 -318.

## Count LXXXI
### Violation of State Tort Law Unlawful Interference With Utility

702. MTC through respondent superior and John Cochran unlawfully interfered with Welsh's water under the facts of the complaint $135, 317 - 318$.

## Count LXXXII
### Violation of State Tort Intentional Infliction of Emotional Distress

703. MTC through respondent superior and John Cochran through their extreme conduct of turning Welsh's water off for weeks did intention inflict sever emotional destress against Welsh under the facts of the complaint $135, 317 - 318$.

## Count LXXXIII
### Violation Of The United States Fourteenth Amendment
### Procedural Due Process

704. John Cochran did violate Welsh procedural due process rights in his property interest in his water without any procedures before or after the turning off of Welsh's water under the facts of the complain 135, 317 -318.

## Count LXXXIV
### Violation of the United States Fourteenth Amendment Punishment

705. John Cochran did intentional punish Welsh without procedural due process under the facts of the complaint 135, 317 – 318.


## Count LXXXV
### Violation Of United States Constitutional
### Fourteenth Amendment Excessive Force

706. James Winckler , James Pearson,  Chapo Rodriguez,  Unknown First name Saenz, and Jose Cardenas  did use excessive force against Welsh under the facts of the complaint  236 – 258.


## Count LXXXVI
### Violation of the United States Constitutional
### Fourteenth Amendment Punishment

707. Marsha McLane and MTC did by the use of force policy and James Winckler , James Pearson,  Chapo Rodriguez,  Unknown First name Saenz, and Unknown name Cardenas did by practice punish Welsh by the use of the chemical spray under the facts of the complaint 236 – 258.

## Count LXXXVII
### Violation of the United States Constitutional
### Fourteenth Amendment Punishment

708. James Winkler did punish Welsh when he refused to allow him to decontaminate his body from the OC spray and shutting off his water under the facts of the complaint 236 – 258.


## Count LXXXVIII
### Violation of the United States Constitutional
### Fourteenth Amendment State Created Liberty Interest

709. Marsha McLane and MTC did by the use of force policy and James Winckler , James Pearson,  Chapo Rodriguez,  Unknown First name Saenz, and Unknown name Cardenas did by practice violate Welsh's rights under the Texas Health and Safety Code 841.0838 and MTC/TCCO contract under the facts of the complaint 137 -138, 236 – 258, 292.


## Count LXXXIX
### Violation of the United States Fourteen Amendment To
### Professional Judgment For The Use Of Restraints

710. Marsha McLane and MTC did by the use of force policy and James Winckler , James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Unknown name Cardenas did by practice violate Welsh's substantive right to the use of professional clinical judgment before the application of chemical restraints under the facts of the complaint 147 – 258.

## Count XC
### Violation of the United States Constitutional
### Fourteenth Amendment Failure to Train

711. Marsha McLane and MTC failed to train and supervise James Winckler , James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Unknown name Cardenas in the obvious need that OC spray a weapon and intermediate force should of included recognizing when to use OC spray as a last resort and necessary to stop or prevent imminent physical harm to another person and to use ascending force to first use skill in maneuvers to gain compliance from passive aggressive SVP committed individuals under the facts of the complaint 147 - 258, 310 -316..

## Count XCI
### Violation of State Tort Law Assault Causing Bodily Injury

712. MTC through respondent superior, James Winckler , James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Jose Cardenas did assault Welsh causing bodily injury in accordance with Texas Penal Code 22.01(a)(1) under the facts of the complaint 236 – 258.

## Count XCII
### Violation of State Tort Law Assault By Threat

713. James Winkler did make the threat to use OC spray against welsh that Pearson carried out in accordance to Texas Penal Code 22.01(a)(2) under the facts of the complaint 236 – 258.

## Count XCIII
### Violation of State Tort Law Assault by Offensive Physical Contact

714. MTC through respondent superior, Chapo Rodriguez,  Unknown First name Saenz, and Jose Cardenas  did assault Welsh in accordance to Texas Penal Code 22.01(a)(3) under the facts of the complaint 236 – 258.

## Count XCIV
## Violation of State Tort Law Unlawful Interference With Utility

MTC through respondent superior and James Winckler did unlawfully interfere with Welsh's water to prevent him from decontaminating his body from the OC spray under the facts of the complaint 236 – 258.

## Count XCV
## Violation of State Tort Law Negligence

715. MTC through respondent superior, James Winckler , James Pearson,  Chapo Rodriguez,  Unknown First name Saenz, and Jose Cardenas  were negligent in their duty to apply the MTC/TCCO contract use of force provision under the facts of the complaint 137 – 138, 236 – 258.

## Count XCVI
## Violation of State Tort Law Negligence Per Se

716. MTC through respondent superior, James Winckler , James Pearson,  Chapo Rodriguez,  Unknown First name Saenz, and Jose Cardenas  were negligent in their duty to apply the Texas Health and Safety Code 841,0838 under the facts of the complaint 137 – 138, 236 -258, 296.

## Count XCVII
## Violation of State Tort Law Negligent Training

717. MTC was negligent in their training of James Winckler , James Pearson,  Chapo Rodriguez,  Unknown First name Saenz, and Jose Cardenas  were negligent in their duty to train their employees under the  MTC/TCCO contract use of force provision under the facts of the complaint 137 – 138, 236 – 258.

## Count XCVIII
## Violation of State Tort Law Negligent Supervision

718. MTC  was negligent in their supervision of  James Winckler , James Pearson,  Chapo Rodriguez,  Unknown First name Saenz, and Jose Cardenas  were negligent

in their duty to supervise their employees under the MTC/TCCO contract use of force provision under the facts of the complaint 137 – 138, 236 – 258.

## Count XCIX
### Violation of State Tort Law Negligent Training

719. MTC was negligent in their training of James Winckler , James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Jose Cardenas were negligent in their duty to train their employees under Texas Health and Safety Code 841,0838 under the facts of the complaint 137 – 138, 236 -258, 296.

## Count  C
### Violation of State Tort Law Negligent Supervision

720. MTC  was negligent in their supervision of James Winckler , James Pearson, Chapo Rodriguez, Unknown First name Saenz, and Jose Cardenas  were negligent in their duty to supervise their employees under the  Texas Health and Safety Code 841,0838 under the facts of the complaint 137 – 138, 236 -258, 296.

## Count CI
### Violation of State Tort Law Negligent Hiring

721. MTC was negligent when they hired James Winckler who has only worked security in prisons and does not understand the difference between a prison and a residential treatment facility under the facts of the complaint 236 – 258.

## Count CII
### Violation of State Tort Law Fiduciary Duty

722. MTC through respondent superior, James Winckler , James Pearson,  Chapo Rodriguez, Unknown First name Saenz, and Jose Cardenas  did assault Welsh did violate its fiduciary duty to Welsh both formal and informal to follow the MTC/TCCO contract use of force provision, to follow the Texas Health and Safety code 841.0838, not to use excessive force, not to assault Welsh and to allow him to decontaminate under the facts of the complaint 236 -258.

## Count CIII
### Violation of State Tort Law Intentional Infliction of Emotional Distress

723. MTC through respondent superior, James Winckler , James Pearson,  Chapo Rodriguez, Unknown First name Saenz, and Jose Cardenas  did cause intense and

sever emotional distress through their outrageous and extreme conduct under the facts of the complaint 236 – 258.

## Count CIV
### Violation of the Fourteenth Amendment Procedural and Substantive Due Process Rights Freedom From Punishment

724. John Cochran did write Welsh a fraudulent disciplinary in order to harsh Welsh for making complaints about the staff stealing his sunglasses and to cover up the purpose for the use of force on November 28, 2019 under the facts of the complaint 121 -133, 306 – 307.

## Count CV
### Violation of State Tort Law Libel
725. MTC through respondent superior and John Cochran did make false allegations against Welsh of a defamatory nature publishing said lies in a disciplinary to bring false charges against Welsh under the facts of the complaint 121 – 133, 306 – 307.

## Count CVI
### Violation of State Tort law Negligence
726. MTC through respondent superior and John Cochran were negligent in their duty not to make false allegation in a disciplinary report under the facts of the complaint 121 – 133, 306 – 307.

## Count CVII
### Violation of State Tort Law Negligent Training
727. MTC was negligent in its training of John Cochran in how to file disciplinary reports with factual content under the facts of the complaint 121 – 133, 306 – 307.

## Count CVIII
### Violation of State Tort Law Negligent Supervision
728. MTC was negligent in its supervision of John Cochran in to prevent him from filing disciplinary reports with factual content under the facts of the complaint 121 – 133, 306 – 307.

## Count CIX
### Violation of State Tort Law Negligent Hiring

729. MTC was negligent in its hiring of John Cochran for failing to uncover his veracity in telling the truth under the facts of the complaint 122 – 133, 306 – 307.

## Count CX
### Violation of State Tort Law Fiduciary Duty

MTC through respondent superior and John Cochran did have a duty to report actual facts in a disciplinary proceeding  by their formal and informal relationship with Welsh under the facts of the complaint 121 – 133, 306 -307.

## Count CXI
### Violation Of State Tort Law Abuse Of Process

730. MTC through respondent superior and John Cochran did abuse the disciplinary process as part of welsh's civil commitment order to bring about punishing Welsh under false pretenses under the facts of the complaint 121 – 133, 306 – 307.

## Count CXI
### Violation of State Tort law Intentional Infliction of Emotional Distress

731. MTC through respondent superior and John Cochran did through their outrageous and extreme conduct that did inflict intense  and sever emotional distress upon Welsh under the facts of the complaint 121 – 133, 306 – 307.

## Count CXII
### Violation of United States Constitution
### Fourteenth Amendment Punishment, and harassment

732. Greg Shirley and John Cochran did write Welsh disciplinary report to prevent him from asking for protective custody and did punish Welsh through an over exaggerated response and excessive punishment to any security needs and did harass Welsh to prevent him from filing for protective custody in the future  under the facts of the complaint 308 -309, 322 -323.

## Count CXIII
## Violation of State Tort Law Negligent Training

733. MTC was negligent in its training of Greg Shirley and John Cochran in how to file disciplinary reports with factual content under the facts of the complaint 308 – 309, 322 – 323.

## Count CXIV
## Violation of State Tort Law Negligent Supervision

734. MTC was negligent in its supervision of Greg Shirley and John Cochran in to prevent him from filing disciplinary reports with factual content under the facts of the complaint 308 – 309, 322 -323.

## Count CXV
## Violation of State Tort Law Negligent Hiring

735. MTC was negligent in its hiring of Greg Shirley and John Cochran for failing to uncover his veracity in telling the truth under the facts of the complaint 308 – 309, 322 -323.

## Count CXVI
## Violation of State Tort Law Fiduciary Duty

736. MTC through respondent superior ,Greg Shirley and John Cochran did have a duty to report actual facts in a disciplinary proceeding  by their formal and informal relationship with Welsh under the facts of the complaint 308 – 309, 322 -323.

## Count CXVII
## Violation Of State Tort Law Abuse Of Process

737. MTC through respondent superior Greg Shirley and John Cochran did abuse the disciplinary process as part of welsh's civil commitment order to bring about punishing Welsh under false pretenses under the facts of the complaint 308 – 309, 322 -323.

## Count CXVIII
## Violation of State Tort law Intentional Infliction of Emotional Distress

738. MTC through respondent superior Greg Shirley and John Cochran did through their outrageous and extreme conduct that did inflict intense and sever emotional distress upon Welsh under the facts of the complaint 308 – 309, 322 - 323.

## Count CXIX
## Violation Of United States Constitutional Fourteenth Amendment Procedural and Substantive Due Process Clause Punishment

739. John Cochran, Wayne Schmoker and Joel Garcia did falsify disciplinary proceedings to cover up his unlawful assault and excessive force against Welsh in violation of the procedural and substantive due process clause under the facts of the complaint 310 – 316.

## Count CXX
## Violation of United States Constitutional Fourteenth Amendment Excessive Force

740. John Cochran, Wayne Schmoker and Joel Garcia did use excessive force against Welsh when he applied the hand restraints against Welsh to purposely cause Welsh injury under the facts of the complaint 310 – 316.

## Count CXXI
## Violation of United States Constitutional Fourteenth Amendment State Created Liberty Interest

741. Marsha McLane and MTC through their use of restraint policies and John Cochran, Wayne Schmoker and Joel Garcia by practice did violate Welsh's state created liberty interest in the Texas Health and Safety Code 841.0838 and the MTC/TCCO contract use of force provision under the facts of the complaint 137 – 138, 292, 310 – 316.

## Count CXXII
## Violation of State Tort Law Assault Causing Bodily Injury

742. MTC through respondent superior and Joel Garcia did assault Welsh with the hand restraints causing bodily injury in accordance with Texas Penal Code 22.01(a)(1) under the facts of the complaint 310 -316.

## Count CXXIII
## Violation of State Tort Law Libel

743. MTC through respondent superior, John Cochran, Wayne Schmoker and Joel Garcia did make false allegations against Welsh of a defamatory nature publishing said lies in a disciplinary to bring false charges against Welsh under the facts of the complaint 310 – 316.

## Count CXXIV
### Violation of State Tort law Negligence

744. MTC through respondent superior, John Cochran, Wayne Schmoker and Joel Garcia were negligent in their duty not to make false allegation and assault Welsh in a disciplinary report and with hand restraints under the facts of the complaint 310 – 316.

## Count CXXV
### Violation of State Tort Law Negligent Training

745. MTC was negligent in its training of John Cochran, Wayne Schmoker and Joel Garcia in how to file disciplinary reports with factual content , when to apply hand restraints and how to apply hand restraints under the facts of the complaint 310 – 316.

## Count CXXVI
### Violation of State Tort Law Negligent Supervision

746. MTC was negligent in its supervision of John Cochran, Wayne Schmoker and Joel Garcia in to prevent him from filing disciplinary reports with factual content and the application of hand restraints under the facts of the complaint 310 – 316.

### Violation of State Tort Law Negligent Hiring

747. MTC was negligent in its hiring of John Cochran, Wayne Schmoker and Joel Garcia for failing to uncover his veracity in telling the truth and for his violent tendencies under the facts of the complaint 310 – 316.

## Count CXXVII
### Violation of State Tort Law Fiduciary Duty

748. MTC through respondent superior John Cochran and Joel Garcia did have a duty to report actual facts in a disciplinary proceeding by their formal and informal relationship with Welsh under the facts of the complaint 310 – 316.

## Count CXXVIII
### Violation Of State Tort Law Abuse Of Process

749. MTC through respondent superior , John Cochran, Wayne Schmoker and Joel Garcia did abuse the disciplinary process as part of welsh's civil commitment order to bring about punishing Welsh under false pretenses under the facts of the complaint 310 – 316.

## Count CXXIX
### Violation of State Tort law Intentional Infliction of Emotional Distress

750. MTC through respondent superior John Cochran, Wayne Schmoker and Joel Garcia did through their outrageous and extreme conduct that did inflict intense and sever emotional distress upon Welsh under the facts of the complaint 310 – 316.

## Count CXL
### Violation of State law Third Party Beneficiary to the Contract

751. MTC through respondent superior John Cochran, Wayne Schmoker and Joel Garcia did violate the MTC/TCCO contract under the use of force provision that was created for the benefit of Welsh and his class under the facts of the complaint 310 – 316.

## Count CXLI
### Violation of United States Constitution
### Fourteenth Amendment Punishment, and harassment

752. Adrian Flores and Julian Chavez did write Welsh a false disciplinary report to prevent to punish him Welsh through an over exaggerated response and excessive punishment compared to any security needs under the facts of the complaint 319 -321.

## Count CXLII
### Violation of State Tort Law Libel

753. MTC through respondent superior , Adrian Flores and Julian Chavez did make false allegations against Welsh of a defamatory nature publishing said lies in a disciplinary to bring false charges against Welsh under the facts of the complaint 319 -321.

## Count CXLIII
### Violation of State Tort Law Negligent Training

754. MTC was negligent in its training of Adrian Flores and Julian Chavez in how to file disciplinary reports with factual content under the facts of the 319 -321.

## Count CXLIV
### Violation of State Tort Law Negligent Supervision

755. MTC was negligent in its supervision of Adrian Flores and Julian Chavez in to prevent him from filing disciplinary reports with factual content under the facts of the complaint 319 -321.

## Count CXLV
### Violation of State Tort Law Negligent Hiring

756. MTC was negligent in its hiring of Adrian Flores and Julian Chavez for failing to uncover his veracity in telling the truth under the facts of the complaint 319 -321.

## Count CXLVI
### Violation of State Tort Law Fiduciary Duty

757. MTC through respondent superior Adrian Flores and Julian Chavez did have a duty to report actual facts in a disciplinary proceeding by their formal and informal relationship with Welsh under the facts of the complaint 319 -321.

## Count CXLVII
### Violation Of State Tort Law Abuse Of Process

758. MTC through respondent superior, Adrian Flores and Julian Chavez did abuse the disciplinary process as part of welsh's civil commitment order to bring about punishing Welsh under false pretenses under the facts of the complaint 319 - 321.

## Count CXLVIII
### Violation of State Tort law Intentional Infliction of Emotional Distress
759. MTC through respondent superior, Adrian Flores and Julian Chavez did through their outrageous and extreme conduct that did inflict intense and sever emotional distress upon Welsh under the facts of the complaint 319 -321.

## Count CXLIX
### Violation of United State Constitutional Fourteenth Amendment
### Punishment Without Procedural Due Process

760. Wayne Schmoker did punish Welsh by denying him visitation that was not given to him as a sanction in violation of his procedural due process rights under the facts of the complaint 324.

## Count CL
### Violation of State Tort Law Negligent Training
761. MTC was negligent in its training of Wayne Schmoker in how to impose disciplinary without procedural due process and not to over punish or punish outside of the sanction given at a disciplinary hearing under the facts of the 324.

## Count CLI
### Violation of State Tort Law Negligent Supervision
762. MTC was negligent in its supervision of Wayne Schmoker who did impose disciplinary without procedural due process and not to over punish or punish outside of the sanction given at a disciplinary hearing under the facts of the 324.

## Count CLII
### Violation of State Tort Law Negligent Hiring

763. MTC was negligent in its hiring of Wayne Schmoker for failing to uncover his vindictive personality flaws under the facts of the complaint 324.

## Count CLIII
### Violation of State Tort Law Fiduciary Duty

764. MTC through respondent superior, Wayne Schmoker did have a duty to impose only the sanctions leveled against Welsh in a disciplinary hearing and not over punish him through formal and informal relationship with Welsh under the facts of the complaint 324.

## Count CLIV
### Violation of State Tort law Intentional Infliction of Emotional Distress

765. MTC through respondent superior and Wayne Schmoker did through their outrageous and extreme conduct to punish Welsh by denying him visitation with his family that did inflict intense and sever emotional distress upon Welsh under the facts of the complaint 324.

## Count CLV
### Violation of The United States Fourteenth Amendment
### Procedural Due Process Clause Punishment

766. Marsha McLane and MTC did by policy and Kendrick Fennel, Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's procedural due process rights to notice under the facts of the complaint 325 – 328.

## Count CLVI
### Violation of The United States Fourteenth Amendment
### Substantive Due Process Clause Punishment

767. Marsha McLane and MTC did by policy and Kendrick Fennel, Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's substantive due process by excessive punishment and false disciplinary rights under the facts of the complaint 325 – 328.

## Count CLVII
### Violation of State Tort Law Negligent Training

768. MTC was negligent in its training of James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker in how to impose disciplinary without

procedural due process and did violate Welsh's substantive rights under the facts of the 325 – 328.

## Count CLVIII
### Violation of State Tort Law Negligent Supervision

769. MTC was negligent in its supervision of James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker who did impose disciplinary without procedural due process and did violate Welsh's substantive rights under the facts of the 325 – 328.

## Count CLIX
### Violation of State Tort Law Negligent Hiring

770. MTC was negligent in its hiring of James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker for failing to uncover his vindictive personality flaws under the facts of the complaint 325 – 328.

## Count CLX
### Violation of State Tort Law Fiduciary Duty

771. MTC through respondent superior, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did have a duty to excessively punish Welsh under false pretenses through the formal and informal relationship with Welsh under the facts of the complaint 325 – 328.

## Count CLXI
### Violation of State Tort law Intentional Infliction of Emotional Distress

772. MTC through respondent superior James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did through their outrageous and extreme conduct to punish Welsh by excessive punishment and under false pretenses that did inflict intense and sever emotional distress upon Welsh under the facts of the complaint 325 – 328.

## Count CLXII
### Violation Of State Tort Law Abuse Of Process

773. MTC through respondent superior James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did abuse the disciplinary process as

part of welsh's civil commitment order to bring about punishing Welsh under false pretenses under the facts of the complaint 325 -328.

## Count CLXIII
### Violation of United States Constitutional Fourteenth Amendment Procedural Due Process Clause To Clinical Professional Judgment

774. Marsha McLane and MTC did by policy and Kendrick Fennel, Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's procedural due process rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms under the facts of the complaint 325 – 328.

## Count CLXIV
### Violation of The United States Fourteenth Amendment Substantive Due Process Clause To Clinical Professional Judgment

775. Marsha McLane and MTC did by policy and Kendrick Fennel, Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms under the facts of the complaint 325 – 328.

## Count CLXV
### Violation of The United States Fourteenth Amendment Procedural Due Process Clause Punishment

776. Marsha McLane and MTC did by policy and Candy Weaver, Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's procedural due process as the hearing was a shame rights under the facts of the complaint 329 – 344.

## Count CLXVI
### Violation of The United States Fourteenth Amendment Substantive Due Process Clause Punishment

777. Marsha McLane and MTC did by policy and Candy Weaver, Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms under the facts of the complaint 329 – 344.

## Count CLXVII
### Violation of United States Constitutional Fourteenth Amendment Procedural Due Process Clause To Clinical Professional Judgment

778. Marsha McLane and MTC did by policy and Candy Weaver, Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's procedural due process rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms   under the facts of the complaint 329 – 344.

## Count CLXVIII
### Violation of The United States Fourteenth Amendment Substantive Due Process To Clinical Professional Judgment

779. Marsha McLane and MTC did by policy and Candy weaver, Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms under the facts of the complaint 329 – 344.

## Count CLXIX
### Violation of State Tort Law Negligent Training

780. MTC was negligent in its training of Candy Weaver , James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker in how to impose disciplinary without procedural due process and did violate Welsh's substantive rights under the facts of the 329 – 344.

## Count CLXX
### Violation of State Tort Law Negligent Supervision

781. MTC was negligent in its supervision of Candy Weaver, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker who did

impose disciplinary without procedural due process and did violate Welsh's substantive rights under the facts of the 329 – 344.

## Count CLXXI
### Violation of State Tort Law Negligent Hiring

782. MTC was negligent in its hiring of Candy Weaver,  James Pearson, James Winckler,  Stetson Fisher, Sahar Sooter  and Wayne Schmoker  for failing to uncover his vindictive personality flaws and veracity for the truth under the  facts of the complaint 329 – 344.

## Count CLXXII
### Violation of State Tort Law Fiduciary Duty

783. MTC through respondent superior, Candy Weaver  James Pearson, James Winckler,  Stetson Fisher, Sahar Sooter  and Wayne Schmoker  did have a duty to excessively punish Welsh under false pretenses through the   formal and informal relationship with Welsh under the facts of the complaint 329 – 344.

## Count CLXXIII
### Violation of State Tort law Intentional Infliction of Emotional Distress

784. MTC through respondent superior, Candy Weaver,   James Pearson, James Winckler,  Stetson Fisher, Sahar Sooter  and Wayne Schmoker  did through their outrageous and extreme conduct to punish Welsh by excessive punishment and under false pretenses that did inflict intense  and sever emotional distress upon Welsh under the facts of the complaint 329 – 344.

## Count CLXXIV
### Violation of State Tort Law Libel

785. MTC through respondent superior , and Candy Weaver did make false allegations against Welsh of a defamatory nature publishing said lies in a disciplinary to bring false charges against Welsh under the facts of the complaint 329 -344.

## Count CLXXV
### Violation Of State Tort Law Abuse Of Process

786. MTC through respondent superior, Candy Weaver,   James Pearson, James Winckler,  Stetson Fisher, Sahar Sooter  and Wayne Schmoker  did abuse the

disciplinary process as part of welsh's civil commitment order to bring about punishing Welsh under false pretenses under the facts of the complaint 329 -344.

## Count CLXVI
### Violation of The United States Fourteenth Amendment
### Procedural Due Process Clause  Punishment

787. Marsha McLane and MTC did by policy and , Chris Greenwalt, James Pearson, James Winckler,  Stetson Fisher, Sahar Sooter  and Wayne Schmoker  did by practice violate Welsh's procedural due process as the hearing was a shame without witnesses and bias decision maker  rights under the facts of the complaint 345 – 362.

## Count CLXVII
### Violation of The United States Fourteenth Amendment
### Substantive Due Process Clause  Punishment

789. Marsha McLane and MTC did by policy and Chris Greenwalt, James Pearson, James Winckler,  Stetson Fisher, Sahar Sooter  and Wayne Schmoker  did by practice violate Welsh's substantive  due process  rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms under the facts of the complaint 345 – 362.

## Count CLXVIII
### Violation of United States Constitutional Fourteenth Amendment Procedural
### Due Process Clause To Clinical Professional Judgment

790. Marsha McLane and MTC did by policy and Chris Greenwalt, James Pearson, James Winckler,  Stetson Fisher, Sahar Sooter  and Wayne Schmoker  did by practice violate Welsh's procedural due process  rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms under the facts of the complaint 345 – 362.

## Count CLXIX
### Violation of The United States Fourteenth Amendment
### Substantive Due Process To Clinical Professional Judgment

791. Marsha McLane and MTC did by policy and Chris Greenwalt, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms under the facts of the complaint 345 – 362.

## Count CLXX
### Violation of State Tort Law Negligent Training

792. MTC was negligent in its training of James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker in how to impose disciplinary without procedural due process and did violate Welsh's substantive rights under the facts of the 345 – 362.

## Count CLXXI
### Violation of State Tort Law Negligent Supervision

793. MTC was negligent in its supervision of James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker who did impose disciplinary without procedural due process and did violate Welsh's substantive rights under the facts of the 345 – 362.

## Count CLXXII
### Violation of State Tort Law Negligent Hiring

794. MTC was negligent in its hiring of James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker for failing to uncover his vindictive personality flaws and veracity for the truth under the facts of the complaint 345 – 362.

## Count CLXXIII
### Violation of State Tort Law Fiduciary Duty

795. MTC through respondent superior, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did have a duty to excessively punish Welsh under false pretenses through the formal and informal relationship with Welsh under the facts of the complaint 345 – 362.

## Count CLXXIV
## Violation of State Tort law Intentional Infliction of Emotional Distress

796. MTC through respondent superior, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did through their outrageous and extreme conduct to punish Welsh by excessive punishment and under false pretenses that did inflict intense and sever emotional distress upon Welsh under the facts of the complaint 345 – 362.

## Count CLXXV
## Violation Of State Tort Law Abuse Of Process

797. MTC through respondent superior, James Pearson, James Winckler, Stetson Fisher, Sahar Sooter and Wayne Schmoker did abuse the disciplinary process as part of welsh's civil commitment order to bring about punishing Welsh under false pretenses under the facts of the complaint 345 -362.

## Count CLXXVI
## Violation of The United States Fourteenth Amendment
## Procedural Due Process Clause  Punishment

798. Marsha McLane and MTC did by policy and , Chris Greenwalt, James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker did by practice violate Welsh's procedural due process as the hearing was a shame without witnesses and bias decision maker rights under the facts of the complaint 363 -390.

## Count CLXXVII
## Violation of The United States Fourteenth Amendment
## Substantive Due Process Clause  Punishment

799. Marsha McLane and MTC did by policy and Chris Greenwalt, James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker did by practice violate Welsh's substantive due process rights to

professional clinical judgment as solitary confinement for 110 days is outside professional norms under the facts of the complaint 363 -390.

### Count CLXXVIII
### Violation of United States Constitutional Fourteenth Amendment Procedural Due Process Clause To Clinical Professional Judgment

800. Marsha McLane and MTC did by policy and Chris Greenwalt, James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker did by practice violate Welsh's procedural due process rights to professional clinical judgment as solitary confinement for 120 days is outside professional norms under the facts of the complaint 363 -390.

### Count CLXXIX
### Violation of The United States Fourteenth Amendment Substantive Due Process To Clinical Professional Judgment

801.Marsha McLane and MTC did by policy and Chris Greenwalt, James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 120 days is outside professional norms under the facts of the complaint 363 -390.

### Count CLXXX
### Violation of State Tort Law Negligent Training

802. MTC was negligent in its training of James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker in how to impose disciplinary without procedural due process and did violate Welsh's substantive rights under the facts of the 363 -390.

### Count CLXXXI
### Violation of State Tort Law Negligent Supervision

803. MTC was negligent in its supervision of James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker who did impose disciplinary without procedural due process and did violate Welsh's substantive rights under the facts of the 363 -390.

### Count CLXXXII
### Violation of State Tort Law Negligent Hiring

804. MTC was negligent in its hiring of James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker for failing to uncover his vindictive personality flaws and veracity for the truth under the facts of the complaint 363 -390.

### Count CLXXXIII
### Violation of State Tort Law Fiduciary Duty

805. MTC through respondent superior, James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker did have a duty to excessively punish Welsh under false pretenses through the formal and informal relationship with Welsh under the facts of the complaint 363 -390.

### Count CLXXXIV
### Violation of State Tort law Intentional Infliction of Emotional Distress

806. MTC through respondent superior, James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker did through their outrageous and extreme conduct to punish Welsh by excessive punishment and under false pretenses that did inflict intense and sever emotional distress upon Welsh under the facts of the complaint 363 -390.

### Count CLXXXV
### Violation Of State Tort Law Abuse Of Process

807. MTC through respondent superior, James Pearson, James Winckler, Shawn Murpree, Dayton Saenz, Kevin Winslow and Wayne Schmoker did abuse the disciplinary process as part of welsh's civil commitment order to bring about punishing Welsh under false pretenses under the facts of the complaint 363 – 390.

### Count CLXXXVI
### Violation of State Tort Law Libel

808. MTC through respondent superior , and Dayton Saenz did make false allegations against Welsh of a defamatory nature publishing said lies in a

disciplinary to bring false charges against Welsh under the facts of the complaint 416 – 457.

## Count CLXXXVII
### Violation of The United States Fourteenth Amendment
### Procedural Due Process Clause  Punishment

809. Marsha McLane and MTC did by policy and ,Unknown First name Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel, Sahar Sooter  and Wayne Schmoker  did by practice violate Welsh's procedural due process as the hearing was a shame without witnesses and bias decision maker  rights under the facts of the complaint 391 – 415.

## Count CLXXXVIII
### Violation of The United States Fourteenth Amendment
### Substantive Due Process Clause  Punishment

810. Marsha McLane and MTC did by policy and ,Unknown First name Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel,  Sahar Sooter  and Wayne Schmoker  did by practice violate Welsh's substantive  due process  rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms under the facts of the complaint 391 – 415

## Count CLXXXIX
### Violation of United States Constitutional Fourteenth Amendment Procedural
### Due Process Clause To Clinical Professional Judgment

811.Marsha McLane and MTC did by policy and ,Unknown First name Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel,   Sahar Sooter and Wayne Schmoker did by practice violate Welsh's procedural  due process rights to professional clinical judgment as solitary confinement for 256 days is outside professional norms   under the facts of the complaint 391 – 415

## Count CXC

**Violation of The United States Fourteenth Amendment
Substantive Due Process To Clinical Professional Judgment**

812. Marsha McLane and MTC did by policy and ,Unknown First name Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel,  Sahar Sooter and Wayne Schmoker did by practice violate Welsh's substantive  due process rights to professional clinical judgment as solitary confinement for 256 days is outside professional norms under the facts of the complaint 391 – 415

**Count CXCI
Violation of State Tort Law Negligent Training**

813. MTC was negligent in its training of Unknown First name Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel,  Sahar Sooter and Wayne Schmoker in how to impose disciplinary without  procedural due process and did violate Welsh's substantive rights under the facts of the 391 – 415.

**Count CXCII
Violation of State Tort Law Negligent Supervision**

814. MTC was negligent in its supervision  of, Unknown First name Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel,  Sahar Sooter and Wayne Schmoker who did impose disciplinary without procedural due process and did violate Welsh's substantive rights under the facts of the 391 – 415.

**Count CXCIII
Violation of State Tort Law Negligent Hiring**

815. MTC through respondent superior ,Unknown First name Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel,   Sahar Sooter and Wayne Schmoker for failing to uncover his vindictive personality flaws and veracity for the truth under the  facts of the complaint 391 – 415.

**Count CXCIV
Violation of State Tort Law Fiduciary Duty**

816. MTC through respondent superior,Unknown First name Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel,  Sahar Sooter  and Wayne Schmoker did have a duty to excessively punish Welsh under false pretenses through the   formal and informal relationship with Welsh under the facts of the complaint 391 – 415.

## Count CXCV
### Violation of State Tort law Intentional Infliction of Emotional Distress

817. MTC through respondent superior,Unknown First name Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel,   Sahar Sooter  and Wayne Schmoker did through their outrageous and extreme conduct to punish Welsh by excessive punishment and under false pretenses that did inflict intense and sever emotional distress upon Welsh under the facts of the complaint 391 – 415.

## Count CXCVI
### Violation Of State Tort Law Abuse Of Process

818. MTC through respondent superior,Unknown First name Nipper, Chris Greenwalt, James Pearson, James Winckler, James Powel,   Sahar Sooter  and Wayne Schmoker did abuse the disciplinary process as part of welsh's civil commitment order to bring about punishing Welsh under false pretenses under the facts of the complaint 391 – 415.

## Count CXCVII
### Violation of State Tort Law Libel

819. MTC through respondent superior , Unknown First name Nipper did make false allegations against Welsh of a defamatory nature publishing said lies in a disciplinary to bring false charges against Welsh under the facts of the complaint 391 -415.

## Count CXCVIII
### Violation of The United States Fourteenth Amendment
### Procedural Due Process Clause  Punishment

820. Marsha McLane and MTC did by policy and , Unknown First name L. Rayos, Unknown first name  S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael

Lang and Wayne Schmoker did by practice violate Welsh's procedural due process as the hearing was a shame without witnesses and bias decision maker rights under the facts of the complaint 416 – 457.

## Count CXCIX
### Violation of United States Constitutional Fourteenth Amendment Procedural Due Process Clause To Clinical Professional Judgment

821. Marsha McLane and MTC did by policy and , Unknown First name L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker did by practice violate Welsh's procedural due process rights to professional clinical judgment as solitary confinement for 30 days is outside professional norms under the facts of the complaint 416 – 457.

## Count CC
### Violation of The United States Fourteenth Amendment Substantive Due Process To Clinical Professional Judgment

822. Marsha McLane and MTC did by policy and , Unknown First name L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker did by practice violate Welsh's substantive due process rights to professional clinical judgment as solitary confinement for 30 days is outside professional norms under the facts of the complaint 416 – 457.

## Count CCI
### Violation of State Tort Law Negligent Training

823. MTC was negligent in its training of, Unknown First name L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker in how to not impose disciplinary without procedural due process and did violate Welsh's substantive rights under the facts of the 416 – 457.

## Count CCII
### Violation of State Tort Law Negligent Supervision

824. MTC was negligent in its supervision of Unknown First name L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael

Lang and Wayne Schmoker who did impose disciplinary without procedural due process and did violate Welsh's substantive rights under the facts of the 416 – 457.

## Count CCIII
### Violation of State Tort Law Negligent Hiring

825. MTC through respondent superior , Unknown First name L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker for failing to uncover his vindictive personality flaws and veracity for the truth under the facts of the complaint 416 – 457.

## Count CCIV
### Violation of State Tort Law Fiduciary Duty

826. MTC through respondent superior, Unknown First name L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker did have a duty to excessively punish Welsh under false pretenses through the formal and informal relationship with Welsh under the facts of the complaint 416 – 457.

## Count CCV
### Violation of State Tort law Intentional Infliction of Emotional Distress

827. MTC through respondent superior, Unknown First name L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker did through their outrageous and extreme conduct to punish Welsh by excessive punishment and under false pretenses that did inflict intense and sever emotional distress upon Welsh under the facts of the complaint 416 – 457.

## Count CCVI
### Violation Of State Tort Law Abuse Of Process

828. MTC through respondent superior, Unknown First name L. Rayos, Unknown first name S. Carrizales, Chris Greenwalt, Zackery Saldivar, Rachael Lang and Wayne Schmoker did abuse the disciplinary process as part of welsh's civil commitment order to bring about punishing Welsh under false pretenses under the facts of the complaint 416 – 457.

## Count CCVII
### Violation of State Tort Law Libel

829. MTC through respondent superior , Unknown first name  S. Carrizales did make false allegations against Welsh of a defamatory nature publishing said lies in a disciplinary to bring false charges against Welsh under the facts of the complaint 416 – 457.

## CCVIII
### Violation Of United States First Amendment Retaliation and Harassment

830. Adam Pierce, Chris Greenwalt,  Jacquelyn Wilson, Unknown first name Aguirre and James Cruz did retaliate against Welsh for threats of legal action under the facts of the complaint 458 – 472.

## Count CCIX
### Violation of State Tort Law Negligent Training

831. MTC was negligent in its training of, Adam Pierce, and Jacquelyn Wilson, Unknown first name Aguirre and James Cruz in how to impose disciplinary without  procedural due process and did violate Welsh's substantive rights under the facts of the 458 – 472.

.

## Count CCX
### Violation of State Tort Law Negligent Supervision

832. MTC was negligent in its supervision  of and Jacquelyn Wilson, Unknown first name Aguirre and James Cruz who did impose disciplinary for threats of legal action under the facts of the 458 – 472.

## Count CCXI
### Violation of State Tort Law Negligent Hiring

833. MTC through respondent superior , and Jacquelyn Wilson, Unknown first name Aguirre and James Cruz for failing to uncover their vindictive personality flaws and veracity for the truth under the  facts of the complaint 458 – 472.

## Count CCXII
### Violation of State Tort Law Fiduciary Duty

834. MTC through respondent superior and Jacquelyn Wilson, Unknown first name Aguirre and James Cruz did have a duty not to excessively punish Welsh for threats of legal action through the   formal and informal relationship with Welsh under the facts of the complaint 458 – 472.

## Count CCXIII
### Violation of State Tort law Intentional Infliction of Emotional Distress

835. MTC through respondent superior, and Jacquelyn Wilson, Unknown first name Aguirre and James Cruz did through their outrageous and extreme conduct to punish Welsh for threats of legal action causing emotional distress upon Welsh under the facts of the complaint 458 – 472.

## Count CCXIV
### Violation Of State Tort Law Abuse Of Process

836. MTC through respondent superior, and Jacquelyn Wilson, Unknown first name Aguirre and James Cruz did abuse the disciplinary process as part of welsh's civil commitment order to bring about punishing Welsh under false pretenses under the facts of the complaint 458 – 472.

## Count CCXV
### Violation of State Tort Law Libel

837. MTC through respondent superior , Unknown first name Aguirre and James Cruz did make false allegations against Welsh of a defamatory nature publishing said lies in a disciplinary to bring false charges against Welsh under the facts of the complaint 458 – 472.

## Count CCXVI
### Violation of The United States Fourteenth Amendment
### Procedural Due Process Clause  Punishment

838. Marsha McLane and MTC did by policy and Chris Greenwalt, Victor Guerrero, Maria Weaver, Darla Jennings,  Adam Pierce, and Jacquelyn Wilson did by practice violate Welsh's procedural due process as the hearing was a shame without witnesses and bias decision maker  rights under the facts of the complaint 473 - 482.

## Count CCXVII
### Violation of The United States Fourteenth Amendment Substantive Due Process Clause  Punishment

839. Marsha McLane and MTC did by policy and Chris Greenwalt, Victor Guerrero, Maria Weaver, Darla Jennings Adam Pierce, and Jacquelyn Wilson  did by practice violate Welsh's substantive  due process  rights to professional clinical judgment as solitary confinement for 110 days is outside professional norms under the facts of the complaint 473 - 482.

## Count CCXVIII
### Violation of United States Constitutional Fourteenth Amendment Procedural Due Process Clause To Clinical Professional Judgment

840. Marsha McLane and MTC did by policy and , Chris Greenwalt,  Victor Guerrero, Maria Weaver, Darla Jennings Adam Pierce, and Jacquelyn Wilson   did by practice violate Welsh's procedural due process  rights to professional clinical judgment as solitary confinement for 30 days is outside professional norms   under the facts of the complaint 473 - 482.

## Count CCIX
### Violation of The United States Fourteenth Amendment Substantive Due Process To Clinical Professional Judgment

841. Marsha McLane and MTC did by policy and  Chris Greenwalt, Victor Guerrero, Maria Weaver, Darla Jennings Adam Pierce, and Jacquelyn Wilson did by practice violate Welsh's substantive  due process  rights to professional clinical judgment as solitary confinement for 30 days is outside professional norms under the facts of the complaint 473 - 482.

## Count CCXX
### Violation of State Tort Law Negligent Training

842. MTC was negligent in its training of Victor Guerrero, Maria Weaver, Darla Jennings ,Adam Pierce, and Jacquelyn Wilson  in how to not  impose disciplinary

without procedural due process and did violate Welsh's substantive rights under the facts of the 473 - 482.

## Count CCXXI
### Violation of State Tort Law Negligent Supervision

843. MTC was negligent in its supervision of , Victor Guerrero, Maria Weaver, Darla Jennings , Adam Pierce, and Jacquelyn Wilson who did impose disciplinary without procedural due process and did violate Welsh's substantive rights under the facts of the 473 - 482.

## Count CCXXII
### Violation of State Tort Law Negligent Hiring

844. MTC through respondent superior , , Victor Guerrero, Maria Weaver, Darla Jennings , Adam Pierce, and Jacquelyn Wilson for failing to uncover his vindictive personality flaws and veracity for the truth under the facts of the complaint 473 - 482.

## Count CCXXIII
### Violation of State Tort Law Fiduciary Duty

845. MTC through respondent superior, , Victor Guerrero, Maria Weaver, Darla Jennings, Adam Pierce, and Jacquelyn Wilson did have a duty to excessively punish Welsh under false pretenses through the formal and informal relationship with Welsh under the facts of the complaint 473 - 482.

## Count CCXXIV
### Violation of State Tort law Intentional Infliction of Emotional Distress

846. MTC through respondent superior, Victor Guerrero, Maria Weaver, Darla Jennings ,Adam Pierce, and Jacquelyn Wilson did through their outrageous and extreme conduct to punish Welsh by excessive punishment and under false pretenses that did inflict intense and sever emotional distress upon Welsh under the facts of the complaint 473 - 482.

## Count CCXXV
### Violation Of State Tort Law Abuse Of Process

847. MTC through respondent superior, , Victor Guerrero, Maria Weaver, Darla Jennings, Adam Pierce, and Jacquelyn Wilson did abuse the disciplinary process as part of welsh's civil commitment order to bring about punishing Welsh under false pretenses under the facts of the complaint 473 - 482.

## Count CCXXVI
### Violation of State Tort Law Malicious Prosecution
848. MTC through respondent superior and Victor Guerrero, Maria Weaver, Darla Jennings did attempt to have Welsh prosecuted without probable cause under the facts of the complaint 473 – 482.

## Count CCXXVII
### Violation of United States Constitutional First Amendment

849. Marsha McLane and MTC by policy and Wayne Schmoker, John Powel and Derek Porter did by practice did violate Welsh's rights under the First Amendment under the facts of the complaint 483 – 486.

## Count CCXXVIII
### Violation of United States Constitutional Fourteenth Amendment Punishment
850. Marsha McLane and MTC by policy and Wayne Schmoker, John Powel and Derek Porter did by practice did violate Welsh's Fourteenth Amendment rights not to be punished by restricting the First Amendment as a punishment tool under the facts of the complaint 483 – 486.

## Count CCXXIX
### Violation of State Tort Law  Fiduciary
851. MTC through respondent superior , Wayne Schmoker and John Powel did have a duty no to violate Welsh's Fourteenth Amendment rights not to be punished by restricting the First Amendment as a punishment tool that they did violate through the formal and informal relationship with Welsh under the facts of the complaint 483 – 486.

## Count CCXXIX
### Violation of State Tort Law  Negligence

852. MTC through respondent superior , Wayne Schmoker and John did have a duty no to violate Welsh's Fourteenth Amendment rights not to be punished by restricting the First Amendment as a punishment tool under the facts of the complaint 483 – 486.

### Count CCXL
### Violation of State Tort Law  Negligence Training
853. MTC did fail to train Wayne Schmoker and John Powel to no violate to violate Welsh's Fourteenth Amendment rights not to be punished by restricting the First Amendment as a punishment tool under the facts of the complaint 483 – 486.

### Count CCXLI
### Violation of State Tort Law  Negligence Training
854. MTC did fail to supervise Wayne Schmoker and John Powel to no violate to violate Welsh's Fourteenth Amendment rights not to be punished by restricting the First Amendment as a punishment tool under the facts of the complaint 483 – 486.

### Count CCXLII
### Violation of State4 Tort Law Intentional Infliction of Emotional Distress
855. MTC through respondent superior , Wayne Schmoker and John did intend to inflict sever emotional distress by locking Welsh in a dungeon type setting by denying him the ability to read and to punish him under facts of the complaint 483 – 486.

### Count CCXLIII
### Violation of United States Fourteenth Amendment Rights Punishment
856. Marsha McLane does violate Welsh's rights not to be punished  acting under the color of state law by punishing him in the forced wearing of the ankle monitor under the Texas Health and Safety Code 841.082(4)(A)(i)-(iv) while in a maximum security institution under the facts of the complaint 516 -523.

### Count CCXLIV
### Violation of United States Thirteenth Amendment Slavery
857. Marsha McLane does violate Welsh's rights not to be a slave  acting under the color of state law by punishing him in the forced wearing of the ankle monitor under the Texas Health and Safety Code 841.082(4)(A)(i)-(iv) while in a maximum security institution under the facts of the complaint 516 -523.

## Count CCXLV
### Violation of The United States Fourteenth Amendment Equal Protection

858. The statute forcing Welsh to wear the monitor violates the equal protection clause is an invidious burden imposed against Welsh as a member of the sexually violent predator class because of Welsh's past crimes where no other class who are similarly situated with Welsh and the SVP class placed in a maximum security institution under the facts of the complaint 516 – 523.

## Count CCXLVI
### Violation of United States Fourteenth Amendment Procedural Due Process

859. Marsha McLane by policy, Chris Greenwalt and Lisa Peralta by practice violated Welsh's procedural liberty interest in his tier level every month under the facts of the complaint 524 – 529.

## Count CCXLVII
### Violation of United States Fourteenth Amendment
### Harassment and Retaliation

860. Wayne Schmoker, Lisa Peralta, Kevin Winslow, and Chris Greenwalt did harass and retaliate against Welsh under the facts of the complaint 530 – 566.

## Count CCXLIX
### Violation of United States Fourteenth Amendment
### Professional Clinical Judgment

861. Wayne Schmoker, Lisa Peralta, Kevin Winslow, and Chris Greenwalt did violate Welsh Fourteenth Amendment rights to professional clinical judgment under professional norms under the facts of the complaint 530 – 566.

## Count CCXLVIII
### Violation of United States Fourteenth Amendment Equal Protection

862. Wayne Schmoker, Lisa Peralta, Kevin Winslow, and Chris Greenwalt did violate Welsh Fourteenth Amendment rights to equal protection as Welsh is a class of one under professional norms under the facts of the complaint 530 – 566.

## Count CCL
### Violation of United States Constitutional Fourteenth Amendment
### State Created Liberty Interest

863. Wayne Schmoker, Lisa Peralta, Kevin Winslow, and Chris Greenwalt  did violate Welsh Fourteenth Amendment rights to the state created liberty interest protected under the procedural due process clause to seamless transition to release under the facts of the complaint 530 – 566.

## Count CCL
### Violation of United States Constitutional Fourteenth Amendment Punishment

864. Wayne Schmoker, Lisa Peralta, Kevin Winslow, and Chris Greenwalt  did violate Welsh Fourteenth Amendment rights not to be punished under the facts of the complaint 530 – 566.

## Count CCLI
### Violation Of State Tort Law Negligence

865. MTC through respondent superior, Wayne Schmoker , and Kevin Winslow were negligent in their duty to provide seamless transition to release, not to harass Welsh, and not to retaliate against Welsh for being accused of criminal activity that he was released from the county jail under the interest of justice standard under the facts of the complaint 530 – 566.

## Count CCLI
### Violation Of State Tort Law Negligence Training

866. MTC was negligent in its training of , Wayne Schmoker , and Kevin Winslow were negligent in their duty to provide seamless transition to release, not to harass Welsh, and not to retaliate against Welsh for being accused of criminal activity that he was released from the county jail under the interest of justice standard under the facts of the complaint 530 – 566.

## Count CCLII
### Violation Of State Tort Law Negligence Supervision

867. MTC was negligent in its supervision of , Wayne Schmoker , and Kevin Winslow were negligent in their duty to provide seamless transition to release, not to harass Welsh, and not to retaliate against Welsh for being accused of criminal

activity that he was released from the county jail under the interest of justice standard under the facts of the complaint 530 – 566.

## Count CCLIII
## Violation Of State Tort Law Negligent Hiring

868. MTC was negligent in its hiring of , Wayne Schmoker , and Kevin Winslow were negligent in their duty to provide seamless transition to release, not to harass Welsh, and not to retaliate against Welsh for not uncovering their penitence for punishing individuals before criminal trial under the facts of the complaint 530 – 566.

## Count CCLIV
## Violation Of State Tort Law Fiduciary Duty

869. MTC through respondent superior, Wayne Schmoker , and Kevin Winslow had a  duty to provide seamless transition to release, not to  harass Welsh, and not to retaliate against Welsh for being accused of criminal activity that he was released from the county jail under the interest of justice standard through their formal and informal relationship with Welsh under the facts of the complaint 530 – 566.

## Count CCLV
## Violation Of State Tort Law Intentional Infliction of Emotional Distress

870. MTC through respondent superior, Wayne Schmoker , and Kevin Winslow did through their extreme and outrageous conduct did cause Welsh sever and intense emotional distress under the facts of the complaint 530 – 566.

## Count CCLVI
## Violation of United States Constitutional
## Fourteenth Amendment Life Necessity

871.  Marsh McLane and MTC did by policy and Wayne Schmoker and John Powel has imposed a policy through their roles as MTC agent and endorsed and condoned by Marsha McLane to by  Unknown First name Palmer, L. Rayos , Darla Jennings, Unknown First Name Savala, Unknown First name  Loyden, Unknown First Name  Villarreal, Trevor Swanger, Unknown First name Sgt. Corea, Unknown First Name  James Cruz, Adam Pierce, Joseph Trevino, Settles,  Nurse Unknown First name Martinez, Nurse Barragan  Fraser, S. Carrizales, Unknown

First Name Thorne, Juan Rodriguez; Unknown first name Aguirre  Unknown first name Campbell, Unknown first name Collins, Maria  Weaver, Juan Rodriguez,  A Batista, Unknown first name Savala,  Jimmy  Renfro; A.  Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Unknown first name Richardson, Unknown first name Follower; Unknown first name Nipper, Unknown first name Sierra, Unknown first name Williams, Unknown first name  Unknown first name Valenzuela   and  Emma Himojosa did by practice harass Welsh day and night to prevent sleep. They have instructed there staff to continuously slam the door day and night, keep the radio at a loud volume and refuse to prevent the staff from talking loudly all night and into the early morning right from the dates of May 17, 2022 to January 24,  2022 to deny Welsh sleep under the facts of the complaint 567 – 568.

## Count CCLVII
## Violation of United States Constitutional Fourteenth Amendment Harassment

872. Marsh McLane and MTC did by policy and Wayne Schmoker and John Powel has imposed a policy through their roles as MTC agent and endorsed and condoned by Marsha McLane to by  Unknown First name Palmer, L. Rayos , Darla Jennings, Unknown First Name Savala, Unknown First name  Loyden, Unknown First Name  Villarreal, Trevor Swanger, Unknown First name Sgt. Corea, Unknown First Name  James Cruz, Adam Pierce, Joseph Trevino, Settles,  Nurse Unknown First name Martinez, Nurse Barragan  Fraser, S. Carrizales, Unknown First Name Thorne, Juan Rodriguez; Unknown first name Aguirre  Unknown first name Campbell, Unknown first name Collins, Maria  Weaver, Juan Rodriguez, Ashley  Batista, Unknown first name Savala,  Jimmy  Renfro; A.  Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Unknown first name Valenzuela, Unknown first name Richardson, Unknown first name Follower; Unknown first name Nipper, Unknown first name Sierra, Unknown first name Williams  and  Emma Himojosa did by practice harass Welsh day and night to prevent sleep. They have instructed there staff to continuously slam the door day and night, keep the radio at a loud volume and refuse to prevent the staff from talking loudly all night and into the early morning right from the dates of May 17, 2022 to January 24 ,2022 to harass Welsh while he tried to sleep and for complaining about the noise level under the facts of the complaint 567 – 568.

## Count CCLVIII
## Violation of State Tort Law Negligence

873. MTC through respondent superior  Wayne Schmoker, John Powel, Unknown First name Palmer, L. Rayos , Darla  Jennings, Unknown First Name Savala, Unknown First name  Loyden, Unknown First Name  Villarreal, Trevor Swanger, Unknown First name Sgt. Corea, Unknown First Name  James Cruz, Adam Pierce, Joseph Trevino, Settles,  Nurse Unknown First name Martinez, Nurse Barragan Fraser, S. Carrizales, Unknown First Name Thorne, Juan Rodriguez; Unknown first name Aguirre  Unknown first name Campbell, Unknown first name Collins, Maria  Weaver, Juan Rodriguez,  Ashley Batista, Unknown first name Valenzuela, Unknown first name Savala,  Jimmy  Renfro; A.  Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Unknown first name Richardson, Unknown first name Follower; Unknown first name Nipper, Unknown first name Sierra, Unknown first name Williams  and  Emma Himojosa did harass Welsh to prevent him from sleep under the facts  of the complaint 567 – 568.

## Count CCLIX
## Violation of State Tort Law Negligence Training

874. MTC did fail to train Wayne Schmoker, John Powel, Unknown First name Palmer, L. Rayos , Darla  Jennings, Unknown First Name Savala, Unknown First name  Loyden, Unknown First Name  Villarreal, Trevor Swanger, Unknown First name Sgt. Corea, Unknown First Name  James Cruz, Adam Pierce, Joseph Trevino, Settles,  Nurse Unknown First name Martinez, Unknown first name Valenzuela,  Nurse Barragan  Fraser, S. Carrizales, Unknown First Name Thorne, Juan Rodriguez; Unknown first name Aguirre  Unknown first name Campbell, Unknown first name Collins, Maria  Weaver, Juan Rodriguez,  Ashley  Batista, Unknown first name Savala,  Jimmy  Renfro; A.  Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Unknown first name Richardson, Unknown first name Follower; Unknown first name Nipper, Unknown first name Sierra, Unknown first name Williams  and  Emma Himojosa  to prevent harassment  Welsh to prevent him from sleep under the facts  of the complaint 567 – 568.

## Count CCLX
## Violation of State Tort Law Negligence Supervision

875. MTC did fail to supervise Wayne Schmoker, John Powel, Unknown First name Palmer, L. Rayos , Darla  Jennings, Unknown First Name Savala, Unknown

First name  Loyden, Unknown First Name  Villarreal, Trevor Swanger, Unknown First name Sgt. Corea, Unknown First Name  James Cruz, Adam Pierce, Joseph Trevino, Settles,  Nurse Unknown First name Martinez, Nurse Barragan  Fraser, S. Carrizales, Unknown First Name Thorne, Unknown first name Valenzuela,  Juan Rodriguez; Unknown first name Aguirre  Unknown first name Campbell, Unknown first name Collins, Maria  Weaver, Juan Rodriguez,  Ashley  Batista, Unknown first name Savala,  Jimmy Renfro; A. Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Unknown first name Richardson, Unknown first name Follower; Unknown first name Nipper, Unknown first name Sierra, Unknown first name Williams  and  Emma Himojosa  to prevent harassment  Welsh to prevent him from sleep under the facts  of the complaint 567 – 568.

## Count CCLXI
### Violation of State Tort Law Negligent Hiring

876. MTC was negligent in its hiring of  Wayne Schmoker, John Powel, Unknown First name Palmer, L. Rayos , Darla  Jennings, Unknown First Name Savala, Unknown First name  Loyden, Unknown First Name  Villarreal, Trevor Swanger, Unknown First name Sgt. Corea, Unknown First Name  James Cruz, Unknown first name Valenzuela, Adam Pierce, Joseph Trevino, Settles,  Nurse Unknown First name Martinez, Nurse Barragan  Fraser, S. Carrizales, Unknown First Name Thorne, Juan Rodriguez; Unknown first name Aguirre  Unknown first name Campbell, Unknown first name Collins, Maria  Weaver, Juan Rodriguez,  Ashley Batista, Unknown first name Savala,  Jimmy  Renfro; A. Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Unknown first name Richardson, Unknown first name Follower; Unknown first name Nipper, Unknown first name Sierra, Unknown first name Williams  and  Emma Himojosa  to uncover their vindictive personalities to harass people under the facts of the complaint 567 – 568.

## Count CCLXII
### Violation of State Tort Law Fiduciary Duty

877. MTC through respondent superior  Wayne Schmoker, John Powel, Unknown First name Palmer, L. Rayos , Darla  Jennings, Unknown first name Valenzuela, Unknown First Name Savala, Unknown First name  Loyden, Unknown First Name Villarreal, Trevor Swanger, Unknown First name Sgt. Corea, Unknown First Name James Cruz, Adam Pierce, Joseph Trevino, Settles,  Nurse Unknown First name Martinez, Nurse Barragan  Fraser, S. Carrizales, Unknown First Name Thorne, Juan Rodriguez; Unknown first name Aguirre  Unknown first name Campbell, Unknown first name Collins, Maria  Weaver, Juan Rodriguez,  Ashley Batista,

Unknown first name Savala,  Jimmy  Renfro; A.  Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Unknown first name Richardson, Unknown first name Follower; Unknown first name Nipper, Unknown first name Sierra, Unknown first name Williams  and   Emma Himojosa did violate their duty through their formal and informal relationship with Welsh to allow for  him to sleep and not to harass him for making complaints about the noise under the facts of the complaint 567 – 568.

## Count CCLXIII
### Intentional Infliction Of Emotional Distress

878. MTC was negligent in its hiring of  Wayne Schmoker, John Powel, Unknown First name Palmer, L. Rayos , Darla Jennings, Unknown First Name Savala, Unknown First name  Loyden, Unknown First Name  Villarreal, Unknown first name Valenzuela , Trevor Swanger, Unknown First name Sgt. Corea, Unknown First Name  James Cruz, Adam Pierce, Joseph Trevino, Settles,  Nurse Unknown First name Martinez, Nurse Barragan  Fraser, S. Carrizales, Unknown First Name Thorne, Juan Rodriguez; Unknown first name Aguirre  Unknown first name Campbell, Unknown first name Collins, Maria  Weaver, Juan Rodriguez,  Ashley Batista, Unknown first name Savala,  Jimmy  Renfro; A.  Sanchez; Xavier Guzman; Willie Barbosa; Ester Ortiz, Unknown first name Richardson, Unknown first name Follower; Unknown first name Nipper, Unknown first name Sierra, Unknown first name Williams  and   Emma Himojosa did through their extreme conduct of harassment to prevent sleep did cause Welsh intense emotional distress under the facts of the complaint 567 – 568.

## Count CCLXIV
### Violation of State Tort Law Negligence

879. MTC through respondent superior, Unknown first name  Nipper, Emma Himojosa, and Unknown first name  Sierra did have a duty not to harass Welsh or make racially motivated comments and threats under the facts of the complaint 569 -573.

## Count CCLXV
### Violation of State Tort Law Negligent Training .

880. MTC did have a duty to train Unknown first name   Nipper, Emma Himojosa, and Unknown first name  Sierra not to harass not to harass Welsh or make racially motivated comments and threats under the facts of the complaint 569 -573.

## Count CCLXV
### Violation of State Tort Law Negligent Supervision

881. MTC did have a duty to supervise Unknown first name  Nipper, Emma Himojosa, and Unknown first name  Sierra to prevent the  harass of Welsh or make racially motivated comments and threats under the facts of the complaint 569 -573.

## Count CCLXVI
### Violation of State Tort Law Negligent Hiring

882. MTC did have a duty to uncover Unknown first name  Nipper, Emma Himojosa, and Unknown first name  Sierra racial biasness and tendencies to inflict racially motivated violence under the facts of the complaint 569 -573.

## Count CCLXVI
### Intentional Infliction Of Emotional Distress

883. MTC through respondent superior, Unknown first name  Nipper, Emma Himojosa, and Unknown first name  Sierra did inflict intense and sever emotional distress through their outrageous and extreme conduct of verbal racial hatred and threats of violence under the facts of the complaint  569 – 573.

## Count CCLXVII
### Violation of State Tort Law Fiduciary Duty

884. MTC through respondent superior, Unknown first name  Nipper, Emma Himojosa, and Unknown first name  Sierra through their formal and informal relationship with Welsh not to conduct verbal racial hatred remarks  and threats of violence under the facts of the complaint  569 – 573.

## Count CCLXVIII
### Violation of United States Fourteenth Amendment
### Retaliation and Harassment

885. James Winkler, Unknown first name Nipper and  James Cruz did retaliate and harass Welsh by making  verbal threats and racially motivated threats for Welsh's

desire to file a grievance and his informing supervisors of the treats of violence and racial hatred of Nipper under the facts of the complaint 574 – 583.

## Count CCLXIX
### Violation of State Tort Law Negligence

886. MTC through respondent superior, Unknown first name Nipper and James Cruz did have a duty not to harass Welsh or make racially motivated comments and threats under the facts of the complaint 569 -573.

## Count CCLXX
### Violation of State Tort Law Negligent Training

887. MTC did have a duty to train Unknown first name Nipper, and James Cruz not to harass not to harass Welsh or make racially motivated comments and threats under the facts of the complaint 574 – 584.

## Count CCLXXI
### Violation of State Tort Law Negligent Supervision

888. MTC did have a duty to supervise Unknown first name Nipper, and James Cruz to prevent the harass of Welsh or make racially motivated comments and threats under the facts of the complaint 574 – 584.

## Count CCLXXII
### Violation of State Tort Law Negligent Hiring

889. MTC did have a duty to uncover Unknown first name Nipper, and James Cruz racial biasness and tendencies to inflict racially motivated violence under the facts of the complaint 574 – 584.

## Count CCLXXIII
### Intentional Infliction Of Emotional Distress

890. MTC through respondent superior, Unknown first name Nipper, and James Cruz did inflict intense and sever emotional distress through their outrageous and extreme conduct of verbal racial hatred and threats of violence under the facts of the complaint 574 – 584.

## Count CCLXXIV
## Violation of State Tort Law Fiduciary Duty

891. MTC through respondent superior, Unknown first name  Nipper and  James Cruz through their formal and informal relationship with Welsh not to conduct verbal racial hatred remarks  and threats of violence under the facts of the complaint 574 – 584.

## Count CCLXXV
## Violation Of United States Fourteenth Amendment Medical Treatment

892. Unknown first name Graves, James Winckler and Wayne Schmoker did purposely delay Welsh medical care for a demist appointment were hew was diagnosis to have an unsalvageable tooth that was abscessed causing Welsh extreme pain under the facts of the complaint 585 -  593.

## Count CCLXXV
## Violation Of United States Fourteenth Amendment Punishment

893. Unknown first name Graves, James Winckler and Wayne Schmoker did purposely delay Welsh medical care for the purpose of punishing him under the facts of the complaint 585 – 593.

## Count CCLXXVI
## Violation of State Tort Law Negligence

894. MTC through respondent superior, Unknown name Graves, James Winckler, and Wayne Schmoker did have a duty to insure Welsh had timely medical care and not to be punished as they denied the ability to access a demist under the facts of the complaint 585 – 593.

## Count CCLXXVII
## Violation of State Tort Law Negligent Training

895. MTC did have a duty to train Unknown first name Graves, James Winckler and Wayne Schmoker not to delay medical care for the purpose of punishment under the facts of the complaint 585 – 593.

### Count CCLXXVIII
### Violation of State Tort Law Negligent Supervision

896. MTC did have a duty to supervision Unknown first name Graves, James Winckler and Wayne Schmoker not to delay medical care for the purpose of punishment under the facts of the complaint 585 – 593.

### Count CCLXXIX
### Violation of State Tort law Fiduciary Duty

897. MTC through respondent superior , Unknown first name Graves, James Winckler and Wayne Schmoker did have a duty through their formal and informal relationship with Welsh to provide him timely medical care and not to punish him by denying medical treatment under the facts of the complaint 585 – 593.

### Count CCLXXX
### Intentional Infliction Of Emotional Distress

898. MTC through respondent superior , Unknown first name Graves, James Winckler and Wayne Schmoker did through their extreme and outrageous conduct inflict intense and sever emotional distress by delaying Welsh's medical treatment and to punish him by denying him medical treatment under the facts of the complaint 585 – 593.

### Count CCLXXXI
### Violation of State Tort Law Medical Assault

899. MTC through respondent superior , Unknown first name Graves, James Winckler and Wayne Schmoker did assault Welsh by delaying his medical care to cause him pain under the facts of the complaint 585 – 593.

### Count CCLXXXII
### Violation of United States Constitutional
### Fourteenth Amendment Sexual Assault

900. Unknown first name Turner did sexually assault Welsh by placing his hands on Welsh's genitals under the facts of the complaint 594 - 607.

## Count CCLXXXIII
### Violation Of United States Constitutional Fourth Amendment

901. Marsha McLane and MTC did by policy and Unknown first name Turner did by practice  touch Welsh's genital area to conduct a search under the facts of the complaint 594 – 607.

## Count CCLXXXIX
### 902.

Marsha McLane and MTC did by policy and Unknown first name Turner
S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor  Swanger;
Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez;
Unknown First Name Titus;  Unknown first name Cruz(day shift);  S. Carrizales;
Juan Rodriguez; Unknown First Name Williams; Victor Guerrero;  L. Rayos,
Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name
Loyden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First
name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo
Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown
First Name  Villarreal,  S. Carrizales, Unknown First Name Thorne,  Unknown
first name Campbell, Unknown first name Collins, Unknown first name Savala,
Xavier Guzman; Unknown first name Richardson, Unknown first name  Cardenas ;
did by practice  conduct harassing cell and pat searches several times a day under
the facts of the complaint 594 -607.

## Count CCXC
### Violation of United States Constitutional Fourteenth Amendment Harassment

903. Marsha McLane and MTC did by policy and Unknown first name Turner
S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor  Swanger;
Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez;
Unknown First Name Titus;  Unknown first name Cruz(day shift);  S. Carrizales;
Juan Rodriguez; Unknown First Name Williams; Victor Guerrero;  L. Rayos,
Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name
Loyden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First
name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo
Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown
First Name  Villarreal,  S. Carrizales, Unknown First Name Thorne,  Unknown

first name Campbell, Unknown first name Collins, Unknown first name Savala, Xavier Guzman; Unknown first name Richardson, Unknown first name Cardenas ; did by practice  conduct harassing cell and pat searches several times a day to punish Welsh under the facts of the complaint 594 -607.

### Count CCXCI
### Violation of United States Constitutional
### Fourteenth Amendment  Failure To Train

904. Marsha McLane did fail to train MTC Unknown first name Turner; S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor  Swanger; Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown First Name Titus;  Unknown first name Cruz(day shift); S. Carrizales; Juan Rodriguez; Unknown First Name Williams; Victor Guerrero; L. Rayos, Jimmy  Renfro; A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown First Name  Villarreal,  S. Carrizales, Unknown First Name Thorne,  Unknown first name Campbell, Unknown first name Collins, Unknown first name Savala, Xavier Guzman; Unknown first name Richardson, Unknown first name  Cardenas ; that should have included but did not include searches based upon reasonable suspicion, not to conduct harassing searches of a cell on a daily bases that leaves a cell disheveled, harassing pat searches despite never leaving an officers site, and searches for the purpose of punishment under the facts of the complaint 594 – 607.

### Count CCXCII
### Violation of State Tort Law Negligence Per Se Sexual Assault
905. MTC by respondent superior; and Unknown first name Turner  did have a duty not to sexually assault Welsh by touching and fondling Welsh's private area in accordance with Texas Penal Code 22.011 policy under the facts of  594 – 607.

### Count CCXCIII
### Violation of State Tort Law Negligence
906. MTC by respondent superior; and Unknown first name Turner  S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor  Swanger;  Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown First Name Titus;  Unknown first name Cruz(day shift);  S. Carrizales; Juan Rodriguez;

Unknown First Name Williams; Victor Guerrero;  L. Rayos, Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown First Name  Villarreal,  S. Carrizales, Unknown First Name Thorne,  Unknown first name Campbell, Unknown first name Collins, Unknown first name Savala,  Xavier Guzman; Unknown first name Richardson, Jose Cardenas  were negligent in their duty not to conduct harassing cell and pat searches and to punish Welsh under the facts of the complaint 594 – 607.

### Count CCXCIV
### Violation of State Tort Law Negligent Training

907. MTC was negligent in their duty to train Unknown first name Turner , S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor  Swanger; Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown First Name Titus;  Unknown first name Cruz(day shift);  S. Carrizales; Juan Rodriguez; Unknown First Name Williams; Victor Guerrero;  L. Rayos, Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown First Name  Villarreal,  S. Carrizales, Unknown First Name Thorne,  Unknown first name Campbell, Unknown first name Collins, Unknown first name Savala, Xavier Guzman; Unknown first name Richardson, Jose Cardenas  to only conduct searches based upon reasonable suspicion, not to conduct harassing searches of a cell on a daily bases that leaves a cell disheveled, harassing  pat searches despite never leaving an officers site, and searches for the purpose of punishment.

### Count CCXCV
### Violation of State Tort Law Negligent Supervision

908. MTC was negligent in their duty to supervision Unknown first name Turner , S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor  Swanger; Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown First Name Titus;  Unknown first name Cruz(day shift);  S. Carrizales; Juan Rodriguez; Unknown First Name Williams; Victor Guerrero;  L. Rayos, Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown

138

First Name  Villarreal,  S. Carrizales, Unknown First Name Thorne,  Unknown first name Campbell, Unknown first name Collins, Unknown first name Savala, Xavier Guzman; Unknown first name Richardson, Jose Cardenas  to only conduct searches based upon reasonable suspicion, not to conduct harassing searches of a cell on a daily bases that leaves a cell disheveled, harassing  pat searches despite never leaving an officers site, and searches for the purpose of punishment under the facts of the complaint 594 – 607.

## Count CCXCVI
### Violation of State Tort Law Fiduciary Duty

909. MTC through respondent superior and Unknown first name Turner did violate their duty through their formal and informal relationship not to sexually assault Welsh under the facts of the complaint 594 – 607.

## Count CCXCVII
### Violation of State Tort Law Fiduciary Duty

910. MTC by respondent superior; and Unknown first name Turner  S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor  Swanger;  Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez; Unknown First Name Titus;  Unknown first name Cruz(day shift);  S. Carrizales; Juan Rodriguez; Unknown First Name Williams; Victor Guerrero;  L. Rayos, Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown First Name  Villarreal,  S. Carrizales, Unknown First Name Thorne,  Unknown first name Campbell, Unknown first name Collins, Unknown first name Savala,  Xavier Guzman; Unknown first name Richardson, Jose Cardenas  did violate their formal and informal relationship with Welsh trough  their repeated  harassing cell and pat searches and to punish Welsh under the facts of the complaint 594 – 607.

## Count CCXCVIII
### Violation of State Tort Law Intentional Infliction of Emotional Distress

911. MTC by respondent superior; and Unknown first name Turner  did inflict intense and sever emotional distress upon Welsh for sexually assaulting him under the facts of the complaint 594 – 607.

## Count CCXCIX

**Violation of State Tort Law Fiduciary Duty**

912. MTC by respondent superior; and Unknown first name Turner  S. Murphree , Anthony Frasier ,Unknown First Name Nipper , Tylor  Swanger;  Unknown First Name Cruz (night shift) ; Joseph  Trevino, Michael Perez;  Unknown First Name Titus;  Unknown first name Cruz(day shift);  S. Carrizales; Juan Rodriguez; Unknown First Name Williams; Victor Guerrero;  L. Rayos, Jimmy  Renfro;  A. Sierra; Unknown first name Villarreal; Unknown First name Loyden; D. Saenz; Unknown First Name Titus; Xavier Guzman; Unknown First name Cruz (night shift); A. Sierra; Unknown First Name Williams; Chapo Rodriguez before he was a supervisor; , Unknown First Name Savala, Unknown First Name  Villarreal, S. Carrizales, Unknown First Name Thorne,  Unknown first name Campbell, Unknown first name Collins, Unknown first name Savala,  Xavier Guzman; Unknown first name Richardson, Jose Cardenas  did inflict intense and   sever emotional distress by their repeated  harassing cell and pat searches and to punish Welsh under the facts of the complaint 594 – 607.

**Count CCC**
**Violation of United States Constitutional Fourteenth Amendment**
**Substantive Due Process Right To Treatment**

913. Marsha McLane  and MTC by policy and Wayne Schmoker, Jessica Marsh, Rachael Lang and Lisa Peralta did violate Welsh's substantive right to have his conditions of confinement resemble the purpose to commit under the facts of the complaint 608 - 614.

**Count CCCI**
**Violation of United States Constitutional**
**Fourteenth Amendment State Created Liberty Interest**

814. Marsha McLane  and MTC by policy and Wayne Schmoker, Jessica Marsh, Rachael Lang and Lisa Peralta did violate Welsh's did violate Welsh's procedural due process rights in the interest created by the Texas Health and Safety Code 841.0831 under the facts of the complaint 608 - 614.

**Count CCCII**
**Violation  of United States Fourteenth Amendment Civil Conspiracy**

915. Marsha McLane  and MTC by policy and Wayne Schmoker, Jessica Marsh, Rachael Lang and Lisa Peralta did violate Welsh's did conspire to violate Welsh's rights to have his conditions of confinement resemble to purpose to commit and to his right top a seamless transition  between tier under the facts of the complaint 608- 614.

## Count CCCIII
### Violation of State Tort Law Negligence

816. MTC through respondent superior, Wayne Schmoker and Rachael Lang violated their duty to provide Welsh with therapy under the facts of the complaint 608 - 614.

## Count CCCIV
### Violation Of State Tort Law Negligent Training

917. MTC was negligent in its training of Wayne Schmoker and Rachael Lang in the need to provide treatment for welsh's behavioral abnormality under the facts of the complaint 608 - 614.

## Count CCCV
### Violation of State Tort Law Negligent Supervision

918. MTC was negligent in its supervision of Wayne Schmoker and Rachael Lang to  provide treatment for welsh's behavioral abnormality under the facts of the complaint 608 - 614.

## Count CCCVI
### Violation of State Tort Law Negligent Hiring

919. MTC was negligent in their hiring of Wayne Schmoker and Rachael Lang for failing to uncover Wayne Schmoker vindictive personality to punish those in need of treatment and Rachael Lang failing to understand professional sex offender treatment requirements under the facts of the complaint 608 - 614.

## Count CCCVII
### Violation of State Tort Law Fiduciary Duty

920. MTC through respondent superior, Wayne Schmoker and Rachael Lang did violate their duty to provide sex offender treatment in accordance with professional judgment and for the seamless transition for release under Texas Health and Safety Code 841.0831 a duty through their formal and informal relationship with Welsh under the facts of the complaint 608 - 614.

## Count CCCVIII
### Violation of State tort Law Intentional Infliction of Emotional Distress

921. MTC through respondent superior, Wayne Schmoker, and Rachael Lang did intentionally inflict sever and intense emotional distress through their outrageous and extreme conduct under the facts of the complaint 608 - 614.

## Count CCCIX
### Violation of the United States Fourteenth Amendment Punishment

922. Marsha McLane and MTC policies did have a mutually enforcing effect by the totality of the conditions of confinement under the facts of the complaint 95 – 619.

## Count CCCX
### Violation of the United States Fourteenth Amendment Civil Conspiracy

923. Marsha McLane and MTC did conspire to violate the civil rights of Lonnie Kade Welsh by planning and scheming policies that violate his constitutional rights to property, procedural process, not to be punished, state created liberty interest, conditions of confinement resembling the purpose to commit under the facts of the complaint 95 – 619.

## Count CCCXI
### Violation of The United States Fourteenth Amendment Due Process Clause

924.   Marsha McLane does violate Welsh's  procedural due process rights by the State created interest under Texas Government Code  2001.021 failing to promulgate the disciplinary and tier housing policies that take Welsh's personal property and punishes welsh under the facts of the complaint 95 – 619.

## Count CCCXII
### Violation of United States Fourteenth Amendment
### State Created Liberty Interest

925. Marsha McLane and MTC have by their disciplinary policies and their property restriction tier housing policies denied Welsh procedural process in the State created liberty interest of Texas Constitution to Art. I Sec. 13 and Art. I Sec. 15 for the deprivation of his civil rights under the facts of the complaint 95 – 619.

## Prayer For Relief

926. Lonnie Kade welsh seeks from Marsha McLane in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

927. Lonnie Kade Welsh seeks from Chris Greenwalt in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

928. Lonnie Kade welsh seeks from Michael Searchy in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

929. Lonnie Kade Welsh seeks from Jessica Marsh in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

930. Lonnie Kade Welsh seeks from Management and Training Corporation in its individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

931. Lonnie Kade Welsh seeks from John Cochran in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

932. Lonnie Kade Welsh seeks from Wayne Schmoker in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

933. Lonnie Kade Welsh seeks from Greg Shirley in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

934. Lonnie Kade Welsh seeks from John Powel in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

935. Lonnie Kade Welsh seeks from Adam Pierce in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

936. Lonnie Kade Welsh seeks from Joel Garcia in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

937. Lonnie Kade Welsh seeks from Joel Silvis in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

938. Lonnie Kade Welsh seeks from Jesus Lara in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

939. Lonnie Kade Welsh seeks from James Flick in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

940. Lonnie Kade Welsh seeks from Michael Arenivaz in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

941. Lonnie Kade Welsh seeks from Julian Chavez in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

942. Lonnie Kade Welsh seeks from Stephen Scott in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

943. Lonnie Kade Welsh seeks from Unknown Name DeVaugh in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

944. Lonnie Kade Welsh seeks from Joe Robinson in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

945. Lonnie Kade Welsh seeks from Victoria Rodriguez in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

946. Lonnie Kade Welsh seeks from Lisa Peralta in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

947. Lonnie Kade Welsh seeks from Sahar Sooter in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

948. Lonnie Kade Welsh seeks from Kevin Winslow in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

949. Lonnie Kade Welsh seeks from James Winckler in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

950. Lonnie Kade Welsh seeks from S. Murphree in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

951. Lonnie Kade Welsh seeks from Zachary Salavar in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

952. Lonnie Kade Welsh seeks from Anthony Frasier in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

953. Lonnie Kade Welsh seeks from Dayton Saenz in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

954. Lonnie Kade Welsh seeks from Unknown First Name Nipper in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

955. Lonnie Kade Welsh seeks from Tylor Swanger in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

956. Lonnie Kade Welsh seeks from Unknown First Name Cruz (night shift) in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

957. Lonnie Kade Welsh seeks from James Cruz in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

958. Lonnie Kade Welsh seeks from Joseph Trevino in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

959. Lonnie Kade Welsh seeks from Michael Perez in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

960. Lonnie Kade Welsh seeks from Unknown First Name Titus in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

961. Lonnie Kade Welsh seeks from Xavier Guzman in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

962. Lonnie Kade Welsh seeks from S. Carrizales in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

963. Lonnie Kade Welsh seeks from Juan Rodriguez in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

964. Lonnie Kade Welsh seeks from Unknown First Name Williams in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

965. Lonnie Kade Welsh seeks from L. Rayos Williams in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

966. Lonnie Kade Welsh seeks from Ashley Batista in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

967. Lonnie Kade Welsh seeks from Darla Jennings in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

968. Lonnie Kade Welsh seeks from Unknown first name Savala in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

969. Lonnie Kade Welsh seeks from Jimmy Renfro in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

970. Lonnie Kade Welsh seeks from A. Sierra in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

971. Lonnie Kade Welsh seeks from Chapo Rodriguez in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

972. Lonnie Kade Welsh seeks from Unknown First name Villarreal in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

973. Lonnie Kade Welsh seeks from Unknown First name Loyden in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

974. Lonnie Kade Welsh seeks from A. Sanchez in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

975. Lonnie Kade Welsh seeks from Willie Barbosa in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

976. Lonnie Kade Welsh seeks from Ester Ortiz in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

977. Lonnie Kade Welsh seeks from Unknown First name Follower in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

978. Lonnie Kade Welsh seeks from Unknown First name Settles in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

979. Lonnie Kade Welsh seeks from Emma Himojosa in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

980. Lonnie Kade Welsh seeks from James Pearson in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

981. Lonnie Kade Welsh seeks from Kendrick Fennel in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

982. Lonnie Kade Welsh seeks from Candy Weaver in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

983. Lonnie Kade Welsh seeks from Unknown first name Correa in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary and punitive damages.

984. Lonnie Kade Welsh seeks from  Unknown first name Thorne in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish,  exemplary and punitive damages.

985. Lonnie Kade Welsh seeks from  Unknown first name Nurse Martinez in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish,  exemplary and punitive damages.

986. Lonnie Kade Welsh seeks from  Unknown first name Valenzuela  in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish,  exemplary and punitive damages.

987. Lonnie Kade Welsh seeks from  Unknown first name Nurse Barragan in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish,  exemplary and punitive damages.

988. Lonnie Kade Welsh seeks from  Unknown first name Richardson in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish,  exemplary and punitive damages.

989. Lonnie Kade Welsh seeks from  Unknown first name Nipper in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish,  exemplary and punitive damages.

990. Lonnie Kade Welsh seeks from   Unknown first name Nurse Graves in her individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish,  exemplary and punitive damages.

991. Lonnie Kade Welsh seeks from   Unknown First name Turner in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish,  exemplary and punitive damages.

992. Lonnie Kade Welsh seeks from   Jose  Cardenas  in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish,  exemplary and punitive damages.

993. Lonnie Kade Welsh seeks from   Stetson Fisher in his individual capacity compensatory damages, mental anguish, past mental anguish, future mental anguish,  exemplary and punitive damages.

### Alternative Prayer For Relief

994. In the alternative plaintiff prays for nominal and punitive damages against all named defendants for Constitutional violations that does not reach compensatory damages, mental anguish, past mental anguish, future mental anguish, exemplary damages.

### Jury Trial

995. Plaintiff demands is United States Constitutional Seventh Amendment right to trial by jury and under 28 U.S.C § 1861.

### Court Cost and Attorney Fees

996. Welsh prays for all court cost for trial of the cause and attorney fees under 42 U.S.C. § 1988(b) and § 1988(c) to be assessed against the defendants.

### Prayer

997. Wherefore, premise considered plaintiff humble prays the court grant all relief asked for or otherwise entitled too.

## VERIFICATION

998.. I have read the foregoing complaint and hereby verify that the matters alleged therein are true, I certify under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.

**Executed in Littlefield, Texas on the 10th day of August**

**Respectfully Submitted, and Signature of Declarant**

_____

**Lonnie Kade Welsh**
**2400 South Sunset Ave.**
**Littlefield,Tx**